**HATTON, PETRIE & STACKLER APC**
Attorneys at Law
12 Journey, Ste. 255
Aliso Viejo, CA 92656
Telephone: (949) 474-4222

**GREGORY M. HATTON, SBN 119810**
**ARTHUR R. PETRIE, II, SBN 158654**
**DAN E. HECK, SBN 210383**

Attorneys for Plaintiff
BORREGO COMMUNITY HEALTH FOUNDATION

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California non-profit public benefit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INLAND VALLEY INVESTMENTS, LLC, a California limited liability company; DRP HOLDINGS, LLC, a California limited liability company; PROMENADE SQUARE, LLC, a California limited liability company; WILL LIGHTBOURNE, Director, CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:21-cv-01417-L-AGS<br><br>Hon. M. James Lorenz,<br>Courtroom 5B<br><br>PLAINTIFF BORREGO COMMUNITY HEALTH FOUNDATION'S: (1) RESPONSE TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT ("SAC"), AND (2) OBJECTIONS TO EXHIBIT 3 AND REQUEST FOR INCORPORATION OF JUDICIALLY NOTICED DOCUMENTS INTO SAC<br><br>Date:       September 20, 2021<br>Time:       10:30 a.m.<br>Courtroom:  5B<br><br>Related to docket # 7<br><br>Action Filed: August 6, 2021<br>Trial Date: N/A |

Plaintiff Borrego Community Health Foundation ("BCHF") responds to defendants' Request for Judicial Notice in support of defendants' motion to dismiss the SAC; and objects to Exhibit 3 and to Defendants' request the judicially noticed documents be incorporated by reference into the operative complaint.

- 1 -

## I. **Summary of Defendants' RFJN**.

In support of defendants' request that this Court dismiss BCHF's interpleader claim, defendants ask the Court to judicially notice, or incorporate by reference into the Second Amended Complaint (SAC), the following three exhibits to defendants' Request for Judicial Notice:

(1) Exhibit 1: August 3, 2021, letter from the California Department of Health Care Services to BCHF attaching an August 3, 2021 "Corrective Action Plan";

(2) Exhibit 2: "Agreement Between the California Department of Health Care Services and Borrego Community Health Foundation to Modify November 18, 2020, Payment Suspension Pursuant to Welfare and Institutions Code, Section 14107.11"; and

(3) Exhibit 3: "Term Sheet" between California Department of Health Care Services and BCHF.

Defendants do so for the purpose of trying to rebut BCHF's factual allegation in the SAC that DHCS's appointed monitor directed BCHF to suspend payments of rent over fair market rent on the subject leases, a catalyst for filing this lawsuit.  (*See* SAC, ¶¶ 7, 34(a)).  Defendants claim these exhibits "do[] not even mention the Defendants, or the leases that are the subject of this lawsuit" [1] and do not "direct[] BCHF to file this lawsuit or withhold payments to Defendants."  (Memo., 20:14-21 and fn. 9).  Defendants therefore argue the exhibits "belie[] the notion that DHCS and Defendants have competing claims against a single, identifiable fund" for purposes of asserting an interpleader claim.  (*Id*.)

// // //

// // //

---

[1] This representation is false.  See quoted sections of the CAP <u>identifying the leases attached to plaintiff's complaint as Exhibits A, B, and C by name</u>, and discussion below.

BCHF responds to each of defendants' requests in turn below. In sum, if the documents are judicially noticeable (a matter within the discretion of the Court for the purposes of defendants' motion), the documents in fact support Borrego's interpleader claim. However, there is no reason to incorporate the judicially noticed documents into the SAC, and plaintiffs therefore respectfully object to that request.

## II. **Request for judicial notice**.

Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." (Fed R. Evid. 201(b)). A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (Fed. R. Evid. 201(b)(1)-(2)).

A.   August 3, 2021 Letter and attachment (Exhibit 1).

Exhibit 1 is an August 3, 2021, letter from the DHCS to BCHF re: "Notice of Corrective Action Plan" discussing the status of DHCS's suspension of payments to BCHF under the Medi-Cal program following a fraud investigation.  The letter encloses a 6-page Corrective Action Plan (CAP) following the appointment of a DHCS-approved independent compliance monitor.

