JOSEPH R. LAMAGNA (State Bar No. 246850)
JORDAN KEARNEY (State Bar No. 305483)
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, California 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
E-Mail: jlamagna@health-law.com
         jkearney@health-law.com

DEVIN M. SENELICK (State Bar No. 221478)
TARYN A. REID (State Bar No. 328772)
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067
Telephone: (310) 551-8111
Facsimile: (310) 551-8181
E-Mail: dsenelick@health-law.com
         treid@health-law.com

Attorneys for Plaintiff
BORREGO COMMUNITY HEALTH FOUNDATION

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INLAND VALLEY INVESTMENTS, LLC, a California limited liability company; DRP HOLDINGS, LLC, a California limited liability company; PROMENADE SQUARE, LLC, a California limited liability company; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:21-cv-01417-L-AGS<br><br>Hon. Anthony J. Battaglia, Courtroom 4A<br><br>**REPLY TO OPPOSITION OF DRP HOLDINGS, INLAND VALLEY INVESTMENTS, LLC, AND PROMENADE SQUARE, LLC TO MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>Date:   April 6, 2023<br>Time:   2:00 P.M.<br>Ctrm.:  4A<br><br>Trial Date:   None Set |

Case No. 3:21-cv-01417-L-AGS
REPLY TO OPPOSITION OF DRP HOLDINGS, INLAND VALLEY INVESTMENTS, LLC, AND PROMENADE SQUARE, LLC TO MOTION FOR LEAVE TO AMEND COMPLAINT

7299951.4

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................... 5

II. PROCEDURAL HISTORY/FACTUAL BACKGROUND ............................. 6

III. THE MOTION SEEKS TO EFFICIENTLY LITIGATE THE LEASE SCHEME LITIGATION AND MULTI-SCHEME LITIGATION, AS THE FORMER IS FULLY SUBSUMED WITHIN THE LATTER .............. 8

    A. Borrego Health's Motion is Procedurally Proper ................................. 8

    B. Borrego Health's Motion is Substantively Sufficient .......................... 12

IV. THE *FOMAN* FACTORS DO NOT PRECLUDE THE COURT FROM GRANTING BORREGO HEALTH'S MOTION ......................... 13

V. THE PRACTICAL RAMIFICATIONS OF DENYING THE MOTION ARE SIGNIFICANT DUPLICATION OF WORK PENDING A MOTION TO CONSOLIDATE ................................................................ 17

VI. THERE IS A PRESUMPTION IN FAVOR OF GRANTING AMENDMENT ................................................................................... 18

VII. CONCLUSION ....................................................................................... 19

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

7299951.4

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .......................................................................... 18

*Enter. Bank v. Saettele*,
  21 F.3d 233 (8th Cir. 1994) .............................................................................. 11

*Foman v. Davis*,
  371 U.S. 178 (1962) ..................................................................... 13, 14, 18

*Hahn v. City of Carlsbad*,
  No. 15-CV-2007, 2016 WL 7637682 (S.D. Cal. July 26, 2016) .................. 9, 12

*J.G. Link & Co. v. Continental Cas. Co.*
  470 F.2d 1133 (9th Cir. 1972) .......................................................................... 11

*Johnson v. Manhattan Ry. Co.*,
  289 U.S. 479 (1933) .......................................................................................... 11

*Larson v. Iboshi*,
  441 F. App'x 511 (9th Cir. 2011) ....................................................................... 9

*Neev v. Abbott Med. Optics Inc.*,
  No. SACV1501992, 2017 WL 11628868 (C.D. Cal. Apr. 3, 2017) .................... 9

*Oregon Natural Desert Ass'n v. McDaniel*,
  751 F. Supp. 2d 1151 (D. Or. 2011) .................................................................. 14

*Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*,
  708 F.3d 1109 (9th Cir. 2013) .......................................................................... 18

*TCI Grp. Life Ins. Plan v. Knoebber*,
  244 F.3d 691 (9th Cir. 2001) ............................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL RULES

Civil Local Rule 15 ................................................................................................... 9

Civil Local Rule 15.1(b) ........................................................................................... 9

Civil Local Rule 15(a) ............................................................................................ 18

