UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California non-profit public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>INLAND VALLEY INVESTMENTS, LLC, a California limited liability company; DRP HOLDINGS, LLC, a California limited liability company; PROMENADE SQUARE, LLC, a California limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:  21-cv-01417-AJB-AGS<br><br>**ORDER:**<br><br>**DENYING MOTION FOR LEAVE TO AMEND THE COMPLAINT and**<br><br>**GRANTING MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>**(Doc. Nos. 19, 36)** |

Before the Court are two motions—a motion to dismiss the Third Amended Complaint filed by Inland Valley Investments, LLC ("Inland"); DRP Holdings, LLC ("DRP"); and Promenade Square, LLC ("Promenade") (collectively, "Defendants") and a motion for leave to amend the TAC filed by Borrego Community Health Foundation ("Plaintiff" or "BCHF") after the motion to dismiss was fully briefed and taken under

submission by this Court. For the reasons set forth below, the Court **DENIES** the motion for leave to amend the TAC as procedurally defective and **GRANTS** the motion to dismiss.

## I. BACKGROUND

Plaintiff BCHF is a California non-profit corporation and federally qualified health center that provides healthcare to individuals in underserved communities. It operates over 20 clinics throughout San Diego, Riverside, and San Bernardino counties.

Defendants Inland, Promenade, and DRP (collectively referred to in the TAC as the "Priest LLCs") are limited liability companies engaged in the business of commercial real estate. Defendants' sole member and manager is Daryl Priest ("Priest"). Priest develops, owns, and leases commercial property and is a long-time personal friend of BCHF's former chief executive officer ("CEO"), Bruce Hebets ("Hebets"). Defendants leased three health care clinics to BCHF. According to Plaintiff, Hebets worked with Defendants—operating through Priest—to create, implement, and maintain the three leases, which bound BCHF to 30-year leases at more than twice the fair market rent.

Plaintiff alleges that although all leases require approval from BCHF's all-volunteer Board of Trustees ("Board"), the leases at issue were never presented to the Board for authorization or approval. Instead, Hebets unilaterally signed each of the contracts (collectively referred to in the TAC as "Priest Leases"), in September 2012, September 2015, and February 2016. The Priest Leases were also later amended without the Board's knowledge or approval.

Hebets retired from BCHF in 2018. BCHF continued to lease the three properties from Defendants. Plaintiff alleges that during his final years as CEO, Hebets was in communication with Priest and Priest's senior executive in charge of Defendants' operations, Travis Lyons ("Lyons"), who was also aware of the exorbitant lease terms. Plaintiff asserts that Priest and Lyons maintained direct involvement in BCHF's operational and management decisions that were essential to the continuation of the grossly overpriced leases and carried out Hebets' directives relating thereto.

   As Hebets was nearing retirement, Lyons began having regular private meetings with Hebets' successor as CEO, Mikia Wallis ("Wallis"), who at that time, was BCHF's Chief Legal Officer. According to Plaintiff, Lyons and Wallis held private meetings about the leases at issue and worked together to maintain these leases without Board knowledge of the over-market terms.

   In October 2020 and unrelated to this matter, law enforcement authorities conducted a raid at BCHF's offices. Plaintiff alleges it afterwards reviewed numerous contracts, including the three leases. BCHF obtained an independent appraisal that concluded the rent was substantially more than market value, and the lease terms were excessive.

   In June 2021, BCHF initiated this action in San Diego Superior Court, asserting several state law claims against Defendants related to the rent paid under the three leases. BCHF thereafter filed a First Amended Complaint, and later in July 2021, a Second Amended Complaint ("SAC"), adding allegations that Defendants violated the Racketeer Influenced and Corrupt Organizations Act. Defendants removed the case to federal court based on federal question jurisdiction.

