# EXHIBIT B

## BASIC LEASE PROVISIONS

The following Basic Lease Provisions constitute a part of the Lease to which they are attached.

1. **Landlord:**      DRP Holdings, LLC., a California limited liability company

2. **Tenant.**      Borrego Community Health Foundation, a California non-profit public benefit corporation

3. **Premises:**
   (a)      Area: Approximately 15,676 sq. ft. office building including approximately 80 parking spaces ("Office Building" or "Premises").

   (b)      Location: The Premises commonly referred to as 590 N. D Street, San Bernardino, California, are depicted on Exhibit "A" attached hereto ("Property").

4. **Lease Term:** The term of this Lease shall be 30 years and 0 months from the Commencement Date.

5. **Condition of Premises:**   The Premises are accepted "as is", "where is", and with all faults.

6. **Rent:**

   (a)      Base Monthly Rent: $62,704.00 per month, subject to adjustment as provided in Article 3.

   (b)      Additional Rent· Taxes, Utilities, Insurance, Maintenance, Management and other Expenses shall be based on direct cost or consumption by Tenant or upon Tenant's share of such Expenses.

   (c)      The "Rent Commencement Date" shall be earlier of (i) four (4) months from the date that Landlord acquires title to the Property or (ii) the date Tenant opens for business.

   (d)      "Tenant's Share" – 100%

7. **Prepaid Base Monthly Rent:** $-0-

8. **Security Deposit:** $ -0-.

9. **Permitted Use:** The Premises shall be used solely for a general office and medical office use including a pharmacy and for any other lawful purpose.

10. **Addresses for Notices and Payment of Rent:**

    (a)      If to Landlord·          DRP Holdings, LLC.,
                                      a California limited liability company
                                      124 Main Street, Suite 240
                                      El Cajon, Ca 92020
                                      Fax: (619) 444-8597
                                      Attn: Daryl R Priest
                                      Email: darly@priesthomes.com

Tenant's Initials
© Stephen J Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 1 of 27

EXHIBIT B
PAGE 180

|  | Copy of notices to: | Fitch Law Firm, APC<br>Stephen J. Fitch, Esq.<br>3465 Camino Del Rio South, Ste. 250<br>San Diego, CA 92108<br>Telephone No. (619) 282-8100<br>Email: steve@fitchlawfirm.com |
| (b) | If to Tenant: | Borrego Community Health Foundation<br>P.O. Box 2369<br>Borrego Springs, CA   920004<br>Attn: Bruce Hebets<br>Fax:  (760) 767-5051<br>Email: bhebets@borregomedical.org |
|  | Copy to: | Borrego Community Health Foundation<br>P.O. Box 2369<br>Borrego Springs, CA   920004<br>Attn: Mikia Wallis, Chief Legal Officer<br>Fax:  (760) 767-6722<br>Email: mwallis@borregomedical.org |

11.    **Broker(s).**

|  | Landlord: | NONE |
|  | Tenant: | NONE |

12.    **Certificate of Insurance:** Tenant acknowledges that a certificate of insurance with endorsements attached, as required by Paragraph 8.2(b), must be provided to Landlord prior to delivery of the keys to Premises to Tenant.

13.    **Guarantor:** NONE

The foregoing Basic Lease Provisions are incorporated into and made a part of the Lease. Each reference in the Lease to any of the Basic Lease Provisions shall mean the respective information above and shall be construed to incorporate all of the terms provided under the particular Lease paragraph pertaining to such information. In the event of any conflict between the Basic Lease Provisions and the Lease, the Basic Lease Provisions shall control. Unless otherwise defined in the Lease, all initially-capitalized terms used in the Lease shall have the meanings ascribed to them in the Basic Lease Provisions.

Tenant's Initials
© Stephen J. Fitch

LEASE - OFFICE BUILDING

Landlord's Initials

Page 2 of 27

# BUILDING LEASE

This BUILDING LEASE ("Lease") is executed as of the 15th day of September, 2015 ("Effective Date"), by and between DRP Holdings, LLC, a California limited liability company ("Landlord"), and BORREGO COMMUNITY HEALTH FOUNDATION, a California corporation ("Tenant"). Landlord and Tenant are also referred to herein individually as a "Party" and collectively as the "Parties". The Basic Lease Provisions attached to this Lease are incorporated herein and made a part of this Lease.

1.    PREMISES:

1.1    Premises. Subject to all the terms and conditions of this Lease, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, pursuant to the terms, covenants, conditions and uses herein set forth, the Premises, as more particularly described in Item 3 of the Basic Lease Provisions. The Property and the Office Building are more particularly depicted on Exhibit "A" attached hereto and incorporated by reference herein.

1.1.1    Current Tenant. Landlord and Tenant acknowledge that 1,320 sq. ft. of the Premises are currently subject to a lease with TW TELECOM OF CALIFORNIA, L.P. ("Adjoining Tenant"). The lease to Adjoining Tenant expires on September 14, 2017 (Adjoining Tenant has a three (3) option which Landlord has the right to terminate based on its purchase of the Property). Until September 14, 2017 or earlier termination of the lease with Adjoining Tenant the following modifications to the Lease shall be applicable:

|   |   |   |
|---|---|---|
| a. | Premises – | 14,356 sq. ft. |
| b. | Rent – | $57,424.00 |
| c | Tenants Share – | 92% |

Except as modified in this Section 1.1.1 all other terms of the Lease shall remain the same. Landlord shall give Tenant a thirty (30) day notice of its ability and obligation to occupy the portion of the Premises subject to the Adjoining Tenant lease. Upon termination of the Adjoining Tenant lease all terms contained in the Basis Lease Provisions shall be applicable for the remaining Lease Term

1.2    Condition of Premises. Tenant accepts the Premises "as is", "where is", and with all faults. The square footage of the Premises, at Landlord's or Tenant's election, is subject to verification by Landlord's space planner or architect at any time within 90 days of the Commencement Date—with the stated square footage stated in the Basic Lease Provisions being deemed mutually agreed-upon and controlling if no such verification is done during such timeframe.

1.3    Tenant Improvement Allowance. Landlord shall provide a Tenant Improvement Allowance ("TI Allowance") in an amount not to exceed One Million and 00/100 Dollars ($1,000,000.00) for the construction of Tenant's improvements of the Premises, which are to be fixed in the Premises and shall remain with the Premises. All such tenant improvements shall be pursuant to plans approved by Landlord. Tenant shall provide, at its sole cost, to Landlord upon execution of this Lease space plans for the Premises. Any revisions to the space plan shall be mutually agreed upon by the Parties.

a    Construction of Improvements. The construction of Tenant's improvements in the Premises shall be done in accordance with Section 5 1 of this Lease by licensed and insured contractors approved by Landlord.

b.    Payment of TI Allowance. The TI Allowance shall be paid by Landlord to Tenant based on a mutually agreed upon construction draw schedule to be submitted by Tenant to Landlord for approval  Any amount not drawn under the draw schedule shall be paid to Tenant within thirty (30) days from the later to occur of: (1) Tenant opens for business in the Building; (2) the period allowed for the filing of mechanic's liens has expired or duly executed unconditional lien waivers from all contractors, subcontractors and material men who have performed work on behalf of Tenant at the Premises are presented to Landlord, and (3) the Tenant has

LEASE – OFFICE BUILDING

Tenant's Initials
© Stephen J Ditch

Landlord's Initials

EXHIBIT B
PAGE 182

provided to Landlord a Certificate of Occupancy, a copy of Tenant's Recorded Notice of Completion and a complete set of "as-built" construction documents for all work performed by Tenant and/or Tenant's contractors and subcontractors.

In Landlord's sole discretion, Landlord may satisfy its obligations under this Section 1.3 by contracting with and paying directly a contractor of Landlord's choosing to complete the tenant improvements.

2.    TERM:

2.1    General

(a)    The term of this Lease shall be as specified in Item 4 of the Basic Lease Provisions, commencing on the earliest of (1) the date Landlord acquires title to the Property, or (2) the date on which Landlord and Tenant execute the Confirmation of Lease (in the form attached hereto as Exhibit "B"), or (3) the date upon which Tenant actually occupies the Premises for any reason. The date on which the Lease term commences is hereafter referred to as the "Commencement Date".

3.    RENT:

3 1    Base Monthly Rent

(a)    Tenant shall pay to Landlord at the address provided for in Item 10 of the Basic Lease Provisions (subject to the provisions of Section 1.1.1 above), without deduction or prior notice or demand, and Landlord shall accept, as rent for the Premises the "Base Monthly Rent" specified in Item 6(a) of the Basic Lease Provisions The Base Monthly Rent shall be payable in advance in lawful money of the United States on the first day of each month of the Lease term. The first installment of the Base Monthly Rent shall be due and payable on the Rent Commencement Date.

(b)    In the event that the Rent Commencement Date is not the first day of the month, Tenant shall pay to Landlord prior to the first day of the first full calendar month which is ninety (90) days after the commencement date, an amount equal to the Base Monthly Rent multiplied by a factor having as its numerator the number of days remaining in the first month and as its denominator the number thirty (30). Thereafter, the Base Monthly Rent shall be payable in accordance with the terms of this Paragraph 3.1.

(c)    Tenant's obligation to pay rent, including Base Monthly Rent and Additional Rent shall commence as set forth in the Basic Lease Provisions.

3.2    Adjustments to Base Monthly Rent.    The Base Monthly Rent for the Lease term shall adjust (in addition to the adjustment in Paragraph 3.3 below), as follows:

a.    Commencing on the first anniversary date of the Lease term, and then annually thereafter on each Adjustment Date, the Base Monthly Rent during the Lease Term shall be adjusted to an amount equal to the greater of (a) two (2) percent or (b) the product obtained by multiplying the Base Monthly Rent in effect immediately prior to the Adjustment Date by the annual percentage increase in Consumer Price Index All Urban Consumers U S. City Average (1982-84 = 100) published by the Bureau of Labor Statistics of the U.S. Department of Labor ("Index"), i.e., Index published 30 days prior to each new Adjustment Date ("New Extension Index") divided by the Index (in effect for the immediately preceding Lease Year) published 30 days prior to the preceding Adjustment Date ("Current Extension Index"). Landlord shall give written notice to Tenant indicating the amount of the adjustment and manner of computation of same as soon as the information becomes available to Landlord.