For purposes of this motion, the Court must accept as true BCHF's allegation that DHCS directed it to suspend payments for above fair market rent, and draw inferences from those allegations in the light most favorable to BCHF while construing the SAC liberally. (*Doe v. United States* (9th Cir. 2005) 419 F.3d 1058, 1062)  As explained in plaintiff's opposition to defendants' motion to dismiss, the Corrective Action Plan (CAP) in fact compels this lawsuit as to the leases, and as to the $11.5 million in rent overpayments to defendants.

*// // //*

*// // //*

1.   <u>The CAP Identifies and Mandates Legal Action on the Leases</u>.

On pages 5 and 6 of the CAP, the California Department of Healthcare Services (DHCS) evaluates Borrego's facility leases and concludes:

> [The DHCS appointed Monitor] BRG has identified apparent conflicts of interest pertaining to four lease agreements. The **Barstow** Clinic, D Street Clinic in **San Bernardino**, and **El Cajon** Clinic **lease agreements** were entered into between the former CEO and a close childhood friend, where the lease terms:
> 1.  Are materially higher than fair market value (FMV) …
> 2.  Have …. 30-year duration; and
> 3.  Contain no termination clause for the tenant Borrego.
>                              ***
> Borrego **must** not pay higher than FMV lease rates to **any** landlord/ lessor.

(Exhibit 1, Deft.'s Mtn. to Dm., Document 7-1, Page ID.794  pp. 8 and 9, bold added. The leases [in bold] are attached to plaintiff's complaint as Exhibits A, B, and C.)

Apparently, defendants do not understand what the CAP requires of Borrego here. The reason Borrego must pay the court is premised on the DHCS' prohibition on payment of over-market rent, and simple math:

(1) Qualified independent experts have determined that the over-market rent payments collected by defendants to date exceed $11.5 million.

(2) The state of California has mandated Borrego *never* pay defendants over-market rents. (See Corrective Action Plan ["CAP"] and related documents attached to defendants' request for judicial notice.)

(3) According to the experts' FMR analysis and the state of California's CAP mandate, rent payments already paid defendants under the subject leases are currently $11.5 million "ahead" of fair market rents ("FMR").

(4) Under these circumstances, the state's CAP mandate appears *on its face* to prevent Borrego from paying defendants a single penny until the $11.5 million in FMR overpayments have been recouped.

(5) Borrego cannot be the one to decide whether the FMR payments to the court should go to defendants or remain with Borrego.  Basic math indicates the DHCS does not want Borrego to pay defendants anything at this time on any of the leases. Until directed by this court to do otherwise, Borrego must continue to pay FMR to this court *or risk noncompliance with the state's prohibition on payment of overmarket rents stated in the CAP.*

2. <u>The CAP Compels Action to Recover the $11.5 million in Over Market Rent Payments from Defendants</u>.

In regard to the impact the continuous over-market lease payments have had on reimbursement rates government health plans have paid Borrego, the DHCS orders Borrego to do the following at page 6 of the CAP:

> Remediate any cost report filings that contain above FMV costs for the … leases in question by filing amended cost reports. Ensure that the appropriate related party disclosures are made in the amended filings.

(Exhibit 1, Deft.'s RFJN, Document 7-1, Page ID.794  p. 9.)