Federal Rules of Civil Procedure Rule 42 ........................................................ 11, 15

## I. INTRODUCTION

Defendants, Inland Valley Investments, LLC, DRP Holdings, LLC, and Promenade Square, LLC (collectively the "Priest LLCs") vehemently oppose Borrego Community Health Foundation's ("Borrego Health") request to litigate two matters where one action is a subpart of, and fully subsumed within, the other. Given the overall efficiency such a request offers, it begs the question of why the Priest LLCs seem so opposed. With minimal examination, then answer is clear: the Priest LLCs do not want the Court to consider the full scope of the RICO schemes at issue when evaluating the pending motion to dismiss. This is because having all relevant facts on display demonstrates a clear pattern and practice of misconduct by the Priest LLCs, their owner Daryl Priest, other Priest-owned entities, and their respective agents (among others).

As a practical matter, Borrego Health seeks to litigate the above-captioned action (the "Lease Scheme Litigation") and *Borrego Community Health Foundation v. Karen Hebets, et al.*, Case No. 3:22-cv-01056-AJB-AGS (the "Multi-Scheme Litigation") as one action.[1] The two matters are both before the Honorable Anthony Battaglia and have already been deemed related by this Court due to the fact that the Lease Scheme Litigation and the Multi-Scheme Litigation appeared to: (1) " arise from the same or substantially identical transactions, happenings or events"; (2) "involve the same or substantially the same parties or property"; (3) "call for a determination of the same or substantially identical questions of law"; and (4) "entail unnecessary duplication of labor if heard by different judges." (Multi-Scheme Litigation ECF No. 10.) The Lease Scheme Litigation is merely a component of the Multi-Scheme Litigation, and as such, judicial economy and efficiency would be best served by proceeding as a single case.

---

[1] As indicated in Borrego Health's moving papers, Borrego Health welcomes another alternative to effectively litigate the two actions should the Court believe an alternative mechanism would better promote judicial efficiency and economy.

## II. PROCEDURAL HISTORY/FACTUAL BACKGROUND

While the full scope of the procedural history has been outlined in both these moving papers and the pending Motion for Leave to Amend in the Multi-Scheme Litigation (*see* Multi-Scheme Litigation ECF No. 123; Lease Scheme Litigation ECF No. 36), a brief summary of the factual allegations in the Lease Scheme Litigation and the Multi-Scheme Litigation is included below for the Court's convenience.

The Lease Scheme Litigation (this action) brings claims against three entities, Inland Valley Investments, LLC, DRP Holdings, LLC, and Promenade Square, LLC (collectively the "Priest LLCs"). Borrego Health understands that all three defendants are solely owned and managed by Daryl Priest. (*See* Lease Scheme Litigation Proposed Fourth Amended Complaint ¶¶ 340-343; Multi-Scheme Litigation Proposed First Amended Complaint ¶¶ 338-341.) Borrego Health further asserts that Travis Lyon, an experienced commercial real estate development and management executive, acted alongside Daryl Priest to coordinate and arrange the commercial leases at issue in this action. (*See* Lease Scheme Litigation Proposed Fourth Amended Complaint ¶¶ 340-343; Multi-Scheme Litigation Proposed First Amended Complaint ¶¶ 338-341.) The Priest LLCs, through the actions of Daryl Priest, Travis Lyon and others, concealed the above-fair market value of the relevant leases, and went directly to Bruce Hebets, Mikia Wallis, Diana Thompson, and possibly others (a subset of the group defined in the proposed complaint as the "Borrego Insiders") to avoid review by the full Borrego Health Board prior to entering into the three leases.[2]

---

[2] The Proposed Fourth Amended Complaint has subsequently removed reference to the prior personal friendship between Bruce Hebets and Daryl Priest, as Borrego Health's investigation have provided further clarity regarding their relationship. Despite the Priest LLC's representations, this lack of close personal friendship has no bearing on Borrego Health's RICO claims. (Oppo. 13:9-15.) As alleged in the Proposed Fourth Amended Complaint, it appears that Bruce Hebets worked alongside the Borrego Insiders, the Priest LLCs, and the Premier Defendants (among others) to establish multiple schemes which would allow them to receive