   In August 2021, Defendants filed a motion to dismiss the SAC, which the then-presiding district judge granted with leave to amend the deficiencies it identified with respect to the RICO allegations and the statute of limitations. Plaintiff filed a Third Amended Complaint ("TAC"), and Defendants again filed a motion to dismiss. After the motion was fully briefed, the case was transferred to the undersigned district judge. This Court took the matter under submission. Plaintiff subsequently filed a motion for leave to amend the complaint. This Order follows.

## II. MOTION FOR LEAVE TO AMEND THE COMPLAINT

Federal Rules of Civil Procedure ("Rule") 15(a) governs when pleadings may be amended, and as relevant here, provides that courts should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

Plaintiff filed a motion for leave to amend its complaint, asking the Court to "effectively merge" the instant action and its other, later-filed lawsuit against over 40

3

defendants (described as "the Multi-Scheme Litigation") "into one matter" to promote "judicial efficiency and economy." (Doc. No. 36 at 9 n.2.) The Court does not find Rule 15 an appropriate procedural vehicle for Plaintiff's request. The rule providing for the Court's power to consolidate matters is Rule 42(a).[1]

Plaintiff concedes it is pursuing a Rule 15 motion in place of a "traditional consolidation motion." (Doc. No. 36 at 9 n.2.) Plaintiff, however, points to no case where a court has applied Rule 15 in the unconventional manner it proposes. And, in any event, the numerous defendants in the Multi-Scheme Litigation are not a party in this case, nor have they been given notice or an opportunity to be heard on the instant motion. The Court thus declines to find that "justice so requires" the remedy Plaintiff seeks. *See* Fed. R. Civ. P. 15(a)(2).

Accordingly, for the foregoing reasons, the Court **DENIES** Plaintiff's motion for leave to amend as procedurally defective. (Doc. No. 36.)

### III.   MOTION TO DISMISS

Having denied Plaintiff's motion to amend the complaint, the Court turns to Defendant's motion to dismiss the operative complaint—the TAC. In it, Defendant argues primarily that Plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), is time-barred, and in the alternative, contends that Plaintiff has not sufficiently pled any of its causes of action. The Court considers these arguments in turn.

**A. Statute of Limitations - RICO**

A suit may be dismissed under Rule 12(b)(6) based on the statute of limitations "only when the running of the statute is apparent on the face of the complaint." *Von Saher v.*

---

[1] Federal Rules of Civil Procedure 42(a) provides:

> Consolidation. If actions before the court involve a common question of law or fact, the court may:
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

*Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010).[2] Dismissal on this basis "can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

RICO actions have a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). To determine whether the statute of limitations has run on a civil RICO claim, the Ninth Circuit applies the "injury discovery" rule. *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). Pursuant to this rule, the limitations period "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Id.* The rule thus "creates a disjunctive two-prong test of actual or constructive notice, under which the statute begins running under either prong." *Id.* Pertinent here, constructive notice is established if the plaintiff "had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Id.* at 1110.

Here, the injury giving rise to Plaintiff's RICO claim is based on the three leases its former CEO executed with Defendants. Plaintiff alleges the terms of the leases were excessive in terms of the grossly-over-market rents and duration of each lease. Defendants argue the statute of limitations began to accrue when the three leases were executed in 2012, 2015, and 2016. Because Plaintiff did not file suit until June 4, 2021, Defendant argues, the TAC makes clear that the RICO claim is time-barred. The Court disagrees.

Plaintiff's TAC contains allegations that although the leases were entered into in 2012, 2015, and 2016, Hebets signed these leases outside of the normal procedures and they "were never presented to the BCHF Board for authorization or approval." (Doc. No. 16 at ¶ 35.) The TAC goes on to allege that both Hebets and his successor Wallis knew that BCHF's Board "would review only those contracts presented to them" and would not have reason to see the Priest Leases unless the board executive managing the relationship with

---

[2] Internal citations, quotations, and alteration are omitted from the case citations in this Order unless indicated.

the property company decided to present them. (*Id.* at ¶ 60.) Plaintiff further alleges that the amounts paid every month for each of the leases were not separately reported to the Board, but rather, "melded into a line item on financial reports of all facility lease expenses combined for all 20+ Southern California facilities." (*Id.* at ¶ 61.) According to Plaintiff, because Hebets and Wallis concealed the over-market leases from the Board, the injury resulting therefrom did not come to light until the government investigation in October 2020. (*Id.* at ¶ 57.)