3.3    Additional Rent.    Tenant shall pay as "Additional Rent" its pro rata share of the cost of operation and maintenance of the Property, i.e., the cost of utilities (if not separately metered), taxes, insurance provided by Landlord, roof and structural repairs, and Common Area Expenses, or other charges, as described and in the manner

Tenant's Initials
© Stephen J Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 4 of 27

provided in Article 11 (Common Areas). The Base Monthly Rent, the Additional Rent, rental adjustments and any and all other amounts, however designated, required to be paid or reimbursed by Tenant under this Lease are sometimes collectively referred to as, and shall constitute, "rent.".

3.4     Interest on Past Due Obligations.  In the event of default by Tenant in payment of any items of rent, Tenant shall pay, as Additional Rent, interest at the rate of two (2) points over the published prime rate of Citi Bank or the maximum rate permitted by law, whichever is less, on each such obligation from the day it is due until received by Landlord. Notwithstanding the foregoing, no interest shall accrue on any Late Charges under this Lease as defined in Paragraph 3.5 below.

3.5     Late Charges   Tenant acknowledges that late payment by Tenant to Landlord of rent will cause Landlord to incur costs not contemplated by this Lease, the exact amount of such costs being extremely difficult and impractical to fix  Such costs include, without limitation, processing, administration and accounting charges. If any installment of any item of rent due from Tenant is not received by Landlord within five (5) business days of when due, Tenant shall pay to Landlord an additional sum equal to six percent (6%) of the overdue rent as a late charge The parties agree that this late charge represents a fair and reasonable estimate of the costs that the Landlord will incur by reason of late payment by Tenant. Acceptance of any late charge shall not constitute a waiver of Tenant's default with respect to the overdue amounts, nor prevent the Landlord from exercising any of the other rights and remedies available to Landlord hereunder. The payment of a late charge shall be in addition to any interest payable by Tenant under Paragraph 3.4 (Interest on Past Due Obligations). In addition to the charges provided for above, Tenant shall pay a charge of Fifty Dollars ($50.00) to Landlord for each check returned for insufficient funds and One Hundred Fifty Dollars ($150.00) for each "three (3) day pay or quit" notice

3.6     Intentionally Deleted

4.     USE:

4.1     Permitted Use.  The Premises shall be used and occupied by Tenant and for the use and purpose(s) specified in Item 9 of the Basic Lease Provisions and under no other trade names and for no other use or purposes, including, but not limited to, unlawful, immoral, "second hand" or used merchandise, distress goods, surplus stores or auctions. Tenant shall not permit any act to be done in, upon or about the Premises which would increase the existing rate of insurance upon the Premises, or cause the cancellation of any insurance policy covering the Premises, nor shall Tenant sell or permit to be kept, used or sold in, upon or about the Premises any article which may be prohibited by a standard form policy of fire insurance. In the event that Tenant's use increases said rate or causes the cancellation of a policy of insurance, Landlord may charge Tenant, as Additional Rent, the additional cost of insurance; or Landlord, at its option may cancel the Lease. Landlord does not represent nor warrant that the Premises can be used for any specific use or purpose, and it is incumbent upon Tenant to ascertain from the proper governmental authorities whether the Premises may be used for Tenant's intended use.

4.2     Hazardous Materials Indemnity.

(a)     Tenant shall not cause or permit the presence, use, generation, release, discharge, storage, disposal or transportation of any "Hazardous Materials" on, under, in, about, to or from, the Premises and/or the Property; provided that the presence or use of Hazardous Materials (a) in products required for the prudent and ordinary management and operation of the Premises as a car wash and auto detail facility and (b) held and used strictly in accordance with (i) all applicable federal, state or local laws, regulations or orders, (ii) guidelines issued by any national or regional board of insurance underwriters, and (iii) prudent standards of practice shall not be deemed in violation of this provision

(b)     As used herein, the term "Hazardous Materials" shall mean any toxic or hazardous substance, material or waste or any pollutant or contaminant or infectious or radioactive material, including but not limited to those substances, materials or wastes regulated now or in the future under any of the following statutes or regulations promulgated thereto: (a) any "hazardous substance" within the meaning of the Comprehensive

Tenant's Initials.
© Stephen J Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

EXHIBIT B
PAGE 184

Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA") 42 U.S.C. § 9601, et seq. or the California Hazardous Substance Account Act, Cal. Health and Safety Code § 25300 et seq. or the Porter-Cologne Water Quality Act, Cal. Water Code § 13000 et seq. or the Hazardous Materials Transportation Act, 49 U.S.C. § 1801, et seq.; (b) any "hazardous waste" within the meaning of the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq.; (c) any "pesticide" or "economic poison" as defined in California Food & Agricultural Code § 12753 and any regulations promulgated in connection therewith; or (d) any other substance, chemical, waste, toxicant, pollutant, pesticide or contaminate regulated by any federal, state or local law, statute, rule, regulation or ordinance for the protection of health or the environment ("Environmental Laws"), including, without limitation, methane and any petroleum products or fractions thereof and any asbestos-containing materials

(c)     If Tenant's use of the Premises may involve the storage and/or use of Hazardous Materials as defined herein, Tenant, in addition to its covenants defined above, further covenants, agrees, warrants and represents that it will comply with all Environmental Laws, rules, regulations, court decisions, municipal codes and ordinances regulating such storage and/or use of Hazardous Materials, including without limitation Chapter 6.95 of the California Health and Safety Code; and to permit Landlord to monitor such compliance, without the assumption of any liability by Landlord nor any obligation of Landlord to so monitor, Tenant covenants and agrees to provide to and/or permit Landlord:

(1)     To review and approve prior to submission to any governmental agency all applications with respect to the handling, storage and/or use of Hazardous Materials in, on or about the Premises, including without limitation applications to the County Hazardous Materials Management Division ("HMMD") and/or to Air Pollution Control District ("APCD"), and after such submission to provide Landlord with a copy of all responses, notices, comments or other communications with said governmental agencies; and

(2)     To receive and review a copy of all completed and approved "Business Plans", as defined by the statutes, and all updates, renewals, or replacement "Business Plans" when submitted and all responses, notices, comments or communications with any governmental agencies regarding same; and

(3)     To receive and review a copy of all notices, reports, comments or communications relating to any governmental inspection, complaint, investigation or other matter relating to Tenant's storage, handling or use of Hazardous Materials at, on, in or about the Premises, and

(4)     To receive and review a copy of any and all E.P.A. numbers, County Health Department permits, APCD permits, contracts with certified hazardous waste handlers (and all credentials and certifications of such handlers), and all schedules for delivery, pick-up and disposal of Hazardous Materials to or from the Premises; and

(5)     To immediately notify Landlord of any leaks, spills, emissions, release or suspected release of any Hazardous Materials at, on, in, under, above or about the Premises from any cause or source whatsoever; and

(6)     To receive and review a copy of all records of every nature that are required by law, regulations, ordinance or court order to be maintained by Tenant with respect to the storage, handling or use of any Hazardous Materials at, on, in, under, above or about the Premises.

(d)     Tenant shall exonerate, indemnify, pay and protect, defend (with counsel reasonably approved by Landlord) and save Landlord, and its directors, trustees, beneficiaries, officers, shareholders, partners, members, employees, agents, and invitees and of those of the other tenants of the Property (collectively, the "Related Parties"), harmless from and against any claims (including, without limitation, third party claims for personal injury or real or personal property damage, actions, administrative proceedings (including informal proceedings), judgments, damages, punitive damages, penalties, fines, costs, taxes, assessments, liabilities (including sums paid in settlements of claims), interest or losses, including reasonable attorneys' fees and expenses (including any such fees and expenses incurred in enforcing this Lease or collecting any sums due hereunder),

Tenant's Initials
Ⓞ Stephen J Filch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 6 of 27

consultant fees, and expert fees, together with all other costs and expenses of any kind or nature (collectively, the "Costs") that arise directly or indirectly in connection with the presence, or release, caused by Tenant of any Hazardous Materials in or into the air, soil, ground water, surface water or improvements at, on, about, under or within the Property, or any portion thereof, or elsewhere in connection with the transportation of Hazardous Materials to or from the Property or the Premises by or on behalf of Tenant. The indemnification provided in this Paragraph shall specifically apply to and include claims or actions brought by or on behalf of employees of Tenant. In the event that Landlord or any of the Related Parties shall suffer or incur any such Costs, Tenant shall pay to Landlord or such Related Parties, the total of all such Costs suffered or incurred upon demand therefor, which demand shall be accompanied by an accounting and copies of back up documentation for such Costs. Without limiting the generality of the foregoing, the indemnification provided herein shall specifically cover Costs including, without limitation, capital, operating and maintenance costs, incurred in connection with any investigation or monitoring of site conditions, any clean-up, containment, remedial, removal or restoration work required or performed by any federal, state or local governmental agency or political subdivision or performed by any non-governmental entity or person because of the presence, or release, caused by Tenant of any Hazardous Materials in or into the air, soil, ground water, surface water or improvements at, on, about, under or within the Property (or any portion thereof), or elsewhere in connection with the transportation of Hazardous Materials to or from the Property or the Premises by or on behalf of Tenant, and any claims of third parties for loss or damage due to such Hazardous Materials. This indemnification shall survive the termination of this Lease and shall be binding upon the Tenant and its successors in interest whenever such threat, claim, or cause of action may arise. Tenant expressly waives any defense concerning constructive eviction or rent abatement with respect to such claims arising from the act or omission of Tenant.

    4.3    Compliance with Laws. Tenant and Landlord shall promptly comply with all laws, ordinances, zoning restrictions, rules, regulations, orders and any requirements of any duly constituted public authorities now or hereafter affecting the use, safety, cleanliness or occupation of the Premises. Tenant's use of the Premises shall not adversely affect Landlord's use of the Property and the use of the Property by other tenants. Any alteration or improvement to the Premises or the providing of any auxiliary aids or services required by any statute, ordinance, governmental regulation or court order in order for Tenant to conduct business shall be undertaken at Tenant's sole cost and expense in the manner provided in Article 5 below. Landlord shall have the absolute right to cancel this Lease, upon thirty (30) days written notice to Tenant, in the event that Tenant's plans for construction or subsequent use of the Premises shall adversely affect the allocation of available energy requirements or other utility services to Landlord or other tenants within the Property.

    4.4    No Nuisances. Tenant shall not commit or permit any nuisance, act or other thing which may disturb the quiet enjoyment of the other tenants of the Property.