This order can have a devastating financial impact on Borrego. Borrego must therefore sue to recover the entire $11.5 million from the defendants immediately. Here's why:

Borrego's funding is dependent on its submittal of annual reports to CMS regarding its costs and overhead, which in turn allows DHCS to continue to reimburse Borrego with federal health care funds sufficient to cover reasonable reported costs. Those reported costs and overhead specifically include reasonable rents as a basis for the cost reports upon which the government sets Borrego's reimbursement rates. (*Robert F. Kennedy Medical Ctr. v. Belshe* (1996) 13 Cal.4th 748, 752 ("Kennedy"); *see also Family Health Centers of San Diego v. State Dept. of Health Care Services* (2021) 67 Cal.App.5th 356, 360:  "In general, to be reimbursable, claimed costs 'must

be based on the reasonable cost of [covered] services' and 'related to the care of beneficiaries.'")  In turn these reported costs are factored into reimbursement rates DHCS pays Borrego for health care services.[2]

The filing of amended cost reports that substantially reduce prior reported costs typically leads to retroactive downward reimbursement rate adjustments.  This can support a reimbursement demand upon Borrego to recover over-payments of healthcare plan benefits paid to Borrego, or, in some instances possibly subject Borrego to a large ongoing "credit" against future reimbursements.

           3.    <u>As to the Leases at issue here, the CAP is Directed at Remediation of the Pattern of Racketeering Activity Alleged in the Complaint</u>.

As stated in plaintiffs' opposition brief, the commission of predicate offenses forms the requisite related pattern if the criminal acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics, not isolated events. The criminal acts here were:

  (1) Defendants' monthly embezzlement of money from Borrego via the inflated leases,

  (2) Which sums defendants knew would be included in Borrego's annual cost reports to the United States,

  (3) Thereby inflating government healthcare reimbursement rates every year in amounts sufficient to replenish the money embezzled from Borrego every year under the leases, and

  (4) Repeating the same actions every year so Borrego could continue to be embezzled each month utilizing the leases, year after year after year.

This is a textbook "pattern" of racketeering activity under RICO.

---

[2]  Indeed, *Kennedy* explains "in detail" the method by which DHCS reimburses providers.  (*Family Health, supra,* 67 Cal.App.5th at p. 361.)

By ordering plaintiffs to cease all payments of rent in excess of fair market rent, and by compelling defendants to submit remediated cost reports stating the true fair market rents for the three leased facilities at issue here, DHCS' CAP requires Borrego to:

(1) Stop paying further rent to defendants until the $11.5 million in rent overpayments has been fully recouped and accounted for; and

(2) Take action to recover the $11.5 million in rent overpayments in order to obtain funds required to cover reimbursement demands from state and federal agencies arising from the rent over-payments and the cost reports and inflated reimbursement rates resulting therefrom.

B.    Agreement between DHCS and Borrego (Exhibit 2).

At page 20, lines 14-21, defendants ask the Court to judicially notice the DHCS's agreement with Borrego for the same reasons with respect to Exhibit 1. The Agreement supports Borrego's pending action against defendants. Here are a few of the relevant excerpts:

**a. General Terms**
i. Borrego must comply with all federal and state Medi-Cal law, including, but not limited to, proper billing for Medi-Cal services.
ii. Borrego must cooperate and comply with all routine and non-routine DHCS audits and investigations activities.
***
**b. Independent Monitor**
i. On February 9, 2021, Berkeley Research Group, LLC and Borrego entered into an independent monitor agreement…
***
v. Borrego agrees that the independent monitor shall take direction from and work exclusively for the benefit of DHCS. Borrego agrees that monitor shall report directly to DHCS.
***
viii. Borrego shall institute a robust corporate integrity and compliance program to ensure compliance with all Medi-Cal law in accordance with the recommendations of the independent monitor.

- 7 -

ix. **Borrego shall promptly and fully implement all corrective action identified by the independent monitor or DHCS upon notice from DHCS**. …. A failure by Borrego to promptly and fully implement the corrective action may, at DHCS' discretion, subject Borrego to immediate reinstatement of the November 18, 2020 Medi-Cal payment suspension.

x.. …. **Borrego acknowledges its obligation, pursuant to Section 1128J(d)(1) of the Social Security Act and all other applicable authorities, to report and return any overpayments to Medi-Cal. Borrego agrees to use its best efforts to cooperate and identify overpayments and repay them. DHCS reserves all rights to pursue any remedies against Borrego, including, but not limited to, repayment … and penalties.**

(Exhibit 2, Deft.'s RFJN., Document 7-1, Page ID.794  pp. 3-7, emphasis added.)