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL  (619) 744-7300  •  FAX (619) 230-0987

7299951.4

As a result of Daryl Priest and Travis Lyon's conduct, in conjunction with several Borrego Insiders, Borrego Health entered into several leases which, in total, requirement payments of $58 million above fair market rent. (Lease Scheme Litigation Proposed Fourth Amended Complaint ¶¶ 335-352; Multi-Scheme Litigation Proposed First Amended Complaint ¶¶ 335-352.) The full scope of the Lease Scheme (referred to as the "Priest Leases Scheme" in both proposed complaints), is found in paragraphs 335-352 of both the Proposed Fourth Amended Complaint in this action, and the Proposed First Amended Complaint in the Multi-Scheme Litigation. Also attached to the Proposed Fourth Amended Complaint are the relevant leases between Borrego Health and the Priest LLCs.

As shown by the proposed amended complaints, the allegations pertaining to these leases are merely one scheme amidst a larger conspiracy. The Multi-Scheme Litigation includes allegations of several additional schemes in which Daryl Priest, Travis Lyon, and other related defendants acted to conceal other fraudulent business ventures at the expense of Borrego Health. These schemes include Daryl Priest, his son Nicholas Priest, and Travis Lyon creating healthcare consulting companies Premier Healthcare Management Company and Summit Healthcare Management, Inc. (collectively the "Premier Defendants") without any prior healthcare experience. (Lease Scheme Litigation Proposed Fourth Amended Complaint ¶¶ 25-27; Multi-Scheme Litigation Proposed First Amended Complaint ¶¶ 25-27.) The "Premier Defendants" then entered into several agreements in which they would receive $25/ for every claim that was processed. (Lease Scheme Litigation Proposed Fourth Amended Complaint ¶¶ 95-97; Multi-Scheme Litigation Proposed First Amended Complaint ¶¶ 95-97.) Because the Premier Defendants were paid per claim, they encouraged Dental Defendants to submit duplicative and fraudulent bills, and/or

---

above-market compensation, rent payments and other forms of remuneration in order to enhance their own personal profit.

7299951.4

7   Case No. 3:21-cv-01417-L-AGS
REPLY TO OPPOSITION OF DRP HOLDINGS, INLAND VALLEY INVESTMENTS, LLC, AND PROMENADE SQUARE, LLC TO MOTION FOR LEAVE TO AMEND COMPLAINT

failed to appropriately review and screen the claims which were submitted to them. (Lease Scheme Litigation Proposed Fourth Amended Complaint ¶ 102; Multi-Scheme Litigation Proposed First Amended Complaint ¶ 102.) For each unsubstantiated, duplicate and/or fraudulent claim, the Premier Defendants were improperly paid. (*Id.*) The allegations within the Multi-Scheme Litigation establish a clear picture of an ongoing pattern of misconduct by these defendants in both actions.

Given that this action is merely a subset of the Multi-Scheme Litigation, Borrego Health anticipates a complete overlap in future motion practice and discovery, as well as a complete overlap in determination of questions of law. As such, Borrego Health has moved to obtain leave to amend the complaint in this action to effectively merge the Lease Scheme Litigation and the Multi-Scheme Litigation.[3]

## III. THE MOTION SEEKS TO EFFICIENTLY LITIGATE THE LEASE SCHEME LITIGATION AND MULTI-SCHEME LITIGATION, AS THE FORMER IS FULLY SUBSUMED WITHIN THE LATTER

### A. Borrego Health's Motion is Procedurally Proper

The Priest LLCs first attempt to argue that the pending motion should be dismissed because of supposed procedural defects. (*See* Opposition at 6:17-8:17.)

---

[3] As the merits of their arguments fail, the Priest LLCs repeatedly try to offer nefarious implications underlying Borrego Health conduct without any factual support. For example, in fn. 26, the Priest LLCs state: "It is worth noting here that BCHF has again chosen its words carefully regarding the future of the *Hebets* case if the Court grants this Motion. (Mot., 7:24 – 8:3.) BCHF observes that the two suits would be "entirely duplicative . . . allowing the [*Hebets* case] to be dismissed." (*Id.* at 8:2-3.) This is not the same as simply saying that BCHF will dismiss the *Hebets* case. The Court should be suspicious of this strategic use of passive voice." Should such relief be granted, Borrego Health anticipates this Court will order for the dismissal of the Multi-Scheme Litigation once all defendants have been properly served with notice of the merged actions. It offered a solution in passive voice to account for the fact that this Court may deem another method of consolidation appropriate in lieu of the requested relief. Arguments such as these further highlight the Priest LLC's intent to use distraction tactics in an attempt deter the Court from making practical decisions on how to efficiently manage the two matters.

8   Case No. 3:21-cv-01417-L-AGS
REPLY TO OPPOSITION OF DRP HOLDINGS, INLAND VALLEY INVESTMENTS, LLC, AND PROMENADE SQUARE, LLC TO MOTION FOR LEAVE TO AMEND COMPLAINT

7299951.4

As an initial matter, the Ninth Circuit has adopted the policy that matters should be determined on their merits "whenever reasonably possible," not on procedural technicalities. *Hahn v. City of Carlsbad*, No. 15-CV-2007, 2016 WL 7637682, at *1 (S.D. Cal. July 26, 2016); *see also Neev v. Abbott Med. Optics Inc.,* No. SACV1501992, 2017 WL 11628868, at *3 (C.D. Cal. Apr. 3, 2017); *Larson v. Iboshi*, 441 F. App'x 511, 514 (9th Cir. 2011). While Borrego Health contends there are no procedural defects in its pending motion, on this basis alone, any procedural defects cannot form the basis for denying the pending motion.

As mentioned in the moving papers, the proposed amendment is a complete departure from the Third Amended Complaint. Therefore, the offered "redline" (as required by Local Rule 15) shows the entire proposed amendment as new text (shown in blue) and the entire Third Amended Complaint as deleted text (shown in red strikethrough). This is compliant with Local Rule 15 which requires that a version of the proposed amendment be attached which shows "how that pleading differs from the previously dismissed pleading." (L.R. 15.1(b).) Yet, Borrego Health acknowledges that this redline, while compliant, is not particularly useful. According, Borrego Health explained the differences in its moving papers. Should defendants or the Court require further information, the nature of the Third Amended Complaint has been incorporated into paragraphs 23-28, and 335-359 of the Proposed Fourth Amended Complaint.[4] Also attached are the same lease agreements and amendments found attached to the Third Amended Complaint.

The Priest LLCs also take issue with the timing of the amendment. (*See* Opp. 7:13-18.) Yet, the timing is entirely due to the amount of time it took to discover,

---

[4] The Priest LLCs assert that several factual allegations from the Third Amended Complaint have been deleted or amended, which indicates that the Priest LLCs have been able to review and effectively note the differences between the two complaints. (*See* Oppo. 7:23-8:2.) As such, the presentation of the produced redline has not impacted the Priest LLC's ability to evaluate the allegations against them.

investigate and unravel the misconduct the Priest LLCs, the Premier Defendants and others, which they have (until recently) intentionally and successfully concealed. This is in addition to the reasonable time Borrego Health required to research and draft this Motion and the Proposed Fourth Amended Complaint. As is outlined in the Third Amended Complaint in this proceeding, the Department of Health Care Services ("DHCS") conducted raids of Borrego Health facilities in October 2020, which led to ongoing investigations regarding the Priest LLC leases and other contracts between Borrego Health and Priest-owned entities. (Lease Scheme Litigation Third Amended Complaint ¶¶ 27-28.) The Priest LLCs apparently attempt to assert that Borrego Health should have discovered all of the misconduct that is the subject of this case at once. What the Priest LLCs fail to appreciate is that discovery of their concealed misconduct has been an incremental, ongoing process. Due to the complexity of the schemes hatched by the Priest LLCs, the Premier Defendants and others in the Multi-Scheme Litigation (including the Lease Scheme), and the significant efforts the defendants took to conceal their misconduct, Borrego Health has been involved in ongoing investigations to uncover the full scope of the defendants' misdeeds. The Priest LLCs and the Premier Defendants cannot be permitted to use the wide scope, complexity and concealment of their own misconduct as the basis their opposition here. The simple fact is that Borrego Health has filed its pleadings, and sought to amend them, as additional information has been discovered.

Relatedly, the Priest LLCs in their Opposition repeatedly complain that Hooper, Lundy & Bookman, P.C.—newly substituted counsel of record for Borrego Health in this matter—cannot be deemed "new" because Borrego Health has been a firm client since 2018. (*See* Oppo. 6:20-25, 7:12-18, 18:5.) This argument attempts to distract the Court away from the core issue motivating Borrego Health's motion—that with identical issues and identical counsel of record, litigative and judicial efficiency would be best served by merging the actions.

Regarding the form of the requested relief, the Priest LLC's assert that Borrego Health seeks to improperly bring forward a Motion to Consolidate. (*See* Oppo. 8:3-17.) As Borrego Health openly acknowledges in its moving papers[5], it seeks to litigate the Lease Scheme Litigation and the Multi-Scheme Litigation as efficiently and expeditiously as possible. With the same counsel now representing Borrego Health and all Priest-related defendants (the Priest LLCs in the Lease Scheme Litigation, and the Premier Defendants in the Multi-Scheme Litigation), now more than ever does it make sense to merge the actions into one case.

While atypical, Borrego Health seeks leave to amend over consolidation for a particular purpose—because consolidation does not address full merging the two actions. Federal Courts, including the Ninth Circuit, have interpreted that consolidation under Federal Rules of Civil Procedure ("F.R.C.P."), Rule 42 does not merge two actions. Rather, each action retains its separate traits, and the parties in one action do not become parties to the other action merely by deeming the matters consolidated. *See J.G. Link & Co. v. Continental Cas. Co.,* 470 F.2d 1133, 1138 (9th Cir. 1972); *see also Enter. Bank v. Saettele*, 21 F.3d 233, 236 (8th Cir. 1994) ("…consolidation, when proper, does not merge [] two separate lawsuits"), relying on *Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 496–97 (1933).

Here, Borrego Health did not file a Motion to Consolidate under F.R.C.P. Rule 42, because it does not seek to consolidate the actions under Rule 42—it seeks to merge them. And while functionally the matters would be consolidated in the layperson understanding of the word, the legal ramifications differ from the

---

[5] The Priest LLC's Opposition asserts that Borrego Health has attempted to disguise a motion to consolidate through its moving papers. (*See* Oppo. 8:5.) As discussed herein, Borrego Health has been very explicit and intentional in its requested relief, and has openly explained that it seeks to merge the Lease Scheme Litigation with the Multi-Scheme Litigation. The Ninth Circuit does not provide for the requested relief under Rule 42, and as such, a different motion has been presented to the Court for consideration.

requested relief sought. As such, Borrego Health brought this pending motion in the hopes of effectively merging the two actions to avoid duplication of litigation.[6]

### B. Borrego Health's Motion is Substantively Sufficient

The Priest LLCs argue that Borrego Health's Motion for Leave to Amend should be denied, as it fails to address the deficiencies mentioned in this Court's Order regarding the Priest LLC's Motion to Dismiss Borrego Health's Second Amended Complaint. (*See* Oppo. 9:1-24.)[7]

---

[6] The Priest LLCs also seem assert that Borrego Health could have merely added the Priest LLCs as named defendants in the Multi-Scheme Litigation when it originally filed its Complaint in that action. (*See* Oppo. 6:6-9.) However, such a solution is barred, as plaintiff's cannot file two identical actions against the same defendants for the same conduct. As such, merely adding the three Priest LLC defendants into the Multi-Scheme Litigation would not address Borrego Health's request to avoid duplicative litigation.

[7] The Priest LLCs further argue that the proposed amendment is substantively deficient in that Borrego Health has "repeatedly fail[ed] to cure deficiencies" in the complaint. (Oppo. 9:1-4.) However, the Court has only evaluated the merits of Borrego Health's complaint once before. (Lease Scheme Litigation ECF No. 15.) After filing its original Complaint in state Court, Borrego Health promptly filed its First Amended Complaint in order to remedy a filing error in the lease attachments. (*Borrego Community Health Foundation v. Inland Valley Investments LLC*, Case No. 37-2021-00024676-CU-FR-CTL, ROA # 8.) Borrego Health then obtained a Joint Stipulation with the Priest LLCs in order to file its Second Amended Complaint (*Id*. at ROA # 14.) The Second Amended Complaint added the allegations regarding the RICO schemes, which prompted the Priest LLCs to remove the action to federal court. (*Id*. at ROA #16.) This Court evaluated the allegations of Borrego Health's complaint for the first time when it issued an Order related to the Priest LLC's Motion to Dismiss Borrego Health's Second Amended Complaint. (Lease Scheme Litigation ECF No. 15.) The Court has not yet made any determinations regarding Borrego Health's Third Amended Complaint. In essence, the Priest LLCs argue that this Motion should be denied, in part, because Borrego Health remedied a missing attachment to the complaint when the matter was before the state court. Again, as matters should be determined on their merits whenever reasonably possible, such an argument does not form a proper basis for denying the requested amendment. *See Hahn v. City of Carlsbad*, No. 15-CV-2007, 2016 WL 7637682, at *1 (S.D. Cal. July 26, 2016).

While the overarching purpose for the pending motion seeks to efficiently litigate the Lease Scheme Litigation and the Multi-Scheme Litigation, the proposed amendment also addresses all of the concerns previously raised by this Court when evaluating Borrego Health's Second Amended Complaint. (*See* Lease Scheme Litigation ECF No. 15.) The Court, in evaluating the allegations in the Second Amended Complaint, indicated that allegations of "conduct or participat[ion]" and "racketeering activity" were absent from the complaint. (*Id.* 3:6-4:7.)

The proposed Fourth Amended Complaint adds hundreds of allegations which demonstrate the Priest LLCs involvement in the greater RICO schemes and provide a significant amount of detail related to the racketeering activity that occurred within the enterprise. (*See* Lease Scheme Litigation Proposed Fourth Amended Complaint ¶¶ 66-131, 335-359.)

The Court's Order regarding the Second Amended Complaint further indicates that the applicable statute of limitations period, as alleged in that iteration of the complaint, indicates harm upon the date the leases were executed as no allegations of fraudulent concealment were alleged which would permit equitable tolling. (*See* Lease Scheme Litigation ECF No. 15, 5:9-10.) However, among other things, the Proposed Fourth Amended Complaint details the efforts in which the defendants attempted to conceal their misconduct from the full Borrego Health Board. (*See* Lease Scheme Litigation Proposed Fourth Amended Complaint ¶¶ 336, 349.)

## IV. THE *FOMAN* FACTORS DO NOT PRECLUDE THE COURT FROM GRANTING BORREGO HEALTH'S MOTION

As mentioned in Borrego Health's moving papers, "[a] motion for leave to amend should be granted unless there has been a showing that to permit the amendment would produce an undue delay in the litigation, that the motion was brought in bad faith or out of dilatory motive, that the movant has repeatedly failed to cure deficiencies in the complaint by previous amendments, that the proposed

amendment would unduly prejudice an opposing party, or that the proposed amendment would result in futility for lack of merit." *Oregon Natural Desert Ass'n v. McDaniel*, 751 F. Supp. 2d 1151, 1155 (D. Or. 2011); *see Foman v. Davis,* 371 U.S. 178, 182 (1962).

The Opposition focuses on Borrego Health's alleged delay in filing the pending Motion. However, that is not a factor under *Foman*. *Foman* focuses on whether the proposed amendment would cause undue delay <u>to the litigation</u>. As both matters are awaiting a decision from the Court regarding whether the complaints can be amended, no such delay is present. Further, as explained in its moving papers and herein, Borrego Health's investigation has been ongoing in discovering concealed misconduct by the defendants in each action. Borrego Health filed its original complaint in the Multi-Scheme Litigation in July 2022, once it discovered substantial evidence demonstrating the alleged schemes. The briefing in the Lease Scheme Litigation was submitted months before the filing of the Multi-Scheme Litigation. As such, Borrego Health was still unaware of much of the information alleged in the Multi-Scheme Litigation when it filed its Opposition to Priest LLC's Motion to Dismiss the Third Amended Complaint.

As outlined above, this Court has only evaluated the merits of the Complaint once before. Further, the proposed amendment addresses all of the concerns previously raised in this Court's order. As such, the Priest LLCs "futility" and "repeated failure to cure deficiencies" arguments fail. Further, there would be no undue delay in granting the motion. Both the Lease Scheme Litigation and the Multi-Scheme Litigation are at the pleading stages and neither have commenced discovery. No written discovery requests have been exchanged and no depositions have been taken. By granting the pending motion, the Priest LLCs and Premier Defendants will only need to file one motion to dismiss the operative complaint, which they have already indicated they plan to do regardless of any potential

7299951.4

14   Case No. 3:21-cv-01417-L-AGS
REPLY TO OPPOSITION OF DRP HOLDINGS, INLAND VALLEY INVESTMENTS, LLC, AND PROMENADE SQUARE, LLC TO MOTION FOR LEAVE TO AMEND COMPLAINT

amendment. Practically, both actions merging does not impact the current timeline of the litigation for either action given that both matters are still in their infancy.

Nor did Borrego Health act in bad faith or dilatory motive in filing the pending motion. As explained above, consolidating the actions under F.R.C.P. Rule 42 would not offer the form of relief which Borrego Health seeks—a merging of the two cases. In light of the overlapping counsel for both parties in both matters, and before the culmination of discovery, now is the appropriate time to make such a request to minimize potential disruption later in the matters.

Further, neither defendants in the Lease Scheme Litigation nor the Multi-Scheme Litigation are prejudiced by the requested relief. The defendants in the Multi-Scheme Litigation are already on notice of the misconduct alleged against each defendant, and have been put on notice of the Lease Scheme Litigation as the scheme itself is fully alleged in the Multi-Scheme Litigation (indeed, as stated above, the Lease Scheme is a subpart of, and fully subsumed in, the Multi-Scheme Litigation). Both matters are before the same judge, and both actions have already been deemed related by the Court as they appear to: (1) " arise from the same or substantially identical transactions, happenings or events"; (2) "involve the same or substantially the same parties or property"; (3) "call for a determination of the same or substantially identical questions of law"; and (4) "entail unnecessary duplication of labor if heard by different judges." (Multi-Scheme Litigation ECF No. 10.)

If the actions are merged, the defendants in the Multi-Scheme Litigation will continue to defend against the same allegations, file the same motions in the same department before the same judge, make the same discovery requests, and proceed with the same settlement negotiations. The only impact merger may have on the defendants is that the parties will need to update the caption.

Further, the merging of the two actions does not prejudice the Priest LLCs. Instead of requesting the same discovery in both actions, requests only need to be made once. Instead of filing two motions to dismiss or two motions for summary

judgment, only one motion would be necessary. Instead of two hearings before the court on the same issues, there will only be one. In terms of overall cost and efficiency, the Priest LLCs are not harmed by merging the two actions. The Priest LLCs attempt to assert that having to litigate against "irrelevant allegations against dozens of unrelated defendants" is prejudicial because the "dentists [have] no <u>commercial</u> connection to the current landlord Defendants." (Oppo.9:15-17; 23:1, emphasis added.) The Priest LLC's include the seemingly innocuous word "commercial" because without that word (and perhaps even with it) the statement is untrue. This is a blatant attempt to distance themselves from the fact that they, by and through their owners and operators, orchestrated and participated in a multitude of interconnected fraudulent schemes to the detriment of Borrego Health. Indeed, the Multi-Scheme Litigation highlights just how interconnected the defendants are to the various schemes. The facts of the Lease Scheme Litigation are already alleged a Multi-Scheme Litigation. Daryl Priest, the owner of the Priest LLCs, and Travis Lyon, the individual that orchestrated the above-fair market leases, must already defend against the Lease Scheme Litigation in both actions. The Multi-Scheme Litigation merely addresses the Court's prior concerns regarding the interconnectivity of the racketeering actions taken by the defendants. As merely being forced to litigate the merits of an action does not constitute prejudice, the Priest LLCs arguments fail.[8] *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001), overruled in part on other grounds.

Further, there is no prejudice as it pertains to the timing of the pending motion. The Court issued an order on March 7, 2022 offering Borrego Health the

---

[8] The Priest LLCs further request that they be awarded attorneys' fees for the filing of their Motions to Dismiss. This identical argument was raised by the Priest-owned entities in the Multi-Scheme Litigation. Borrego Health incorporates by reference all arguments from its Reply to its Motion for Leave to Amend in the Multi-Scheme Litigation which explain why such a request should be denied. (Multi-Scheme Litigation ECF No. 134.)

opportunity to amend its complaint. On March 22, 2022, Borrego Health filed its Third Amended Complaint. The Priest LLCs filed their Motion to Dismiss Borrego Health's Third Amended Complaint on April 5, 2022, and the briefing for the motion was completed on May 2, 2022. The matter has sat pending since May 2022 while awaiting resolution of that motion. As such, this Motion does not impact any pending filings or actions by the Priest LLCs. Since the DHCS raids in October of 2020, Borrego Health has conducted ongoing investigations which continue to reveal the broader scope of misconduct committed by the Priest-owned entities in both the Lease Scheme Litigation and the Multi-Scheme Litigation. This Motion merely seeks to merge two actions which outline the full scope of currently discovered evidence against the Priest LLCs and the Priest-owned entities.

## V. THE PRACTICAL RAMIFICATIONS OF DENYING THE MOTION ARE SIGNIFICANT DUPLICATION OF WORK PENDING A MOTION TO CONSOLIDATE

If the pending Motion for Leave to Amend is denied, both actions will litigate duplicative issues. First, the Court will need to evaluate the pending Motion to Dismiss the Third Amended Complaint with the knowledge that Borrego Health has hundreds of allegations in which it can (and will) provide via amendment. If granted leave to amend, as the Priest LLCs imply in their opposition that they intend to file yet another motion to dismiss. As the Priest-owned entities in the Multi-Scheme Litigation have already filed a motion to dismiss, the Court would then be evaluating two identical motions to dismiss which attack identical allegations pertaining to the relevant leases and related schemes.

Practically, the parties will seek the same information in discovery to determine the scope and nature of the racketeering activity alleged, and any future motions by the Priest-owned entities will likely be filed in both actions in light of the fact the Lease Scheme Litigation is merely a subset of the Multi-Scheme Litigation.

Once the issues have been further evaluated, Borrego Health could file a Motion to Consolidate, but again, both actions would retain their separate nature, so there would still be two independent actions with identical overlapping issues.

Ultimately, this action will need to be merged or consolidated in some capacity. Delay in doing so merely duplicates work from both the parties and the Court until such a determination is made. Borrego Health seeks such relief now in advance of substantive motion practice and discovery.

## VI. THERE IS A PRESUMPTION IN FAVOR OF GRANTING AMENDMENT

As outlined in Borrego Health's moving papers, there is a "presumption under Rule 15(a) in favor of granting leave to amend." *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). This policy favoring amendment is to be applied with "extreme liberality." *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). Because federal policy favors "a proper decision on the merits" and "just . . . determination of every action," leave to amend the pleadings is freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Even the *Foman* court supports this position: "…outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Borrego Health seeks amendment to incorporate recently discovered evidence to address the Court's prior concerns regarding the RICO allegations in the Second Amended Complaint. Borrego Health has provided a comprehensive complaint which thoroughly alleges the interconnected conduct between the defendants, as well as the scope of the racketeering activity across multiple scheme. Given policy of liberally granting amendment, as well as the general public policy of determining cases on their merits, Borrego Health requests its Motion for Leave to Amend be granted.

7299951.4

18   Case No. 3:21-cv-01417-L-AGS

REPLY TO OPPOSITION OF DRP HOLDINGS, INLAND VALLEY INVESTMENTS, LLC, AND PROMENADE SQUARE, LLC TO MOTION FOR LEAVE TO AMEND COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

## VII. CONCLUSION

For the above-mentioned reasons, Borrego Health respectfully requests that its Motion for Leave to Amend be granted, or in the alternative, that this Court schedule a joint status conference in both matters to determine how best to coordinate the two actions.

DATED: January 20, 2023         HOOPER, LUNDY & BOOKMAN, P.C.

By: _____
DEVIN M. SENELICK
Attorneys for Plaintiff Borrego Community Health Foundation