Thus, accepting the allegations in the TAC as true and construing them in the light most favorable to Plaintiff, the Court finds Plaintiff has adequately pled that the statute of limitations did not begin to accrue on its RICO claim until October 2020. Defendants' attempts to establish otherwise by submitting documentary evidence via a request for judicial notice is unavailing. Based on the parties' briefing, there is apparent dispute over when Plaintiff "had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Pincay*, 238 F.3d at 1110. The place for determining such disputes, however, is not in a motion to dismiss. As previously noted, a motion to dismiss based on the statute of limitations may be granted "only when the running of the statute is apparent on the face of the complaint." *Von Saher*, 592 F.3d at 969.

Accordingly, because the TAC, read with the required liberality, plausibly shows that the RICO claim is not time barred, the Court declines to dismiss this claim on statute of limitations grounds. *See id.* ("A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").

**B. Failure to State a Claim**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, i.e. whether the complaint lacks either a cognizable legal theory or facts sufficient to support such a theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citations omitted). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must contain "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the motion, the court "must accept as true all of the allegations contained in a complaint," but it need not accept legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Defendant contends that Plaintiff has failed to sufficiently plead its RICO claims. The parties do not dispute that because Plaintiff's RICO claim is based on Defendants' alleged commission of mail, wire, and healthcare fraud, Rule 9(b)'s particularity standard applies. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) ("Rule 9(b)'s requirement that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity applies to civil RICO fraud claims."). The Court discusses the sufficiency of Plaintiff's RICO claims in turn.

### 1. RICO – 18 U.S.C. § 1962(c)

Plaintiff alleges a violation of 18 U.SC. § 1962(c), which provides, in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]

To state a RICO claim under § 1962(c), a plaintiff must allege that the defendant participated in "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity[.]" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014); *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc).

To begin, Defendants argue that the core of Plaintiff's alleged fraudulent scheme is Hebets' and Wallis' "successful concealment of the over-market leases from BCHF" and that "Hebets and Wallis knew that volunteer BCHF Board members would review only those contracts presented to them, and that they would never have reason to see the Priest

LLC leases unless the BCHF executive managing the relationship with [the] Priest LLCs decided to present the leases." (Doc. No. 16 at ¶¶ 59, 60.) Defendants assert that the TAC points to concealment and misrepresentations only by Hebets and Wallis and contains no allegation that Defendants misrepresented or concealed anything from BCHF. They further argue that Plaintiff's TAC improperly lumps all Defendants together in its allegations, and thus, has failed to satisfy Rule 9(b) heightened pleading standard. The Court agrees.

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). Plaintiff explains that the TAC describes Defendants jointly as the Priest LLCs because they acted in unison in carrying out the RICO scheme, and in support, points to Paragraph 22 of the TAC, which alleges "there is such unity of interest and ownership between the Priest LLCs that the separate personalities of the limited liability companies no longer exist" and cites cases applying the alter ego doctrine. (Doc. No. 16 at ¶ 22.) To the extent Plaintiff seeks to have the Court disregard the three defendants' separate corporate entities, consider them as one, and as the alter ego of each other, the Court finds Plaintiff has not sufficiently pled facts to support its alter ego theory. Plaintiff's allegation simply tracks the elements of the alter ego doctrine. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Without factual allegations to support its alter ego theory, the Court declines to find that Plaintiff has pled enough to overcome Rule 9(b)'s prohibition against "lump[ing] multiple defendants together[.]" *Swartz*, 476 F.3d at 764. The Court finds this pleading deficiency subjects Plaintiff's TAC to dismissal.

Moreover, merely alleging that Defendants "worked with BCHF insiders," who then entered into over-market-price leases, prevented the leases from being seen by the BCHF Board, and paid the rents is not enough to support a finding that Plaintiff has pled the circumstances of each of the defendants' alleged fraud with particularity. Because Plaintiff

has failed to specify the who, what, where, when, and how as to each defendant allegedly defrauded BCHF, the Court finds Plaintiff has not satisfied Rule 9(b)'s heightened pleading standard. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.").

Although unnecessary, the Court also finds Plaintiff's allegations with respect to the "conduct" element of a RICO claim inadequately pled. The conduct element requires Plaintiff to demonstrate that Defendants conducted or participated in the conduct of the enterprise's—here, BCHF[3]—affairs. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). To that end, Plaintiff must allege facts showing that Defendants "participate[d] in the operation or management of the enterprise itself." *Id.*

Notably, in dismissing the SAC, the prior district judge found there were "no factual allegations in the amended complaint as to Defendants' participation in BCHF's operation or management." (Doc. No. 15 at 3.) Plaintiff's TAC remains deficient in this regard. That Defendants "worked with Hebets to devise management and operations decisions at BCHF" is not enough. Plaintiff must plead more with respect to, for example, when, where, how each defendant allegedly took over BCHF's management and operations. Because Plaintiff's allegations concerning Defendants' participation in the conduct of BCHF's affairs are conclusory, it has failed to plead the element of conduct, and in turn, a RICO claim. Based on the foregoing, the Court finds that Plaintiff has failed to state a RICO claim. Accordingly, the Court **DISMISSES** Plaintiff's RICO claim pursuant to 18 U.SC. § 1962(c).

---

[3] BCHF asserts it was the RICO enterprise. *United Energy Owners Comm., Inc. v. United States Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 362 (9th Cir. 1988) ("plaintiffs are free to allege that they or one of their members is a RICO enterprise or part of a RICO enterprise."); *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987) ("the enterprise that [plaintiff] has alleged in its complaint is [plaintiff] itself."). Defendants do not dispute that the enterprise element of a RICO claim is adequately pled.

### 2. RICO – 18 U.S.C. § 1962(d)

Defendants also challenge Plaintiff's claim under the RICO conspiracy statute, 18 U.S.C. § 1962(d). They argue that because Plaintiff failed to adequately plead a substantive violation of RICO by any defendant, it cannot allege a conspiracy to violate RICO. The Court agrees. "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Because Plaintiff failed to plead a substantive RICO claim, the Court finds it has necessarily failed to plead a claim under the RICO conspiracy statute. *See id.* Accordingly, the Court **DISMISSES** Plaintiff's RICO claim pursuant to 18 U.SC. § 1962(d).

\*\*\*

Lastly, in its opposition to the instant motion to dismiss, Plaintiff asks for leave to amend should the Court dismiss its claims, but offers no new facts that would be added to the new complaint that would address Defendants' challenges or the deficiencies identified herein. The Court, however, recognizes that "[a] dismissal for failure to state a claim pursuant to 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Odom*, 486 F.3d at 545. That said, because Plaintiff has been aware of Defendants' challenges to its pleadings and afforded a prior opportunity to amend, the Court grants Plaintiff one, final opportunity to cure the deficiencies in its RICO claims.

//
//
//
//
//
//
//
//

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss as to the RICO claims (seventh cause of action) **WITH LEAVE TO AMEND.**[4] Having dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the state law claims. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.")

**IT IS HEREBY ORDERED** that Plaintiff's fourth amended complaint, along with a redlined version, must be filed no later than April 3, 2023. Defendants' response must be filed no later than April 17, 2023. Failure to file an amended complaint will result in dismissal of the RICO claims without leave to amend and remand of the state law claims to San Diego Superior Court.

**IT IS SO ORDERED**.

Dated: March 13, 2023

Hon. Anthony J. Battaglia
United States District Judge

---

[4] Because the Court has not relied on the documents Defendants requested it judicially notice, it **DENIES** their request without prejudice.