5.     ALTERATIONS AND ADDITIONS:

    5.1    General. Tenant shall not make any non-structural interior alterations, improvements or additions to the Premises without obtaining Landlord's prior written consent, which shall not be unreasonably withheld. Any such improvements, excepting movable furniture and trade fixtures, shall become part of the realty and belong to Landlord upon their completion of construction. Tenant shall, at its sole cost and expense, obtain all necessary governmental permits and approvals, and pay for all assessments, taxes and charges associated with such work. All alterations and improvements shall be in conformity with the laws of all applicable duly constituted public authorities and shall be done in a good workmanlike manner. Tenant shall not make any structural changes or changes to the exterior of the Premises including but not limited to penetration of roof or alteration or relocation of windows or doorways or exterior walls or the affixing or setting of satellite dishes, antennae, lighting, electronic or other devices without Landlord's prior written consent, which may be withheld in its sole and absolute discretion. All alterations, additions, repairs or changes to be made to the Premises which require Landlord's approval shall be under the supervision of a competent licensed architect and/or competent licensed structural engineer and made in accordance with plans and specifications submitted to and approved by Landlord before commencement of work. Landlord reserves the right to retain or hire an architect or engineer to review said plans and specifications, and the reasonable cost of such professional fees shall be reimbursed by Tenant to Landlord. All such work shall be

Tenant's Initials
© Stephen J Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

performed by a licensed and insured contractor, approved by Landlord, and if requested by Landlord, a completion bond naming Landlord as the beneficiary shall be provided by Tenant.

    5.2    No Liens.  Prior to commencing any work relating to any alterations, improvements or additions approved by Landlord, Tenant shall notify Landlord in writing of the expected date of commencement. Tenant shall not commence the making of any approved alterations until after Landlord shall have received notice of the commencement date thereof, in order that Landlord may post and record any appropriate Notice of Non-Responsibility. Landlord shall have the right at any time to post and maintain on the Premises such notices as Landlord reasonably deems necessary to protect Landlord and the Premises from mechanic's liens, material men's liens or any other liens. In performing the work on any such alterations, improvements or additions, Tenant agrees to cooperate with Landlord in arranging and undertaking such work so as to minimize any adverse impact and business interruption of Tenant, Landlord or any other occupant of the Property, and to diligently complete all such work. In no event shall such work be performed in a manner that obstructs access to the Property or to the Premises of any other occupant of the Property. Tenant shall pay, when due, all claims for labor or materials furnished to or for Tenant for use in improving the Premises. Tenant shall not permit any mechanic's or material men's liens to be levied against the Premises arising out of work performed, materials furnished, or obligations to have been performed on the Premises by or at the request of Tenant. Should any mechanic's or other lien be filed against the Premises, Property, or any part thereof by reason of Tenant's acts or omissions or because of a claim against Tenant, Tenant shall cause the same to be canceled and discharged of record by bond or otherwise within ten (10) business days after notice by Landlord. Tenant hereby agrees to indemnify, hold harmless, defend and protect Landlord against loss, damage, attorney's fees and all other expenses on account of claims of lien of laborers or material men or others for work performed or materials or supplies furnished for Tenant or persons claiming under it

    5.3    Trade Fixtures.  Tenant shall install trade fixtures, machinery or other trade equipment in conformance with the ordinances of all applicable duly constituted public authorities and for a first class operation of Tenant's business, and Tenant shall maintain its operation in such first class condition  Tenant may and upon Landlord's request shall, at Tenant's sole cost and expense, remove any of such trade fixtures or machinery upon the termination of this Lease, provided Tenant is not then in default under the terms and conditions of this Lease.

## 6.    UTILITIES:

    6.1    Responsibility for Payment.  Tenant shall pay for all water, sewer, gas, heat, light, power, telephone service and any other services or utility provided to the Premises.

    6.2    Tenant's Share  In the event that any utilities are furnished by Landlord, Tenant shall pay to Landlord its pro rata share of the cost thereof in the manner set forth in Paragraphs 11.2 and 11.3 (payment of Common Area Expenses). Tenant's pro rata share shall be based upon the percentage set forth in the Item 3(e) of the Basic Lease Provisions and (b) any extraordinary use which may be made by Tenant, as reasonably determined by Landlord in its sole and absolute discretion. If any utilities are furnished by Landlord directly or indirectly through joint metering, Landlord shall not be obligated to continue to provide such service if Tenant is in default under the terms hereof.

    6.3    Non-liability of Landlord  Landlord shall not be liable for any failure or interruption for any reason of any utility service being furnished to the Premises.

    6.4    Separate Metering  Tenant may elect, subject to Landlord's reasonable approval, to install and maintain its own meter for any utilities which are jointly metered by written notice delivered to Landlord thirty (30) days prior to the initiation by Tenant of any work to effectuate such change. All separate meters shall be installed and maintained at Tenant's sole cost and expense.

Tenant's Initials
© Stephen J. Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 8 of 27

7.    INDEMNIFICATION:

7 1     Tenant's Indemnity Obligation.   Tenant does hereby agree to indemnify, hold harmless, defend, and protect Landlord, its employees, agents, partners, contractors, invitees and licensees from and against any and all suits, actions, damages, claims, liability and expense in connection with loss by reason of injury to person or property from caused by the negligent act or omission of Tenant, its employees, agents or contractors, invitees, or licensees, arising from or out of any occurrence in, upon, at or from the Premises, or the occupancy or use by Tenant of the Premises or any part thereof, including without limitation acts or omissions relating to the sidewalks and Common Areas, as hereafter defined, within the Property

7.2     Landlord's Indemnity Obligation   Landlord does hereby agree to indemnify, hold harmless, defend, and protect Tenant, its employees, agents, partners, contractors, invitees and licensees from and against any and all suits, actions, damages, claims, liability and expense in connection with loss by reason of injury to person or property from caused by the negligent act or omission of Landlord, its employees, agents or contractors, invitees, or licensees, arising from or out of any occurrence in, upon, at or from the Premises, or the occupancy or use by Landlord of the Premises or any part thereof, including without limitation acts or omissions relating to the sidewalks and Common Areas, as hereafter defined, within the Property.

7.3     Release of Landlord.   Except for loss or damages arising from the acts or omissions of Landlord or Landlord's Related Parties constituting sole negligence, gross negligence, or willful misconduct, Landlord shall not be responsible or liable at any time for any loss or damage to Tenant's merchandise, equipment, fixtures or other personal property or to Tenant's business, including without limitation any loss or damage to either the person or property of Tenant or loss of profits or otherwise that may be occasioned by or through the acts or omissions of persons occupying adjacent, connecting, adjoining or other space in the Property or by or through the acts or omissions of Landlord, its employees, agents, contractors, invitees or licensees  Tenant shall store its property in and shall use and enjoy the Premises and the Common Areas of the Property at its own risk, and hereby releases Landlord, its employees, agents, contractors, partners, invitees, and licensees, to the fullest extent permitted by law, from all claims of every kind, including without limitation, leakage of any nature, resulting in loss of life, personal or bodily injury, or property damage, except for loss or damages arising from the acts or omissions of Landlord or Landlord's Related Parties constituting sole negligence, gross negligence or willful misconduct.

7.4     Notice of Loss.   Tenant shall give prompt notice to Landlord in case of fire or accidents or other losses in the Premises or in the building of which the Premises are a part or in the Common Area as well as of any defects therein or in any fixtures or equipment located therein.

7.5     Survival of Lease Termination.   Tenant's obligations under Paragraphs 4.2, 7.1-7.5 inclusive, 21.1, and 27.1 shall survive the termination of this Lease for any reason whatsoever, if the incident requiring such defense occurred during the Lease term or otherwise directly or indirectly relates to the performance of any party under this Lease. None of the indemnity obligations provided for in these Paragraphs 7 1-7.5 inclusive, or in Paragraph 4.2 shall require any payment as a condition precedent to recovery.

8.    INSURANCE:

8.1     Insurance Coverage by Landlord

(a)     Landlord shall maintain, at Tenant's expense as provided in Paragraph 8.1(b), a policy or policies of insurance protecting against the following.

(1)     Fire and other perils normally included in extended coverage insurance to the extent of at least ninety percent (90%) of the replacement value of the Premises, exclusive of personal property, trade fixtures and equipment belonging to Tenant and improvements and betterments made to the Premises by Tenant for which Tenant shall maintain fire and other perils insurance, which shall also name Landlord and its lenders as additional insureds.

LEASE – OFFICE BUILDING

Tenant's Initials
© Stephen J. Fitch

Landlord's Initials

Page 9 of 27

EXHIBIT B
PAGE 188

(2)        Public liability and property damage insurance with respect to the Common Areas in an amount not less than Two Million Dollars ($2,000,000) combined single limit for both bodily injury and property damage.

(b)        Tenant shall pay to Landlord, as Additional Rent in the manner set forth in Paragraph 11.3 (Payment of Common Area Expenses), Tenant's pro rata share of the cost of the insurance required in Paragraph 8.1 (a). Tenant's pro rata share of such cost shall be that proportion of the annual premiums for insurance based upon the percentage set forth in Item 3(e) of the Basic Lease Provisions.

### 8.2    Insurance Coverage by Tenant.

(a)        Contents Insurance. Tenant shall maintain in force a policy or policies of special peril contents insurance, including without limitation vandalism and malicious mischief coverage, sprinkler leakage coverage and plate glass coverage for the Premises, with respect to Tenant's personal property, trade fixtures and equipment located in the Premises and all improvements and betterments to the Premises made by Tenant to the extent of at least ninety percent (90%) of their insurable value. During the term of this Lease, the proceeds of any such policy or policies of contents insurance shall be used solely for the repair or replacement of the property so insured. Landlord shall have no claim or interest in said insurance and will sign all documents necessary to effectuate the settlement of any claim or loss by Tenant.

(b)        Liability Insurance. Tenant shall maintain during the term of this Lease worker's compensation insurance as required by applicable law and commercial liability insurance with respect to the Premises, all assumed liabilities by Tenant pursuant to Paragraphs 4 2 and 7.1-7.5 inclusive, product liability and all owned or non-owned and hired vehicles utilized in Tenant's business, adequate to protect Landlord as provided hereinafter. Such policy or policies of liability insurance shall add as additional insureds, Landlord and each of its partners, affiliates, directors, agents, employees, and lenders, and shall expressly provide that the interest of Landlord therein shall not be affected by any breach by Tenant of any policy provisions. Initially, such policy of liability insurance shall be in an amount not less than Three Million Dollars ($3,000,000.00) combined single limit for both bodily injury and property damage. The amounts of such liability insurance shall be increased from time to time, as Landlord or Landlord's mortgagee or beneficiary may reasonably determine. All insurance policies required hereunder shall be obtained upon an "occurrence" basis and not as "claims made" policies (except for any professional liability insurance which may be on a "claims made" basis). All liability, property damage, and other liability policies of Tenant shall be written as primary policies, not contributing with and not in excess of coverage which Landlord may carry. All such policies shall contain a provision that Landlord, and its lenders, although additional insureds, shall nevertheless be named as loss payees and be entitled to recover under said policies for any loss occasioned to it, its employees, agents, contractors, invitees and licensees by reason of the negligence of Tenant, its employees, agents, contractors, invitees and licensees. Tenant shall furnish Landlord with a certificate of insurance with attached endorsements with respect to such policies prior to Tenant's entry into the Premises  Such policies shall be secured from insurance companies with a Best's rating of A- Class VII or better and provide by endorsement that they may not be canceled or altered without sixty (60) days prior written notice delivered by the insurer to Landlord and/or its lenders.

8.3    Waiver of Subrogation   Landlord and Tenant hereby release and relieve each other from liability and waive all right to recover against each other for any loss or damage arising out of or incident to the perils covered under their respective policies of insurance, which perils occur in, on or about the Premises, as a result of the negligence of Landlord or Tenant or their respective agents, employees, contractors and/or invitees  Landlord and Tenant shall, upon obtaining the policies of insurance required under this Lease, give notice to their respective insurance carrier(s) that the foregoing mutual waiver of subrogation is contained in this Lease, and shall provide to the other appropriate endorsements of such waiver from the insurers.

Tenant's Initials
© Stephen J  Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

9       CARE OF THE PREMISES:

    9.1     Tenant's Obligations

        (a)     General. Tenant shall, at its expense, keep the Premises and exterior and interior portions thereof, including without limitation windows, doors, and all other glass or plate glass fixtures, in a neat, clean, sanitary and safe condition, and shall keep the Premises free from trash, rubbish and dirt. Tenant shall be solely responsible for glass breakage in the Premises, whether due to vandalism or otherwise Tenant shall immediately make all repairs or replacements thereon or thereto, whether ordinary or extraordinary. If Tenant fails to keep the Premises neat, clean or in reasonable repair, Landlord may, in its sole discretion, enter the Premises during reasonable hours in order to clean or repair same. Tenant shall immediately pay to Landlord its actual cost thereof as set forth in Landlord's statement submitted to Tenant for payment, provided, however, any such payment shall not be deemed a cure of Tenant's default and Landlord shall have all remedies available to it under Article 18 herein.

        (b)     Equipment and Fixtures Tenant shall, at its sole cost, keep and maintain all utilities, fixtures and mechanical equipment used by Tenant in good order, condition and repair. Said items shall include, but are not limited to, all plumbing or sewage facilities, doors, locks and closing devices, windows (including glass), lights, electric systems and equipment of every kind. Tenant shall pay to Landlord in the manner set forth in Paragraph 11.3 (Payment of Common Area Expenses), Tenant's pro rata share of the cost of any maintenance agreement for the Property. Tenant's pro rata share shall be the proportion of the cost of any maintenance agreement based on the percentage share set forth in Item 3 (e) of the Basic Lease Provisions.

    9.2     Landlord's Obligations.

        (a)     General. Landlord shall keep in good condition and repair the roof and structural components of the Premises, but the cost thereof shall be prorated based upon the percentage share set forth in Item 3 (e) of the Basic Lease Provisions and shall be paid by Tenant in the manner set forth in Paragraph 11.3 (Payment of Common Area Expenses). Landlord shall have no obligation to make any such repairs until Landlord has received written notice from Tenant with respect to the need for such repairs. Landlord shall not be deemed to be in default with respect to its obligation to repair unless and until Landlord has (1) received said written notice and (2) failed to make such repairs within a reasonable period following receipt of said notice Landlord shall, after receiving written notice, exercise due diligence in making such repairs.

        (b)     Landlord's Right of Access. In order to perform any of its obligations under this Lease, Landlord hereby reserves to itself and its successors the right of access to the exterior walls and roof of the Premises and the right to install, maintain, use, repair and replace pipes, ducts, conduits, and wires through the Premises in locations which will not materially interfere with Tenant's use thereof

10.     TAXES:

    10.1    Personal Property Taxes  Tenant shall pay prior to delinquency all taxes, assessments, license fees, and other public charges levied, assessed or imposed or which become payable during the term of this Lease upon any trade fixtures, furnishings, equipment and all other personal property of Tenant installed or located in the Premises. Whenever possible, Tenant shall cause said trade fixtures, furnishings, equipment and personal property to be separately assessed. If, however, any or all of said items shall be assessed and taxed with the Premises' real property, Tenant shall pay to Landlord such taxes as are attributable to Tenant's trade fixtures, furnishings, equipment and personal property within fifteen (15) days after receipt of any invoice from Landlord advising Tenant of the taxes applicable to Tenant's property.

    10 2    Real Estate Taxes. Tenant shall also pay in the manner set forth in Paragraphs 11.2 and 11.3 any and all "real estate taxes" (as hereafter deemed) assessed or imposed, or which become a lien upon or become chargeable against or payable in connection with the Premises, including Tenant's pro rata share of such real estate taxes which are attributable to the Common Areas. Real estate taxes for the last year of the term of this Lease shall

Tenant's Initials
☼ Stephen J Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

EXHIBIT B
PAGE 190

be prorated between Landlord and Tenant as of the expiration date of the Lease term  With respect to any assessments which may be levied against or upon the Premises, or which under the laws then in force may be evidenced by improvements or other bonds and may be paid in annual installments, only the amount of such annual installment, with appropriate proration for any partial year, and interest thereon, shall be included within a computation of taxes and assessments levied against the Premises  Tenant shall be responsible for all increases in real estate taxes attributable to or caused by any organization, re-organization, purchase, sale, merger, acquisition or consolidation of Tenant, Tenant's assets or Tenant's business or by reason of any sale, assignment or recording of any transfer of interest in the Premises or the Property by Landlord, but only to the extent of Tenant's share as set forth in this Paragraph 10.2 herein.

    10.3    Definition of Real Estate Taxes

        (a)    "Real estate taxes" shall mean and include each of the following:

        (1)    Any form of assessment, license fee, license tax, business license fee, business license tax, commercial rental tax levy, charge, penalty, bond or tax, imposed by any authority having the direct power to tax, including any city, county, state or federal government, or any school, agricultural, lighting, drainage or other improvement or special district thereof, as against any legal or equitable interest of Landlord in the Premises or in the real property of which the Premises are a part.

        (2)    Any tax on Landlord's right to rent or other income from the Premises or as against Landlord's business or leasing the Premises.

        (3)    Any assessment, tax, fee, levy or charge in substitution, partially or totally, or any assessment, tax, fee, levy or charge previously included within the definition of real property tax, it being acknowledged by Tenant and Landlord that Proposition 13 was adopted by the voters of the State of California in the June 1978 election and that assessments, taxes, fees, levies and charges may be imposed by governmental agencies for such services as are protection, street, sidewalk and road maintenance, refuse removal and for other governmental services formerly provided without charge to property Owners or Occupants. It is the intention of Tenant and Landlord that all such new and increased assessments, taxes, fees, levies and charges, and similar assessments, taxes, fees, levies and charges be included within the definition of "real property taxes for purposes of this Lease

        (4)    Any tax allocable to or measured by the Gross Floor Area of the Premises or the rent payable hereunder, including without limitation, any gross income tax or excise tax levied by the State of California, any political subdivision thereof, city, or federal government, with respect to the receipt of such rent, or upon with respect to the possession, leasing, operating, management, maintenance, alteration, repair, use or occupancy by Tenant of the Premises, or any portion thereof.

        (5)    Any tax upon this transaction or any document to which Tenant is a party, creating or transferring an interest or an estate in the Premises.

        (b)    "Real estate taxes" shall not include Landlord's federal or state income, franchise, inheritance or estate taxes.

11.    COMMON AREAS:

    11.1    Definition of Common Areas  The term "Common Area" shall include all areas within the Property outside the exterior boundaries of the buildings situated thereon, including, but not limited to, streets, tunnels, driveways, parking areas, truck ways, delivery passages, access roads, loading doors, sidewalks, ramps, open and closed courts and malls, landscaped and planted areas, slopes, comfort and first aid stations, washrooms and parcel pick-up stations, exterior stairways, bus stops, retaining and decorative walls and planters, and other areas provided by Landlord and/or other Owners of portions of the Property, their employees and invitees  Landlord reserves the right to install kiosks and other free-standing structures within the Common Areas, and also reserves the

Tenant's Initials
© Stephen J. Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

EXHIBIT B
PAGE 191

right to make changes, alterations or additions at any time and from time to time in the size, shape, location, number and extent of the Common Areas, or any of them, so long as such changes, alterations or additions do not materially interfere with the Tenant's use and quiet enjoyment of the Premises, and no such change shall entitle Tenant to any abatement of rent, claim or allowance for any damages for injury or inconvenience to Tenant occasioned thereby.

     11.2    Maintenance of Common Areas.  Landlord shall maintain the Common Areas in a neat, clean and orderly condition, properly lighted and landscaped as Landlord, in its reasonable discretion, shall determine. Tenant shall pay to Landlord in the manner set forth in Paragraph 11.3 (Payment of Common Areas Expenses) Tenant's pro rata share of the expenses (hereafter "Common Areas Expenses") in connection with the maintenance and operation of the Common Areas. Tenant's pro rata share of Common Areas Expenses shall be the percentage share set forth in Item 3(e) of the Basic Lease Provisions.  If applicable, those common area charges that are attributable to retail operations shall be allocated solely among the retail spaces in the Property as opposed to the office spaces. Tenant's share of Common Areas Expenses shall also include any additional costs arising from special requirements created by Tenant's use of the Premises. Common Areas Expenses shall include, but shall not be limited to, (a) all sums expended and costs incurred in connection with the Common Areas for maintenance, landscaping, pest control, lighting, cleaning, trash removal, painting, restriping, repaving, resurfacing, sweeping, security, fire protection, sprinkler and irrigation systems; maintenance and repair of sidewalks, curbs and signs (which Tenant or other occupants of the Property are not obligated to repair); (b) operating, managing, policing, insuring, repairing and maintaining the Property and maintaining repairing and replacing roofs of the buildings in the Property; (c) operating, insuring, repairing, replacing and maintaining the "Common Utility Facilities" defined to include, but not limited to, sanitary sewer lines and systems, gas lines and systems, waterlines and systems, fire protection lines and systems, electric power, telephone and communication main lines and systems, HVAC equipment and systems, storm drainage and retention facilities and all other utility main lines and systems not exclusively serving the premises of any specific tenant; (d) parking charges, surcharges and other levies, assessments, or any other costs imposed or assessed by any local, state or federal government agencies in connection with the use of the parking facilities and/or the Common Utility Facilities, real and personal property taxes and assessments on the improvements and land comprising the Common Areas, depreciation and maintenance on operating machinery and equipment (if owned) and rental paid for such machinery and equipment (if rented) which machinery and equipment is used solely for the operation and maintenance of the Property; and (e) public liability and property damage insurance on the Common Areas and Common Facilities, fire with extended coverage insurance with vandalism and malicious mischief endorsements with, at Owner's option, earthquake damage and/or hazardous waste endorsements, rental loss coverage and any additional coverages required pursuant to Paragraph 8.1. In the event that any alteration, removal, replacement or repair is required to be made to any equipment or any portion of the Property pursuant to governmental authority, statute, law or court order, all expenses associated therewith shall be included in Common Areas Expenses unless such expenses are born by a specific tenant or occupant of the Property. Common Area Expenses shall include property management costs, Property Management Costs shall not exceed ten percent (10%) of the gross base rents received for the entire Property.

     11.3    Payment of Common Areas Expenses.  Prior to the commencement of each lease year or such other annual accounting period as Landlord shall utilize from time to time, Landlord shall give Tenant a written estimate of the Additional Rent payable by Tenant during the coming year. Tenant shall pay such estimated amount to Landlord in equal monthly installments, in advance, at the same time the Base Monthly Rent is paid. Within ninety (90) days after the end of each lease year, or such other annual accounting period as Landlord shall utilize from time to time, Landlord shall furnish to Tenant a statement showing in reasonable detail the actual costs incurred by Landlord for the operation and maintenance of the Property during the year then ended, and Tenant shall pay to Landlord Tenant's proportionate share of the cost incurred in excess of the payments of Additional Rent made by Tenant within ten (10) days of receipt of such statement. In the event that the payments of Additional Rent made by Tenant exceed Tenant's share of the actual cost of the operation and maintenance of the Property, the amount of any such excess shall be credited by Landlord to the Additional Rent next due and owing; provided, however, that, if the Lease term has expired, Landlord shall accompany said statement with the amount due to Tenant. Notwithstanding the foregoing, Landlord shall have the right to submit statements to Tenant for unbudgeted Common Area Expenses incurred on an emergency basis, and Tenant shall remit payment on such statements for its pro rata share of such Common Area Expenses within thirty (30) days of receipt of same. Tenant hereby

Tenant's Initials
Ⓢ Stephen J Flitch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 13 of 27

acknowledges that major tenants and tenants of kiosks and similar structures, may not pay Common Area Expenses and other Additional Rent charges on the same basis as Tenant herein.

11.4    Use of Common Areas   Tenant shall have for its use and benefit the nonexclusive right in common with Landlord and future Owners, other Occupants of the Property, and their agents, employees, customers, invitees, licensees and sublessees to use the Common Areas from time to time existing during the entire term of this Lease, or any extension thereof, for ingress and egress, roadway, automobile parking and sidewalks. Tenant shall not use any portion of the Common Area for any purpose, other than as set forth herein, without the prior written consent of Landlord, which consent may be withheld in its sole and absolute discretion.

12.    SIGNS AND ADVERTISING:

12.1    Tenant shall not place any sign upon the Premises or the Office Building or any roof thereof, without Landlord's prior written consent. Notwithstanding the foregoing, Tenant shall have the right, subject to Landlord's written approval of the plans, at Tenant's sole cost and expense, to install a sign on the exterior of the top of the Office Building, provided Tenant complies with all laws, orders, rules and regulations of all governmental authorities having jurisdiction and otherwise complies with all of the covenants, agreements, terms, provisions and conditions of this Lease. Tenant shall send a copy to Landlord, for Landlord's files, any and all permits necessary for the above.

12.2    Prohibited Advertising.

(a)    Tenant shall not, without Landlord's written consent, install any exterior lighting, amplifiers or similar devices or use in, upon or about the Premises any advertising media which may be heard or seen outside the Premises, such as flashing lights, search lights, loudspeakers, phonographs or radio broadcasts. Landlord may withhold its consent in its sole and absolute discretion.

(b)    Tenant shall not, without Landlord's written consent, which may be withheld in its sole and absolute discretion, solicit business in the Common Areas, nor distribute any hand bills or other advertising matter in the Common Areas

13.    ENTRY BY LANDLORD:

13.1    Permitted Entry by Landlord.   Landlord and its agents may enter the Premises at any reasonable time upon reasonable notice to Tenant, or immediately in the case of an emergency, for the purpose of inspecting the same, for the purpose of maintaining the Property and for the purpose of making repairs, alterations, or additions to any portion of the Property, including the erection and maintenance of such scaffolding, canopies, fences, and props as may be required, or for the purpose of posting notices of non-responsibility for alterations, additions, or repairs Landlord may, at any time during the last sixty (60) days of the term of this Lease, enter the Premises during normal business hours to place any usual or ordinary "For Leases" signs and/or to show the Premises to prospective lessees.

14.    ASSIGNMENT AND SUBLETTING:

14.1    Consent Required.   Notwithstanding anything to the contrary contained in this Lease, Tenant shall not assign this Lease or any interest herein or sublet, license, grant any concession or otherwise give permission to anyone other than Tenant to use or occupy all or any part of the Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld. Any attempted assignment, subletting, license or concession agreement or change of ownership without Landlord's written consent shall be void and shall confer no rights upon any third person. Without in any way limiting Landlord's right to refuse to give such consent for any other reason or reasons, Tenant agrees that it would not be commercially unreasonable to withhold consent, if in Landlord's reasonable business judgment (a) the financial worth as adjusted for inflation and/or net current assets of the proposed new Tenant is less than that of the Tenant executing this Lease or of Tenant and Tenant's Guarantor, as the case may be, (b) the transferee is not of a character or is not engaged in a business which is in keeping with the

Tenant's Initials
© Stephen J Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 14 of 27

EXHIBIT B
PAGE 193

standards of Landlord for the Premises or the Property, (e) the operation of the transferee's business will interfere with or be in competition to or violate any restriction or exclusive right given in or contrary to any lease or use of any other tenant or occupant in the Property, or potential tenant with whom Landlord is negotiating, or (d) the use of the proposed new Tenant may increase the risk of the use, release or mishandling of Hazardous Materials, or (e) the purpose for which the transferee intends to use the Premises is different from that of Tenant in violation of this Lease or other requirements of the Property. Landlord shall require a reasonable payment, including attorney's fees, of not less than One Thousand Five Hundred Dollars ($1,500.00), to cover its handling charges for each assignment or sublease it is requested to approve. The sale, assignment, transfer or disposition, whether for value, by operation of law, gift, will or intestacy, of (i) twenty-five percent (25%) or more of the issued and outstanding stock of Tenant if Tenant is a corporation, or (ii) the interest of any general partner, joint venturer, associate or co-tenant, if Tenant is a partnership, joint venture, association or co-tenancy, or (iii) the alienation, hypothecation, encumbrance, mortgaging or other transfer of Tenant's interest in this Lease or in the Premises, shall be deemed an assignment of this Lease under this Paragraph  Notwithstanding the foregoing Tenant shall have a onetime right during the first three years of the Lease to an assignment of this Lease as part of a merger of Tenant with another non-profit corporation.

14.2    General Conditions.   In the event of any approved assignment or sublease of this Lease, Tenant shall remain primarily liable on its covenants hereunder for the entire term of any approved sublease.  In the event of any assignment or sublease, the assignee or sublessee shall agree in writing to perform and be bound by all of the covenants of this Lease required to be performed by Tenant, including without limitation all prior, past due and future obligations of Tenant. Tenant agrees that any options to extend the term of this Lease are not assignable to a subtenant and further agrees that Tenant cannot exercise any option to extend the term of this Lease if a sublessee is in possession of the Premises at the time of the exercise of the option.  If Landlord so elects during the term of this Lease, Landlord may require, and Tenant hereby consents to assignee or subtenant paying the Base Monthly Rent and Additional Rent, and in the event of sublease the Landlord's portion of the above-mentioned increase, directly to Landlord. Notwithstanding the foregoing, the receipt and retention by Landlord of any rent payment by a proposed assignee or subtenant shall not constitute consent to such assignment or sublease unless specified in writing by Landlord.

14.3    Requirements.   If Tenant desires at any time to assign this Lease or to sublet the Premises or any portion thereof, it shall notify Landlord of its desire to do so and shall submit in writing to Landlord (a) the name of the proposed subtenant or assignee; (b) the nature of the proposed subtenant's or assignee's business to be carried on in the Premises; (c) the terms and provisions of the proposed sublease or assignment, including copies of any and all documents and instruments; (d) a current financial statement of the proposed subtenant or assignee and of any additional guarantor proposed for such assignment or subletting; (e) a business plan prepared by the proposed subtenant or assignee for the remainder of the term of the Lease; (f) a drawing depicting the proposed sign, and (g) such other information, financial or otherwise, as Landlord may request concerning the proposed subtenant or assignee. As provided in Paragraph 14.1, any request for Landlord's approval of a sublease or assignment shall be accompanied with a check in such reasonable amount as Landlord shall advise for the cost of review and/or preparation of any documents relating to such proposed transfer  Furthermore, Tenant and the proposed subtenant or assignee shall agree that Landlord shall have the right to enforce any and all of the terms of the sublease, as well as of the Lease, directly against such subtenant or assignee.

14.4    Election   At any time within fifteen (15) days after Landlord's receipt of the information specified in Paragraph 14 3 above, Landlord may by written notice to Tenant elect to either  (a) accept the proposed assignment or sublease to the Premises or the portion thereof as shall be specified in said notice upon the same terms as those offered to the proposed subtenant or assignee, as the case may be; or (b) disapprove and reject the proposed assignment or sublease  If Landlord does not provide notice or rejection or disapproval within said fifteen (15) day period, then the proposed assignment or sublease shall be deemed approved.  If Landlord rejects the proposed assignment or sublease, Landlord shall have the right to terminate this Lease; provided, however, Tenant shall have the right to withdraw the proposed assignment or sublease assignment within ten (10) days of Landlord's notice of rejection and termination given pursuant to this Paragraph 14.4, and Tenant shall remain in possession under the terms of this Lease.  Any consent given to a proposed assignment or sublease shall not be deemed to be a consent to

Tenant's Initials
© Stephen J  Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 15 of 27

EXHIBIT B
PAGE 194

any future assignment or sublease.

    14.5    <u>Bankruptcy.</u>

        (a)    If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, 11 U.S.C Section 101, et seq. (the "Bankruptcy Code"), any and all monies or other consideration payable or otherwise to be delivered in connection with such assignment shall be paid or delivered to Landlord, shall be the exclusive property of Landlord and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code. Any and all monies or other consideration constituting Landlord's property under the preceding sentence not be paid or delivered to Landlord, shall be held in trust for the benefit of Landlord and shall be promptly paid or delivered to Landlord.

        (b)    Any person or entity to which this Lease is assigned pursuant to the provisions of the Bankruptcy Code shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on and after the date of such assignment. Any such assignee shall upon demand execute and deliver to Landlord an instrument confirming such assumption.

        (c)    This is a lease of real property in a center within the meaning of Section 365(b)(3) of the Bankruptcy Code.

    14.6    <u>Limitation of Remedy.</u> Tenant acknowledges and agrees that each of the rights of Landlord set forth in Paragraphs 14.1-14.5 are reasonable restrictions on subletting and assignment for purposes of California Civil Code Section 1951 4, and Landlord shall have no liability to Tenant or to any proposed transferee of Tenant for any damages if it is adjudicated that Landlord's consent has been unreasonably withheld. Tenant's sole remedy shall be to have the proposed assignment or sublease declared valid.

## 15.    ABANDONMENT:

    15.1    <u>Tenant's Abandonment Prohibited.</u> Absent Tenant's prior written notice to Landlord and Landlord's written approval thereof, which may be withheld in its sole and absolute discretion, Tenant shall not vacate or abandon the Premises any time during the term of this Lease nor permit the Premises to remain unoccupied for a period of longer than fifteen (15) consecutive days during the term of this Lease. If Tenant shall abandon, vacate, or surrender the Premises, or be dispossessed by process of law, or otherwise, any personal property or trade fixtures belonging to Tenant and left on the Premises shall, at the option of Landlord, be deemed abandoned. In such case, Landlord may dispose of said personal property in any manner as permitted by applicable law and is hereby relieved of all liability for doing so. These provisions shall not apply if the Premises should be closed and business temporarily discontinued therein on account of strikes, lockouts, or similar causes (other than those of a financial nature) beyond the reasonable control of Tenant.

## 16.    BREACH BY TENANT:

    16.1    <u>Events of Default.</u> The occurrence of any of the following shall constitute a default, and if such default is not timely cured shall constitute a material breach of this Lease, by Tenant:

        (a)    The failure of Tenant to pay or cause to be paid when due any rent, monies, or charges required by this Lease to be paid by Tenant when such failure continues for a period of three (3) days after written notice thereof from Landlord to Tenant; or

        (b)    The abandonment of the Premises by Tenant within the meaning of Paragraph 15 1; or

        (c)    The failure of Tenant to do or cause to be done any material act, other than payment of rent, monies or charges, required by this Lease, or

Tenant's Initials
© Stephen J. Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

(d)     Tenant causing, permitting, or suffering, without the prior written consent of Landlord, any material act when this Lease requires Landlord's prior written consent or prohibits such act; or

(e)     The occurrence of any event of insolvency or bankruptcy with respect to Tenant, including any of the following by way of illustration:

(1)     Any general assignment or general arrangement for the benefit of creditors;

(2)     The filing of any petition by or against Tenant to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy, unless such petition is filed against Tenant and the same is dismissed within sixty (60) days;

(3)     The appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located in the Premises or of Tenant's interest in this Lease; or ;

(4)     The attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease.

(f)     The falsification of any written report or statement required to be given by Tenant to Landlord under this Lease.

16.2     No Waiver.  The acceptance by Landlord of any partial payment of rent due hereunder after breach by Tenant will not constitute a waiver of such breach, unless a written statement to that effect signed by Landlord has been delivered to Tenant.

17.     REMEDIES UPON BREACH:

17.1     Landlord's Remedies  In the event of any breach by Tenant, in addition to other rights or remedies of Landlord at law or in equity, Landlord shall have the right to exercise any one or more of the following remedies:

(a)     Collect Rent Without Terminating Lease. Landlord may recover from Tenant the rent as it becomes due and any other amount necessary to compensate Landlord for all detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom. Landlord may sue monthly, annually or after such equal or unequal periods as Landlord desires for amounts due under this subparagraph (a). The right to collect rent as it becomes due shall terminate upon the termination by Landlord of Tenant's right to possession of the Premises. Tenant's right to possession shall not be terminated unless and until Landlord delivers to Tenant written notice thereof.

(b)     Terminate Lease. Landlord an alternative to exercising the remedies set forth in Paragraph 17.1 (a), may terminate Tenant's right to possession of the Premises by and upon delivery to Tenant of written notice of termination. Landlord shall then immediately reenter the Premises and take possession thereof pursuant to legal proceedings and remove all persons and property from the Premises. Such property may be removed and stored in a public warehouse or elsewhere at the cost of and for the account of Tenant No notice of termination shall be necessary in the event that Tenant has abandoned the Premises. In the event that Landlord elects to terminate Tenant's right of possession, Landlord may recover all of the following:

(1)     The worth at the time of award of the unpaid rent which had been earned at the time of termination. "Worth at the time of award" shall be computed by allowing interest at ten percent (10%) per annum, or the highest rate allowed at law, whichever is less, from the first day the breach occurs;

(2)     The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the Tenant proves could have been reasonably avoided  Worth at the time of award" shall be determined by allowing

Tenant's Initials
© Stephen J. Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

interest at the rate of ten percent (10%) per annum, or the highest rate allowed at law, whichever is less, from the first day a breach occurs;

(3)     The worth at the time of award by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the Tenant proves could be reasonably avoided "Worth at the time of award" shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award, plus one percent (1%);

(4)     Any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under the Lease or which in the ordinary course of events would be likely to result therefrom, including, but not limited to, expenses of reletting, attorney's fees, costs of alterations and repairs, recording fees, filing fees and any other expenses customarily resulting from obtaining possession of leased Premises and releasing.

17.2     Landlord's Right to Cure.  In the event of breach, default, or noncompliance under this Lease by Landlord, Tenant shall, before exercising any right or remedy available to it, give Landlord written notice of the claimed breach, or noncompliance in reasonable detail, setting forth the necessary actions to be taken to cure such default. If, prior to its giving such notice, Tenant has been noticed in writing (by way of Notice of Assignment of Rents and Leases or otherwise) of the address of a lender which has furnished any financing to Landlord or is a beneficiary of any deed of trust recorded against the Premises or the Property, then concurrently with giving the aforesaid notice to Landlord, Tenant shall, pursuant to the manner of giving notice set forth in Paragraph 30.9 below, transmit a copy thereof to such lender or lenders. For thirty (30) days following the receipt of the notice by Landlord, Landlord shall have the right to cure such breach or to commence the cure if more than thirty (30) days is reasonably required to affect such cure, so long as Landlord shall thereafter diligently pursue such cure to a completion. If Landlord has failed to commence the cure within such thirty (30) day period, then Tenant shall so notify Landlord's lender or lenders and provide any such lender with an additional thirty (30) days to effect such cure, so long as any such lender shall thereafter diligently pursue such cure to a completion, (including, but not limited to, commencement and prosecution of proceedings to foreclose or otherwise exercise its rights under its mortgage or other security instrument, if necessary to effect such cure), in which event this Lease shall not be terminated by Tenant so long as such actions or remedies are being diligently pursued by said lender. If the default is cured by Landlord or lender as provided above, Tenant shall have no other remedy available to it and this Lease shall remain in full force and effect.  If Landlord, or lender as provided herein, fails to cure the breach, default or noncompliance as set forth herein Tenant shall have the right to terminate the Lease upon sixty (60) day notice to Landlord and lender after the expiration of the applicable time frames to cure

18.     DAMAGE OR DESTRUCTION:

18.1     Destruction in Whole or Part.  In the event that the Premises is partially or completely damaged or destroyed or declared unsafe or unfit for occupation by any authorized public authority for any reason other than Tenant's acts, use or occupation, which declaration requires repairs to either the Premises or the building in which the Premises are located, the rights and obligations of Tenant and Landlord shall be as follows.

(a)     If the damage is covered under the form of property insurance carried by Landlord, and sufficient insurance proceeds are available to make all necessary repairs, Landlord shall repair such damage as soon as is reasonably possible and this Lease shall continue in full force and effect.

(b)     In the event that such damage is not covered, or is "under insured" by the form of property insurance carried by Landlord, Landlord shall repair such damage; provided, however, that if such damage or destruction exceeds thirty percent (30%) of the then replacement value of the improvements on the Premises (exclusive of trade fixtures, equipment and foundations), Landlord shall have no obligation to repair such damage. If Landlord elects not to repair such damage Tenant shall have the right to terminate the Lease upon sixty (60) day notice to Landlord and lender.

(c)     Notwithstanding anything contained herein above, (1) if the Premises are damaged or

LEASE—OFFICE BUILDING

Tenant's Initials
© Stephen J Fitch

Landlord's Initials

Page 18 of 27

destroyed to any extent during the last twelve (12) months of the term of this Lease, (2) if the uninsured portion of such damage exceeds thirty percent (30%) of the then replacement value of the building of which the Premises constitute all or a part, or (3) if over fifty percent (50%) of the Premises shall be damaged or destroyed at any time whether such casualty is insured or not, Landlord may, at Landlord's option, cancel and terminate this Lease by delivery of written notice to Tenant to so terminate. Said written notice shall be made within ninety (90) days after the date of occurrence of such damage or destruction and shall be effective as of the date of such notice. If notice is not given within said ninety (90) day period, Landlord shall be deemed to have elected to restore the damage or destruction and shall repair such damage as soon as reasonably possible. If the above occurs and Landlord does not elect to terminate or repair than Tenant shall have the right to terminate the Lease upon sixty (60) day notice to Landlord and lender.

18.2   Rent Abatement. If Landlord elects or is required to make repairs to the Premises, pursuant to Paragraph 18.1 above, Tenant shall be entitled to a reduction in the Base Monthly Rent during the time in which the repairs are being made to the extent to which Tenant's use of the Premises is impaired. Wherever the Lease provides for rent abatement, that phrase shall mean Base Monthly Rent and Additional Rent. All rent abatement shall terminate upon the substantial completion of such repair or restoration.

18.3   Restoration of Tenant's Property. Landlord's obligation to restore shall not include the restoration or replacement of Tenant's trade fixtures, equipment, merchandise or any improvements or alterations made by Tenant to the Premises. Tenant shall restore and replace the same in the event that Landlord is obligated or elects to repair any damage or destruction of the Premises.

19.   CONDEMNATION:

19.1   General. If the Premises or any portion thereof are taken under the power of eminent domain, or sold by Landlord under the threat of the exercise of such power, this Lease shall terminate as to the part so taken as of the date that the condemning authority takes possession of the Premises If more than twenty-five percent (25%) of the Premises is taken or sold under such threat, either Landlord or Tenant may terminate this Lease as of the date that the condemning authority takes possession by delivery of written notice of such election within twenty (20) days after such party has been notified of the taking or, in the absence thereof, within twenty (20) days after the condemning authority shall have taken possession.

19.2   Continuation of Lease After Condemnation If this Lease is not terminated by Landlord or Tenant, it shall remain in full force and effect as to the portion of the Premises remaining; provided, however, that the Base Monthly Rent and Tenant's share of Common Areas Expenses shall be reduced in proportion to the reduction of the Gross Floor Area of the Premises. In such event, Landlord shall, at Landlord's expense, restore the Premises to a complete unit of like quality and character, except as to size, as existed prior to the date on which the condemning authority took possession. If more than twenty-five percent (25%) of the Premises is taken under the power of eminent domain, or sold by Landlord under the threat of the exercise of such power than Tenant shall have the right to terminate the Lease upon sixty (60) day notice to Landlord and lender

19.3   Allocation of Condemnation Award. All awards for the taking of any part of the Premises or proceeds from the sale made under the threat of the exercise of the Power of eminent domain shall be the property of Landlord, whether made as compensation for diminution of value of the leasehold estate, for the taking of the fee, or as severance damage; provided, however, that Tenant shall be entitled to any award for loss of or damage to Tenant's trade fixtures, and removable personal property which is separately stated within such award. Any other claim of Tenant relative to this Paragraph 19.3 shall not diminish Landlord's recovery in any respect.

20.   SURRENDER OF LEASE:

20.1   Effect of Surrender. The voluntary or other surrender or a mutual cancellation of this Lease by Tenant shall not work a merger, and shall, at the election of Landlord, either terminate all or any existing subleases or subtenancies or may operate as an assignment to it of any or all of such subleases or subtenancies. Landlord shall

Tenant's Initials
© Stephen J Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 19 of 27

EXHIBIT B
PAGE 198

exercise its election within thirty (30) days of the event so requiring.

21.    ATTORNEY'S FEES:

21.1    Attorney's Fees.  If Landlord is involuntarily made a party defendant to any litigation relating to this Lease or the Premises by reason of any act or omission of Tenant, then Tenant shall defend, protect and hold Landlord harmless from any loss, cost or expense, including reasonable attorney's fees, arising out of or relating to any such litigation. In the event of any legal action or proceeding between the parties, the ultimately prevailing party shall be entitled to reasonable attorney's fees and expenses as a part of the judgment resulting therefrom

22.    SALE, EXCHANGE OR MASTER LEASE OF THE PREMISES BY LANDLORD:

22.1    Landlord's Residual Liability.  Notwithstanding any other provisions of this Lease, Landlord may assign, in whole or in part, Landlord's interest in this Lease and may sell, exchange or master lease all or part of the real estate of which the Premises are a part. In the event of any sale or exchange of the Premises by Landlord and assignment by Landlord of this Lease, Landlord shall be and is hereby entirely freed and relieved of all liability under any and all covenants and obligations contained in or derived from this Lease or arising out of any act, occurrence or omission relating to the Premises which occurs after the consummation of such sale, exchange, or assignment. Landlord shall provide Tenant with notice of any assignment, sale, exchange or master lease.

23.    QUIET ENJOYMENT:

23.1    Landlord's Covenant  If Tenant is not in breach under the covenants made in this Lease and has satisfactorily attorned to any successor in interest to Landlord or any lender of Landlord as provided in Article 25, Landlord covenants that Tenant shall have peaceful and quiet enjoyment of the Premises without hindrance on the part of Landlord  Landlord will defend Tenant in the peaceful and quiet enjoyment of the Premises against claims of all persons claiming through or under the Landlord.

24.    ESTOPPEL CERTIFICATES:

24.1    Tenant's Obligation.  Tenant shall at any time during the term of this Lease, within five (5) business days of receipt of written notice from Landlord, execute and deliver to Landlord a statement in a form acceptable to Landlord in writing certifying that this Lease is unmodified and in full force and effect or, if modified, stating the nature of such modification. Tenant's statement shall include other commercially reasonable information and details requested by Landlord, such as the date to which rent and other charges are paid, Tenant's knowledge concerning any uncured defaults with respect to Landlord's obligations under this Lease and the nature of such defaults if they are claimed.  Any such statement may be relied upon conclusively by any prospective purchaser or lender of the Premises.  Should Tenant shall fail to timely deliver such estoppel certificate to Landlord, Tenant agrees that such failure shall be conclusive upon Tenant that this Lease is in full force and effect, except to the extent any modification has been represented by Landlord, and that there are no uncured defaults in the Landlord's performance, and that not more than one month's rent has been paid in advance.

25.    SUBORDINATION; ATTORNMENT; NON-DISTURBANCE:

25.1    Subordination of Lease to Landlord's Financing.  Except as otherwise provided herein, this Lease is hereby made subordinate to the lien of any mortgage or deed of trust to any bank, insurance company or other lending institution, now or hereafter in force against the real property of which the Premises constitute a part, and to all advances made or hereafter made upon the security thereof ("Security Instrument"). Any holder of a Security Interest at any time existing or encumbering the Landlord's interest in the Property may, at its option, subordinate its Security Interest to this Lease.

25.2    Attornment by Tenant.  In the event of the sale or assignment of Landlord's interest in the Property of which the Premises are a part, or in the event any proceedings are brought for foreclosure, or in the event

EXHIBIT B
PAGE 199

of the exercise of the power of sale under any mortgage or deed of trust made by Landlord covering the Premises, Tenant shall, subject to the non-disturbance provisions of Paragraph 25.5 below, attorn to the purchaser or assignee upon any such foreclosure or sale or assignment and recognize such purchaser or assignee as Landlord under this Lease.

25.3 Subordination of Lease to Certain Agreements with Third Parties. Tenant hereby subordinates its rights hereunder to any Declaration of Restrictions and Grant of Easements or any other operation and reciprocal easement agreement, or any amendments thereto, for access and parking between Landlord and the Owner(s) of any property located within or adjacent to the Property whenever, in the reasonable discretion of Landlord, it is determined that any such agreement would be beneficial to the use and operation of the Property

25.4 Execution of Documents. Tenant, upon request of any party in interest, shall execute promptly such instruments and certificates, to carry out the intent of Articles 24 and 25. If, within ten (10) days after the date of a written request by Landlord to execute such instruments, Tenant shall not have executed the same, Tenant shall be deemed to have irrevocably appointed Landlord as attorney-in-fact for Tenant with full power and authority to execute and deliver in the name of Tenant any such instruments, certificates, and/or documents.

25.5 Non-Disturbance. With respect to any Security Instrument entered into by Landlord after execution of this Lease, and with respect to any requested attornment by Tenant per Paragraph 25.2 above, Tenant's subordination of this Lease, and Tenant's attornment, shall be subject to receiving a commercially reasonable non-disturbance agreement ("Non-Disturbance Agreement") from the holder of such Security Instrument, or purchaser or assignee of Landlord, which Non-Disturbance Agreement shall provide that Tenant's possession of the Premises, and this Lease and options to extend the term hereof, will not be disturbed so long as Tenant is not in breach under the Lease and attorns to the record owner of the Premises.

26 HOLDING OVER; SURRENDER:

26.1 Effect of Holding Over. If Tenant remains in possession of the Premises after the expiration of the term of this Lease, including options, if applicable, without executing a new Lease, or after Landlord has declared a forfeiture by reason of a material breach by Tenant, then such holding over shall be construed as a tenancy from month to month, subject to all the conditions, provisions and obligations of this Lease insofar as they are applicable to a month-to-month tenancy. The Base Monthly Rent payable during any period of holding over should be equal to one hundred five percent (105%) of the Base Monthly Rent payable during the period immediately preceding Tenant's holding over, and all Percentage Rent and Additional Rent payments shall also be made as specified within this Lease.

26.2 Surrender of Premises. At the expiration of this Lease, Tenant shall surrender the Premises in the same condition as it was upon delivery of possession thereto under this Lease, reasonable wear and tear excepted, and shall deliver all keys to Landlord. Before surrendering the Premises, Tenant shall, at its sole cost and expense, remove all of its personal property and trade fixtures and such alterations or additions to the Premises made by Tenant as may be specified for removal by Landlord, and shall repair any damage caused by such property or the removal thereof. If Tenant fails to remove its personal property and fixtures upon the expiration of this Lease, the same shall be deemed abandoned and shall become the property of Landlord.

27. LIMITATION OF LIABILITY:

27.1 Agreement by Tenant.

(a) In consideration of the execution of this Lease by Landlord, Tenant agrees in the event of any actual or alleged failure, breach, or default hereunder by Landlord: (1) The sole and exclusive remedy shall be against the partnership and its partnership assets; (2) no partner of Landlord should be sued or named as a party in any suit or action (except as may be necessary to secure jurisdiction of the partnership); and (3) no judgment will be taken against any partner of Landlord These covenants and agreements are enforceable both by Landlord and also

Tenant's Initials
© Stephen J Fitch

Landlord's Initials

EXHIBIT B
PAGE 200

by any partner of Landlord.

(b)     Tenant agrees that each of the foregoing covenants and agreements shall be applicable to any covenant or agreement either expressly contained in this Lease or imposed by statute or at common law.

28.     LIABILITY OF SUCCESSORS:

28.1     Inurement.  The covenants and conditions herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of all of the parties hereto and all of the parties hereto shall be jointly and severally liable for the covenants contained herein

29.     MISCELLANEOUS PROVISIONS:

29.1     Gender and Number.  Whenever the singular number is used in this Lease, the same shall include the plural, and the masculine shall include the feminine and neuter gender; and the word "person" shall include corporation, form or association, when required by the context.

29.2     Captions.  The headings or titles to the articles and paragraphs of this Lease are for convenience only and do not in any way define, limit or construe the contents of such articles and paragraphs.

29.3     Entire Agreement.  This Lease and its exhibits contain all of the agreements and conditions made between the parties with respect to the leasing of the Premises. Landlord and Landlord's Real Estate Brokers make no warranty or representation with respect to any other tenants or owners which may or may not construct improvements, occupy or conduct business within the Property, and Tenant hereby acknowledges and agrees that it is not relying on any warranty or representation relating thereto in entering into this Lease. Landlord specifically disavows any oral representations made by or on behalf of its employees, agents, and independent contractors, other than the express terms of this Lease. Tenant hereby acknowledges and agrees that it is not relying on and will not rely on any oral representations in entering into this Lease. References upon the exhibits to potential tenants within the Property are to be considered generic and are not to be considered as specific representations that any particular company, firm, business enterprise will occupy a specific area within the Property.  This Lease may not be amended, modified, or any of its provisions waived except by a written instrument signed by all the parties to this Lease.

29.4     Governing Law.  The laws of the State of California shall govern the validity, performance and enforcement of this Lease.

29.5     Invalidity; Construction.  If any provision of this Lease is determined to be void by any court of competent jurisdiction, such determination shall not affect any other provision of this Lease and such other provisions shall remain in full force and effect. If any provision of this Lease is capable of two constructions, one which would render the provision void and one which would render the provision valid, the provision shall be interpreted in the manner which would render it valid.

29.6     Payments.  Except as may otherwise be expressly stated, each payment required to be made by Tenant shall be in addition to and not in substitution for other payments to be made by Tenant.

29.7     Time of Essence.  Time is of the essence of each and every provision of this Lease.

29.8     Force Majeure  Any prevention, delay or stoppage due to strikes, lockouts, labor disputes, acts of God, inability to obtain labor or materials or reasonable substitutes therefor, governmental restrictions, regulations, or controls, enemy or hostile government action, civil commotion, fire or other casualty, and other causes (other than financial) beyond the reasonable control of the party obligated to perform, shall excuse the performance by such party for a period equal to that resulting from such prevention, delay or stoppage, except those obligations of Tenant to pay rent and other charges pursuant to the terms of this Lease.

Tenant's Initials
© Stephen J Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 22 of 27

EXHIBIT B
PAGE 201

29.9     Notices.

(a)     All notices to be given by one party to the other under this Lease shall be in writing, mailed or delivered to the other party at the addresses specified in Item 10 of the Basic Lease Provisions.

(b)     Mailed notices shall be sent by United States Postal Service, certified or registered mail, with return receipt requested, postage prepaid, or by other comparable commercial means, and shall be deemed to have been given two (2) days after the date posted by the United States Postal Service or on the date signed as received by such other comparable commercial service.

(c)     Either party may, by proper notice, at any time designate a different party and/or address to which notices shall be sent.

29.10     Brokers.  Tenant warrants that it has had no dealings with any real estate broker or agent in connection with the negotiation and/or execution of the Lease, except the broker identified in Item 11 of the Basic Lease Provisions.

29.11     No Partnership.  Notwithstanding any other provision of this Lease, Landlord does not by this Lease, in any manner nor for any purpose, become a partner or joint venturer of Tenant in the conduct of its business or otherwise. The provisions of this Lease relating to Percentage Rent and Additional Rent are included solely for the purpose of providing a method whereby such rent is to be measured and ascertained.

29.12     Fees and Permits.  Tenant is responsible for the application, payment and approval of all fees, licenses and permits necessary to prepare for and complete the opening and continued operation of its business.

29.13     Rules and Regulations.  Landlord reserves the right to make such reasonable rules and regulations as it deems appropriate, in its sole discretion, to provide for a more efficient and orderly operation of the Property. Tenant covenants and agrees to be bound by and to abide by all such rules and regulations immediately upon receipt of written notice of such rules and regulations from Landlord.

29.14     General Interpretation.  The terms of this Lease have been negotiated by the parties hereto and the language used in this Lease shall be deemed to be the language chosen by the parties hereto to express their mutual intent. This Lease shall be construed without regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted, or in favor of the party receiving a particular benefit under the Agreement. No rule of strict construction will be applied against any person.

29.15 Counterpart Signatures.  This Lease may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Lease shall not be effective until the execution and delivery between each of the parties of at least one set of counterparts  The parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original  Any one of such completely executed counterparts shall be sufficient proof of this Lease.

29.16 Business Day Defined  "Business Day" means a day other than a Saturday, Sunday, or holiday on which banks, County offices, or U.S. Post Offices are closed in San Diego County; if a date or time period provided for in this Lease is or ends on a day other than a Business Day, then such date shall automatically be extended until the next Business Day.

30.     SPECIAL PROVISIONS:

30.1     Not An Offer.  THE SUBMISSION OF THIS LEASE BY LANDLORD IS NOT AN OFFER AND THERE SHALL BE NO AGREEMENT OF ANY NATURE BETWEEN THE PARTIES THAT IS BINDING UPON ANY PARTY HERETO UNTIL THIS LEASE IS FULLY EXECUTED AND LANDLORD

LEASE – OFFICE BUILDING

Tenant's Initials
© Stephen J  Fitch

Landlord's Initials

Page 23 of 27

EXHIBIT B
PAGE 202

HAS CLOSED ESCROW TO PURCHASE PROPERTY. LANDLORD IS IN ESCROW TO PURCHASE THE PROPERTY ESCROW # SA-4983365 AT FIRST AMERICAN TITLE COMPANY. UPON LANDLORD CLOSING ESCROW TO PURCHASE THE PROPERTY THE COMMENCEMENT DATE SHALL BE MODIFIED TO BE THE DATE TITLE TO THE PROPERTY IS RECORDED IN THE NAME OF LANDLORD AND ALL DATES SHALL THEREAFTER RELATE TO REVISED COMMENCEMENT DATE.

30.2    Legal Representation. Landlord and Tenant each acknowledge, warrant and represent to the other that it has had an adequate opportunity to seek the advice of legal counsel of its choice prior to entering into this Lease, that such opportunity was undertaken or waived by the free and voluntary act of such party, and that each party waives and covenants to forego and/or forebear from the assertion of any claim or defense that this Lease is not a valid and binding obligation upon it by reason of the failure to secure or receive adequate legal representation

30.3    General. By insertion of numbers in the following blanks, Landlord and Tenant acknowledge that Paragraph(s) N/A  is/are attached hereto and made a part hereof. If numbers have not been set forth in the blank in this Paragraph 34.3, it is conclusive that no additional provisions are a part of this Lease.

30.4    Non-Discrimination. The Tenant herein covenants by and for itself, its officers, directors, successors and assigns and all persons claiming under or through it, and this Lease is made and accepted upon and subject to the following conditions:

There shall be no discrimination against or segregation of, any person or group of persons on account of race, color, creed, religion, sex, marital status, ancestry or national origin in the leasing, subleasing, transferring, use, occupancy, tenure, or enjoyment of the land herein leased nor shall the Tenant itself, or any person claiming under or through it, establish or permit any such practice or practices of discrimination or segregation with reference to the selection, location, use or company of tenants, lessees, sublessees, subtenants or vendees in the Premises herein leased.

30.5    Accessibility Inspection.    Landlord ☐ has or ☒ has not had the Demised Premises inspected for disability access by a Certified Access Specialist ("CASp"). The CASp determined that the Property ☐ met or ☐ did not meet all applicable construction-related accessibility standards pursuant to California Civil Code Section 55.53.

30.6    Energy Disclosure. Tenant acknowledges that the Premises are a newly constructed building and as such Landlord has no historical energy use for the Premises.

[Signatures on next page]

Tenant's Initials
Ⓓ Stephen J. Fitch

LEASE – OFFICE BUILDING

Landlord's Initials

Page 24 of 27

EXHIBIT B
PAGE 203

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the day and year first above written.

LANDLORD:

DRP Holdings, LLC.,
a California limited liability company

By: _____
Daryl R. Priest, Manager

TENANT:

BORREGO COMMUNITY HEALTH FOUNDATION
a California non-profit public benefit corporation

By: _____
Name: Bruce Hebets
Its: CEO

Tenant's Initials
© Stephen J. Fitch

Landlord's Initials

EXHIBIT "A"

SITE PLAN

LEASE – OFFICE BUILDING

Tenant's Initials
© Stephen J. Fitch


Landlord's Initials

EXHIBIT B
PAGE 205



EXISTING
SAN BERNADINO BRANCH
FIRST FLOOR



**EXHIBIT "B"**
**CONFIRMATION OF LEASE**

THIS CONFIRMATION LEASE is made and agreed upon as of this ___ day of _____, 2015, by and between DRP Holdings, LLC, a California limited liability company ("Landlord"), and BORREGO COMMUNITY HEALTH FOUNDATION, a California non-profit public benefit corporation ("Tenant").

WITNESSETH.

Landlord and Tenant have previously entered into a certain lease agreement dated August ___, 2015 ("Lease"), covering certain premises located at 590 N. D Street, San Bernardino, California, as more particularly described in the Lease ("Premises").

NOW, THEREFORE, in connection with the foregoing, the parties hereto mutually agree as follows:

1.      For the purpose of confirming the establishment of the Commencement Date, as required by the provisions of the Lease, Landlord and Tenant hereby agree that:

        a.      The date of _Oct 1_, ~~2015~~ 2016, is hereby established as the "Commencement Date" referred to in the Lease;

        b.      The date of _Oct 1_, ~~2015~~ 2016, is hereby established as the "Rent Commencement Date" referred to in the Lease, upon which Rent and all other items of payment commence to accrue;

        c.      The date of _Sept 30_, ~~2045~~ 2046, is hereby established as the "Expiration Date" of the term of the Lease; and

2.      This Confirmation Agreement and each and all provisions hereof shall inure to the benefit of, or bind, as the case may require, the parties hereto and their respective heirs, successors and assigns.

        IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the date and year first written above

LANDLORD:                                        TENANT:

DRP Holdings, LLC.,                              BORREGO COMMUNITY HEALTH FOUNDATION
a California limited liability company           a California non-profit public benefit corporation

By _____                             By: _____
Daryl R. Priest, Manager                        Name: _Bruce Hebets_
                                                Its: _CEO_

LEASE – OFFICE BUILDING

EXHIBIT B
PAGE 208