It is impossible to understand how defendants can read the Agreement between DHCS and Borrego (RFJN Exhibit 2) as supporting the notion the  actions of DHCS and its Monitor do not lead to the action here on leases under which defendants were going to be paid more than $58 million over fair market value, all to be funded by the taxpayers as the result of Borrego simply including the inflated rents in annual cost reports to CMS. What is Borrego supposed to do? Agree to investigate, report, and be held financially accountable for defendants' scheme without taking action to recover the stolen funds from the perpetrators?

C.    The Term Sheet (Exhibit 3).

Defendants attach Exhibit 3 to their request for judicial notice but do not cite to or rely upon Exhibit 3 in their moving papers.  Defendants' failure to explain why Exhibit 3 should be judicially noticed in their moving papers is grounds for denying the request. (*Contra Costa County Deputy Sheriffs Ass'n v. Mitchoff* (N.D. CA 2015) 2015 U.S.Dist.LEXIS 37148, *7).

// // //

// // //

- 8 -

## III.    <u>Incorporation-by-reference doctrine</u>.

Defendants ask this Court to incorporate Exhibits 1-3 by reference into the SAC under the common law incorporation-by-reference doctrine, citing *Khoja v. Orexigen Therapeutics, Inc.* (9th Cir. 2018) 899 F.3d 988, 1002.

The Court in *Khoja* recognized the doctrine is generally disfavored and should be used with caution:

> [I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims. [Citations]. Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts. Without that opportunity to respond, the defendant's newly-expanded version of the complaint — accepted as true at the pleading stage — can easily topple otherwise cognizable claims. Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim. [¶] For this same reason, what inferences a court may draw from an incorporated document should also be approached with caution.

(*Id.* at 1002-1003).

Exhibits 1 through 3 are not attached to the SAC.  Defendants are therefore attempting to dispute (albeit inaccurately) factual allegations by asking this Court to incorporate by reference Exhibits 1 through 3 into the SAC in support of their motion. As discussed above, defendants argue Exhibits 1-3 prove Borrego was never directed to file this lawsuit or withhold payments to defendants, and therefore the DHCS and defendants do not have competing claims against a single, identifiable fund.  The argument has no merit.

- 9 -

1    Defendants cannot ask the Court to incorporate by reference Exhibit 1-3 for the
2    sole purpose of trying to dispute factual allegations in the well-pled SAC.

3    But even if the Court were to incorporate by reference Exhibits 1-3, those
4    exhibits in fact support Borrego's allegations that DHCS's  Corrective Action Plan and
5    DHCS' Agreement with Borrego compel Borrego to take action against defendants to
6    cause the defendants and not Borrego to bear the cost of the unlawful lease agreements
7    at issue here.

8    In sum, even though the documents attached as Exhibits 1, 2, and 3 to
9    defendants' RFJN support plaintiff's course of action here, there is no reason to
10   incorporate any part of them into plaintiff's complaint.  Borrego therefore asks the
11   Court to deny the request for incorporation.

12   Dated: September 6, 2021               HATTON, PETRIE & STACKLER APC

13                                          /s/ Gregory M. Hatton

14                                 By: _____
                                        GREGORY M. HATTON
15                                      ARTHUR R. PETRIE, II
16                                      DAN E. HECK
                                        Attorneys for Plaintiff
17                                      BORREGO COMMUNITY HEALTH
18                                      FOUNDATION

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

3        I certify that on September 6, 2021, I caused the foregoing document to be

4   presented to the Clerk of the Court for electronic filing and uploading to the CM/ECF

5   system. In accordance with the ECF registration agreement and the Court's rules, the
    Clerk of the Court will send email notification of such filing to all attorneys and
    parties of record.

6

7                                      /s/ Gregory M. Hatton

8                                      _____
                                       Gregory M. Hatton
9                                      HATTON, PETRIE & STACKLER APC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTF'S RESPONSE AND OBJECTIONS TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS