JOSEPH R. LAMAGNA (State Bar No. 246850)
JORDAN KEARNEY (State Bar No. 305483)
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, California 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
E-Mail: jlamagna@hooperlundy.com
           jkearney@hooperlundy.com

DEVIN M. SENELICK (State Bar No. 221478)
TARYN A. REID (State Bar No. 328772)
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067
Telephone: (310) 551-8111
Facsimile: (310) 551-8181
E-Mail: dsenelick@hooperlundy.com
           treid@hooperlundy.com

Attorneys for Plaintiff
BORREGO COMMUNITY HEALTH
FOUNDATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>              Plaintiff,<br><br>      vs.<br><br>INLAND VALLEY INVESTMENTS, LLC, a California limited liability company; DRP HOLDINGS, LLC, a California limited liability company; PROMENADE SQUARE, LLC, a California limited liability company; and DOES 1-50, inclusive,<br><br>              Defendants. | Case No. 3:21-cv-01417-BEN-KSC<br><br>Hon. Roger T. Benitez, Courtroom 5A<br><br>**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**<br><br>Date:        May 15, 2022<br>Time:        10:30 a.m.<br>Courtroom:  5A<br><br>Trial Date:        None Set |

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1
2

# **TABLE OF CONTENTS**

**Page**

3   I.      INTRODUCTION ..................................................................................... 7

4   II.     PROCEDURAL HISTORY ..................................................................... 8

5   III.    STATEMENT OF FACTS ....................................................................... 9

6   IV.     APPLICABLE LAW .............................................................................. 14

7   V.      BORREGO HEALTH'S CLAIMS ARE SUFFICIENTLY PLED ............... 15

8           A.      BORREGO HEALTH'S RICO CLAIM IS TIMELY ......................... 15

9           B.      BORREGO HEALTH'S RICO CLAIM IS SUFFICIENTLY
10                  PLED ............................................................................................. 17

11                  1.      Borrego Health Sufficiently Pleads It's RICO Claim
                            Against All Defendants ...................................................... 18

12                  2.      Borrego Health Sufficiently Pleads the Conduct Element
13                          of its RICO Claim ............................................................... 19

14                  3.      Borrego Health Sufficiently Pleads the Enterprise Element
                            of its RICO Claim ............................................................... 21

15                  4.      Borrego Health Sufficiently Pleads a Pattern of
16                          Racketeering Activity ......................................................... 21

17                  5.      Borrego Health Sufficiently Pleads the Injury Element of
                            its RICO Claim ................................................................... 22

18          C.      BORREGO HEALTH'S STATE LAW CLAIMS ARE
19                  SUFFICIENTLY PLED ................................................................... 23

20                  1.      Borrego Health's State Law Claims Are Timely ............... 23

21                  2.      Borrego Health Sufficiently Pleads Fraud .......................... 24

22                          a.      Borrego Health's Claims for Imposition of a
                                    Constructive Trust, Reformation, Rescission,
23                                  Money Had and Received, Violations of the UCL,
                                    and Declaratory Relief Are Sufficiently Pled ............... 26

24   VI.     BORREGO HEALTH'S MOTION TO CONSOLIDATE SHOULD
25           BE CONSIDERED IN CONNECTION WITH THE PENDING
             MOTION .............................................................................................. 28

26   VII.    LEAVE TO AMEND SHOULD BE GRANTED ....................................... 28

27   VIII.   CONCLUSION ...................................................................................... 30

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **FEDERAL CASES**

*Agency Holding Corp. v. Malley–Duff & Associates, Inc.*,
   483 U.S. 143 (1987) ................................................................... 15

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) .................................................................... 14

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) .................................................... 15

*Clarendon Nat. Ins. Co. v. Insurance Co. of the West*
   442 F. Supp. 2d 914 (E.D. Cal. 2006) ........................................ 18

*Clement v. Am. Greetings Corp.*,
   636 F. Supp. 1326 (S.D. Cal. 1986) ........................................... 15

*Conley v. Gibson*,
   355 U.S. 41 (1957) ...................................................................... 15

*Gilligan v. Jamco Develop. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ...................................................... 15

*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980) ...................................................... 16

*Julinians Against Shakedown Tactics v. TEJJR*,
   No. 05CV2353, 2006 WL 5003361 (S.D. Cal. Aug. 1, 2006) .......... 29

*Ketayi v. Health Enrollment Grp.*,
   No. 20-CV-1198, 2021 WL 2864481 (S.D. Cal. July 8, 2021) ........ 20

*L.A. T-Shirt & Print, Inc. v. Primitive Skateboarding, Inc.*,
   No. 220CV11129, 2021 WL 4694785 (C.D. Cal. Sept. 9, 2021) ...... 29

*LD v. United Behav. Health*,
   508 F. Supp. 3d 583 (N.D. Cal. 2020) ........................................ 19

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ................................................. 17, 22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

Case No. 3:21-cv-01417-BEN-KSC

7342453.1

## TABLE OF AUTHORITIES

Page(s)

*Millar v. Bay Area Rapid Transit Dist.*
(N.D. Cal. 2002) 236 F. Supp. 2d 1110.................................................................29

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ...............................................................15, 17, 22

*Outdoor Media Grp. v. City of Beaumont*,
506 F.3d 895 (9th Cir. 2007) ...........................................................................14

*In re Outlaw Lab'y*,
No. 18-CV-840 2020 WL 5552558 (S.D. Cal. September 16, 2020) ..........19, 20

*Russell v. Micheletti*,
No. 18-CV-06691-RS, 2023 WL 2620896 (N.D. Cal. Mar. 23,
2023) ...............................................................................................................27

*Seymour v. Hull & Moreland Eng'g.*,
605 F.2d 1105 (9th Cir. 1979) .........................................................................18

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .........................................................................14

*The Wimbledon Fund, SPC (Class TT) v. Graybox, LLC*,
No. 215CV06633, 2016 WL 7444701 (C.D. Cal. June 13, 2016) .....................18

*TwoRivers v. Lewis*,
174 F.3d 987 (9th Cir. 1999) ...........................................................................20

*United States v. Webb*,
655 F.2d 977 (9th Cir. 1981) ...........................................................................28

*Volk v. D.A. Davidson & Co.*,
816 F.2d 1406 (9th Cir. 1987) .........................................................................15

*Von Saher v. Norton Simon Museum of Art*,
592 F.3d 954 (9th Cir. 2010) ...........................................................................16

## STATE CASES

*Davis v. Kahn*
(1970) 7 Cal. App. 3d 868 ...............................................................................24

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Douglas v. Superior Court*
(1989) 215 Cal.App.3d 155 ................................................................. 26

*Greenfield v. Insurance Inc.*
(1971) 19 Cal. App. 3d 803 ................................................................. 24

*Greenspan v. LADT, LLC*
(2010) 191 Cal. App. 4th 486 .............................................................. 18

*LiMandri v. Judkins*
(1997) 52 Cal. App. 4th 326 ................................................................ 23

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) .............................................................. 27

*People v. McKale*
(1979) 25 Cal. 3d 626 ......................................................................... 27

*Samura v. Kaiser Found. Health Plan*
(1993) 17 Cal. App. 4th 1284 .............................................................. 27

*St. James Armenian Church of L.A. v. Kurkjian*
(1975) 47 Cal. App. 3d 547 ................................................................. 24

*Weiss v.Marcus*
(1975) 51 Cal.App.3d 590 ................................................................... 26

### <u>FEDERAL STATUTES</u>

18 U.S.C. § 669 ................................................................................... 21

18 U.S.C. § 1001 ................................................................................. 21

18 U.S.C. § 1341 ................................................................................. 21

18 U.S.C. § 1343 ................................................................................. 21

18 U.S.C. § 1347 ................................................................................. 21

18 U.S.C. § 1961(1) ............................................................................ 21

18 U.S.C. § 1961(4) ............................................................................ 21

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

18 U.S.C. § 1961(5) ................................................................................21

18 U.S.C. § 1962(c) ...............................................................................20

### <u>STATE STATUTES</u>

California Civil Code § 1689(b)(1) ..........................................................27

California Civil Code § 3399 ...................................................................27

California Code of Civil Procedure § 1060 ............................................27

### <u>RULES</u>

F.R.C.P. Rule 9(b) ............................................................... 14, 15, 24, 25

F.R.C.P. Rule 12(b)(6) ............................................................... 14, 16

F.R.C.P. Rule 15 ...................................................................................28

F.R.C.P. Rule 26 ...................................................................................29

F.R.C.P. Rule 42 ...................................................................................28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-8181

## I.    <u>INTRODUCTION</u>

Plaintiff Borrego Community Health Foundation ("Borrego Health") is a California 501(c)(3) nonprofit public benefit corporation operating a Federally Qualified Health Center. Borrego Health operates over 20 clinics throughout Southern California to provide healthcare services to underserved communities. Certain individuals and entities, both inside and outside the Borrego Health organization, instituted various schemes to funnel money from Borrego Health—and its mission to serve the community—to themselves. One of those schemes involved entering Borrego Health into three real property leases that called for rent that was tens of millions of dollars above market value, had 30 year terms and did not allow Borrego Health to terminate the leases. Defendants Inland Valley Investments, LLC, Promenade Square, LLC, and DRP Holdings, LLC (collectively the "Priest LLCs") are companies engaged in the business of commercial real estate. Beginning in 2012, the Defendants, through their manager Daryl Priest and his employee Travis Lyon, entered into three separate leases with Borrego Health's former CEO, Bruce Hebets (the "Priest Leases"). The Priest Leases required Borrego Health to abide by unconscionable terms – terms which never received approval from Borrego Health's full Board. In fact, the Priest LLCs worked hand-in-hand with several insiders at Borrego Health to ensure the Priest Leases, and other self-dealing schemes, went undetected by Borrego Health's full Board.

In October 2020, Borrego Health was subject to investigation by both state and federal agencies, at which point Borrego Health became aware of the Priest Leases. Once the leases—and the onerous terms—were discovered, this action followed. This action brings claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as state law claims for fraud and contractual rescission and reformation.

Defendants now seek dismissal of the complaint on the grounds Borrego Health's claims are untimely and fail to state a claim. As outlined below,

Defendants' Motion to Dismiss must be denied, as Borrego Health sufficiently and timely pleads its claims against the Priest LLCs.

## II.   <u>PROCEDURAL HISTORY</u>

On June 4, 2021, Borrego Health filed its original Complaint the above-captioned matter in San Diego Superior Court, case no. 37-2021-00024676-CU-FR-CTL. Borrego Health's original complaint in state court included claims for: (1) fraud, (2) reformation, (3) rescission, (4) money had and received, (5) unfair business practices, (6) declaratory relief, (7) interpleader, and (8) injunction. A few days later, on June 7, 2021, Borrego Health filed its First Amended Complaint which made minor corrections to the original pleading.

On July 13, 2021, Borrego Health entered into a joint stipulation with defendants, allowing Borrego Health to file a Second Amended Complaint. Shortly after, on July 30, 2021, Borrego Health filed its Second Amended Complaint which added a claim for violations under RICO against defendants Inland Valley Investments, LLC, Promenade Square, LLC, and DRP Holdings, LLC (the "Priest LLCs"). On or about August 6, 2021, the Priest LLCs filed a Notice of Removal to Federal Court. (Dkt. No. 1.) The matter was subsequently removed to the United States District Court, Southern District of California, and assigned to the Honorable M. James Lorenz. On or about August 20, 2021, the Priest LLCs filed a motion to dismiss Borrego Health's Second Amended Complaint for failure to state a claim. (Dkt. No. 6.)

On March 7, 2022, Judge Lorenz issued an Order granting the Priest LLC's motion to dismiss with leave to amend Borrego Health's RICO claim ("SAC Order"). (Dkt. No. 15.) The Second Amended Complaint was the first complaint in which this Court evaluated the adequacy of Borrego Health's RICO allegations, and the Court did not make any determination regarding the sufficiency of Borrego Health's state law claims. (*Id.*)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

7342453.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

On March 22, 2022, Borrego Health filed its Third Amended Complaint pursuant to the Court's March 7, 2022 Order. (Dkt. No. 16.) On April 5, 2022, the Priest LLCs filed a Motion to Dismiss Borrego Health's Third Amended Complaint. (Dkt. No. 19.) After the briefing had been completed, this action was transferred from Judge Lorenz to the Honorable Anthony J. Battaglia on August 2, 2022. (Dkt. No. 25.) On November 21, 2022, the Court issued an Order indicating it was taking the Priest LLC's Motion to Dismiss Borrego Health's Third Amended Complaint under submission. (Dkt. No. 31.)

On March 13, 2023, Judge Battaglia issued an Order granting the Priest LLC's motion to dismiss with leave to amend Borrego Health's RICO claim ("TAC Order"). (Dkt. No. 47.) In its Order, the Court indicated that Borrego needed to amend its complaint to include additional detail to fulfill the 9(b) particularity standard for the RICO claim, as well as to provide clarity on the defendants' conduct. (*Id.*) As in the SAC Order, the Court did not make any determination regarding the sufficiency of Borrego Health's state law claims. (*Id.*)

Consistent with the TAC Order, Borrego Health filed its Fourth Amended Complaint on April 3, 2023. (Dkt. No. 51.) Borrego Health's Fourth Amended Complaint added extensive detail to the actions of defendants' ownership and agents, both as it relates to the lease agreements between the parties, but also in terms of defendants' other acts of misconduct to demonstrate a clear pattern of racketeering activity. (*See* Dkt. No. 51.)

## III.   STATEMENT OF FACTS

Plaintiff Borrego Health is a California 501(c)(3) nonprofit public benefit corporation operating a Federally Qualified Health Center ("FQHC"). (Fourth Amended Complaint ("FAC") ¶ 1.) Borrego Health provides primary and related healthcare services to historically underserved areas of San Diego, Riverside, and—until recently—San Bernadino counties. (*Id.* ¶ 1.)

The crux of this action stems from Defendants, Inland Valley Investments, LLC ("Inland Valley"), DRP Holdings, LLC ("DRP"), and Promenade Square, LLC ("Promenade") (the "Priest LLCs"), misrepresenting the appropriate value of several leases, and working with insiders at Borrego Health to obtain, and then conceal, the above-fair market leases. (*See i.e.* FAC ¶¶ 192-193.) The actions taken by the Priest LLCs constitute one scheme that demonstrates Daryl Priest's and his agents' larger efforts to improperly funnel funds from Borrego Health. (*See i.e.* FAC ¶¶ 192-193.)

As alleged in the FAC, Inland Valley, DRP, and Promenade are all California LLCs involved in the commercial real estate business. (*See i.e.* FAC ¶¶ 28-30.) Daryl Priest is the sole member and manager of all three defendants in this action. (FAC ¶¶ 28-30.) Travis Lyon, as President of Real Estate Operations at Priest Development Corporation, coordinated leasing efforts between Borrego Health and the Priest LLCs. (FAC ¶¶ 27, 30, 193-194.) Daryl Priest also acts as the sole owner of Premier Healthcare Management, of which Travis Lyon is the President and COO. (FAC ¶¶ 25, 27.)

Despite providing widespread healthcare services across Southern California, Borrego Health only owns two of its facilities. (FAC ¶¶ 1, 190.) As such, Borrego Health was required to procure real property for its remaining services. (FAC ¶ 190.) In order to properly approve a lease agreement with Borrego Health, any leases needed to be submitted to Borrego Health's full Board of Trustees for approval. (FAC ¶ 190.) To be approved, Borrego Health's facility leases must be: (1) entered into for a lawful purpose; (2) sought competitively, and subjected to a diligent market value analysis; and (3) to the extent reasonably possible, for no more than fair market rent and reasonable duration. (*Id.*) The leases must also include reasonable terms under which Borrego Health can terminate the lease. (*Id.*)

The Priest Leases violated these core requirements. Specifically, the Priest Leases were grossly over fair market by approximately $100 million, each extending

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1   for a 30-year period, and none were ever presented to Borrego Health's full Board

2   of Trustees for approval. (FAC ¶ 191.)

3   On or about September 21, 2012, Borrego Health's former CEO, CLO, and

4   CFO entered into a lease with defendant Promenade Square LLC (the "Promenade

5   Lease"). (FAC, Ex. A, Section 1.1.) The Promenade Lease indicates that every five

6   years the per annum payable would increase, with a lease term of 30 years. (FAC,

7   Ex. A, Sections 1.5-1.7.) The basic terms of the lease fail to offer Borrego Health a

8   reasonable termination provision, and indeed require Borrego Health to continue to

9   make 30 years' worth of monthly rent payments regardless of how or when the lease

10  is terminated. (FAC, Ex. A Section 9.8.)

11  After the Promenade Lease went undetected, Daryl Priest and Travis Lyon

12  then worked alongside the Borrego Insiders (as defined in the FAC) to further

13  funnel funds away from Borrego Health. Indeed, by 2015, Borrego Health's former

14  CEO, Bruce Hebets, intended to have Daryl Priest and Travis Lyon take over

15  Borrego Health's Management Services Organization ("MSO"), despite not having

16  any prior experience in healthcare. (FAC ¶¶ 25, 80.) However, this proposal was

17  denied by the full Borrego Health Board of Directors (this was the only time any

18  Priest-related proposal was brought to the full Board). (FAC ¶¶ 66-73.) At the same

19  time the MSO discussions were ongoing, Defendant DRP entered into a lease

20  agreement without full Board approval, which DPR assigned to defendant Inland

21  Valley on August 29, 2017 (the "Inland Valley Lease"). (FAC ¶¶ 30, 200, Ex. B.)

22  Despite denial of their MSO involvement, Daryl Priest and Travis Lyon

23  worked tirelessly alongside the Borrego Insiders to integrate themselves into

24  Borrego Health's inner workings to impact decision making. (FAC ¶ 80.) Daryl

25  Priest and Travis Lyon then used that influence to their advantage to enter into a

26  Dental Management Services Agreement ("Dental MSA") with Borrego Health on

27  March 1, 2016, removing internal Borrego Health employees from overseeing

28  Borrego Health's contract dental program. (FAC ¶ 76.) Once the MSA was signed,

1   Daryl Priest and Travis Lyon worked with the Borrego Insiders to approve two

2   amendments to the Dental MSA which funneled additional funds to Priest-owned

3   entities for no additional consideration. (FAC ¶¶ 83-86.)

4          Specifically, Travis Lyon began exerting influence over Borrego Health's

5   billing and accounting departments alongside Borrego Insider Diana Thompson,

6   Borrego Health's former Chief Financial Officer. (*See i.e.* FAC ¶¶ 105, 126.) These

7   efforts allowed the Priest LLCs to continue to control who at Borrego Health had

8   access to relevant financial information in ongoing efforts to conceal their misdeeds.

9   (*See i.e.* FAC ¶¶ 78-79, 105, 126.)

10          Once involvement in Borrego Health's financing and contracting were

11   secured, on or about October 1, 2016, defendant DRP then entered into another lease

12   agreement (the "DRP Lease") with Borrego Health. Both the Inland Valley Lease

13   and the DRP Lease included similarly disadvantageous terms to the Promenade

14   Lease and required rent payments millions of dollars above fair market rates. (FAC

15   ¶¶ 191-199, Ex. C.)

16          The Priest LLCs, by and through their owner Daryl Priest, employees and

17   agents such as Travis Lyon, have an obligation to perform their own due diligence

18   regarding their lessees. (FAC ¶ 194.) Daryl Priest and Travis Lyon were aware of

19   the fair market rent and fair market lease terms for their properties. (*Id.*) Daryl Priest

20   and Travis Lyon then proceeded to offer Borrego Health unconscionable terms,

21   solely working with individuals in the organization who also sought to conceal their

22   own self-dealing. (*See i.e.* FAC ¶¶ 194-203.) Such unconscionable terms include

23   rent payments of over $40,000 per month over fair market value for the Promenade

24   Lease, over $39,000 per month over fair market rent for the DRP Lease, and over

25   $80,000 per month over fair market rent for the Inland Valley Lease. (FAC ¶ 198.)

26   The Priest LLCs further excluded terms allowing Borrego Health to terminate the

27   leases on reasonable notice. (FAC ¶¶ 194, 197.)

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

The Priest Leases were never presented to the full Borrego Health Board for approval, and the Borrego Insiders did not include pertinent information regarding the leases in the financial reports submitted to the full Board in order to keep the unconscionable terms concealed. (FAC ¶¶ 200-201, 414-419.) The Borrego Insiders knew that the full Board would only review contracts presented to them, and would not have seen the Inland Valley Lease, the DRP Lease or the Promenade Lease unless one of the Borrego Insiders or the Priest LLCs decided to present the leases to the Board for review. (FAC ¶ 201.) The Borrego Insiders then went on to provide financial reports to the Board which merely showed the aggregate rents paid to all facilities to further conceal the above-market payments being made to the Priest LLCs. (FAC ¶ 200.) Indeed, due to the successful concealment efforts of the Borrego Insiders and the Priest LLCs, it was not until October 2020 when these leases came to the attention of Borrego Health following raids conducted by state and federal law enforcement agencies. (FAC ¶¶ 204, 208, 420.)

As a result of the Defendants' conduct, alongside the conduct of the Borrego Insiders, Borrego Health was exposed to state suspensions from government healthcare programs, led to inadvertently inflate its mandatory cost reports to the Center for Medicare & Medicare Services and placed Borrego Health at risk of tax liability and loss of their non-profit status. (FAC ¶ 203.) Indeed, as a result of each of the Defendants' conduct, Borrego Health was placed in a position where it ultimately filed for Chapter 11 Bankruptcy. (FAC ¶¶ 354-359.)

The Priest LLCs, Daryl Priest, Travis Lyon, and several other of Daryl Priest's business ventures (i.e. Premier Healthcare Management, Inc. and Summit Healthcare Management, Inc.) operated as the alter-egos and/or agents of one another. (FAC ¶ 40.) Daryl Priest acts as the sole manager, the applicable agent for service of process, and the Chief Executive Officer of Inland Valley, DRP, and Promenade. (FAC ¶ 41.) The Priest LLCs all have the same principle address, which is also the same principle address as Daryl Priest's other entities, Premier Healthcare

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1  Management, Inc. and Summit Healthcare Management, Inc. (FAC ¶ 41.) Travis

2  Lyon acted as both President of Priest Development Corporation and Chief

3  Executive Officer of healthcare management company Premier Healthcare

4  Management, Inc. (FAC ¶¶ 27, 30.) Whether through real estate or healthcare, Daryl

5  Priest, by and through his agents and employees, acted to misappropriate funds from

6  Borrego Health into his own pocket through the Priest LLCs and other Priest-owned

7  entities.

8       Indeed, the intention of the Defendants and related individuals and entities

9  was laid bare in a sham transaction between Priest-owed Premier and an entity

10  owned by Bruce and Karen Hebets (Borrego Health's former CEO and Vice

11  President of Business Services). (FAC ¶¶ 319-335.) In that sham transaction,

12  Premier promised to pay the Hebets-owed entity $2 million for worthless

13  "consulting services." (*Id.*) This is only an example of the quid pro quo for the

14  above-market leases that are the subject of this action, and indeed, Borrego Health

15  believes that more examples such as this will be found via discovery.

16       As outlined herein and in Borrego Health's FAC, Borrego Health sufficiently

17  pleads its claims against the Priest LLCs.

18  **IV.**  **APPLICABLE LAW**

19       In considering a F.R.C.P. Rule 12(b)(6) motion to dismiss, the Court must

20  "accept all factual allegations in the complaint as true and construe the pleadings in

21  the light most favorable to the nonmoving party." *Outdoor Media Grp. v. City of*

22  *Beaumont,* 506 F.3d 895, 899 (9th Cir. 2007). A cause of action is sufficiently pled

23  so long as it gives a defendant "fair notice of what the…claim is and the grounds

24  upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007).

25  A plaintiff need only plead factual allegations, which when taken as true, "plausibly

26  suggest an entitlement to relief." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

27       Regarding claims based in fraud, under F.R.C.P. Rule 9(b), the particularity

28  standard merely requires that a plaintiff "identif[y] the circumstances constituting

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1  fraud so that the defendant can prepare an adequate answer from the allegations."

2  *Odom v. Microsoft Corp.,* 486 F.3d 541, 555 (9th Cir. 2007). Rule 9(b) is designed

3  to ensure that factual allegations are "specific enough to give defendants notice of

4  the particular misconduct which is alleged to constitute the fraud charged so that

5  they can defend against the charge and not just deny that they have done anything

6  wrong." *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting

7  *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993)).

8  Motions to dismiss are "viewed with disfavor and [are] rarely granted."

9  *Gilligan v. Jamco Develop. Corp*., 108 F.3d 246, 249 (9th Cir. 1997). "A complaint

10  should not be dismissed for failure to state a claim unless it appears beyond a doubt

11  that the plaintiff can prove no set of facts in support of his claim which would entitle

12  him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). This reluctance to

13  dismiss a plaintiff's cause of action arises from the fact that "[t]he [Federal Rules of

14  Civil Procedure] are designed to ensure that suits are adjudged on their merits, and

15  to prevent dismissal of actions because of a technical defect in the pleadings."

16  *Clement v. Am. Greetings Corp.,* 636 F. Supp. 1326, 1329 (S.D. Cal. 1986).

17  **V.    BORREGO HEALTH'S CLAIMS ARE SUFFICIENTLY PLED**

18  **A.    BORREGO HEALTH'S RICO CLAIM IS TIMELY**

19  RICO actions have a four-year statute of limitations. *Agency Holding Corp. v.*

20  *Malley–Duff & Associates, Inc.,* 483 U.S. 143, 156 (1987). For fraud based claims,

21  as is Borrego Health's RICO action, the statute of limitations period does not begin

22  to accrue until the "defrauded individual has actual or inquiry notice that a

23  fraudulent misrepresentation has been made." *Volk v. D.A. Davidson & Co.*, 816

24  F.2d 1406, 1412 (9th Cir. 1987). As outlined above and in the Court's TAC Order,

25  Borrego Health sufficiently alleges that it was not on constructive or actual notice of

26  the injury until October 2020 due to defendants and Borrego Insiders concealment

27  efforts. (*See* 3AC; *see also i.e.* FAC ¶¶ 78-79, 105, 126, 200-201, 414-419.)

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1   As outlined in Judge Battaglia's TAC Order, a suit can be dismissed under

2   Rule 12(b)(6) on the statute of limitations grounds "only when the running of the

3   statute is apparent on the face of the complaint." *Von Saher v. Norton Simon*

4   *Museum of Art,* 592 F.3d 954, 969 (9th Cir. 2010). Dismissal on this basis "can be

5   granted only if the assertions of the complaint, read with the required liberality,

6   would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean*

7   *Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980). In reviewing the Third Amended

8   Complaint, Judge Battaglia determined that the allegations in the pleading were

9   sufficient to demonstrate that Borrego Health's RICO claim pursues a theory that is

10  not time barred. (*See* TAC Order, p. 6 ["A complaint cannot be dismissed unless it

11  appears beyond doubt that the plaintiff can prove no set of facts that would establish

12  the timeliness of the claim." (internal citations omitted)].)

13      Specifically, Judge Battaglia highlighted that Borrego Health's Third

14  Amended Complaint included allegations that Borrego Health's former CEO, Bruce

15  Hebets, signed the Promenade Lease, DRP Lease and Inland Valley Lease outside of

16  the normal procedures and they "were never presented to the BCHF Board for

17  authorization or approval." (TAC Order, p. 5-6.) Judge Battaglia went on to indicate

18  that the Third Amended Complaint alleged that both Bruce Hebets and his successor

19  Mikia Wallis knew that BCHF's Board "would review only those contracts

20  presented to them" and would not have reason to see the Priest Leases unless the

21  board executive managing the relationship with the property company decided to

22  present them. (*Id.*) In his order, Judge Battaglia also noted the allegations in the

23  Third Amended Complaint mentioned that the amounts paid every month for each

24  of the leases were not separately reported to the Board, and that, because Bruce

25  Hebets and Mikia Wallis concealed the over-market leases from Borrego Health's

26  full Board, that the injury resulting therefrom did not come to light until the

27  government investigation in October 2020. (*Id.*)

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1   Despite the fact that the same arguments were already rejected by the Court,

2   Defendants again assert that the RICO claim is barred by the statute of limitations.

3   However, the FAC includes these same allegations as the TAC, which (as set forth

4   above) were already found to be sufficient to assert a timely claim against the Priest

5   LLCs. To wit, the FAC states that Borrego Health's former CEO, Bruce Hebets

6   signed the Inland Valley Lease, the DRP Lease and the Promenade Lease without

7   ever presenting the leases to Borrego Health's Board for authorization or approval,

8   without disclosing any of the terms to the Board, and without providing the Board

9   with any due diligence regarding fair market rent. (FAC ¶¶ 414-415.) The Borrego

10  Insiders then suppressed the disclosure of the lease terms to the Board. (FAC ¶¶

11  414, 418-419.) Specifically, the Borrego Insiders knew that the full Board would

12  only review contracts presented to them, and would not have seen the Inland Valley

13  Lease, the DRP Lease and the Promenade Lease unless one of the Borrego Insiders

14  or the Priest LLCs decided to present the leases to the Board for review. (FAC ¶

15  201.) The Borrego Insiders went on to provide financial reports to the Board which

16  merely showed the aggregate rents paid to all facilities to further conceal the above-

17  market payments being made to the Priest LLCs. (FAC ¶ 200.)

18  As the allegations mirror those in the Third Amended Complaint, this Court

19  should again reject the Priest LLC's statute of limitations argument, as the FAC

20  alleges that Borrego Health did not become aware of the unconscionable lease terms

21  until October 2020. (FAC ¶¶ 204, 208, 420.)

22  **B.   BORREGO HEALTH'S RICO CLAIM IS SUFFICIENTLY**

23  **PLED**

24  To assert a claim under the RICO statute, a plaintiff must allege that there

25  was: (1) conduct, (2) of an enterprise, (3) through a pattern of racketeering activity

26  (known as "predicate acts"), (4) causing injury to the plaintiff's "business or

27  property" by the conduct constituting the violation. *See Living Designs, Inc. v. E.I.*

28  *Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *Odom v. Microsoft*

*Corp.,* 486 F.3d 541, 547 (9th Cir. 2007). Borrego Health's FAC sufficiently alleges each element against the Defendants.

> 1. Borrego Health Sufficiently Pleads It's RICO Claim Against All Defendants

In an effort to avoid liability, the Priest LLC's argue that Borrego Health improperly lumps all entities together and fails to sufficiently plead alter-ego. (MTD, 10:11-11:11.) However, Borrego Health alleges that each of the Priest LLCs have engaged in conduct through their agents, employees and management and that each of the Defendants are the alter-egos of one another. (FAC ¶ 40.) To demonstrate an alter-ego theory of liability, there must be a showing that there is a (1) unity of interest and ownership and that (2) honoring corporate separateness would result in fraud or injustice. *See Seymour v. Hull & Moreland Eng'g.*, 605 F.2d 1105, 1111 (9th Cir. 1979). In evaluating alter-ego, Courts consider, among other factors, whether the entities use the same offices and employees, have identical directors and officers, and merely act as conduits for each other in their business operations. *The Wimbledon Fund, SPC (Class TT) v. Graybox , LLC*, No. 215CV06633, 2016 WL 7444701, at *4 (C.D. Cal. June 13, 2016). Of importance, whether or not alter-ego liability can be established is generally a question of fact, and as such, is not appropriately addressed at the motion to dismiss stage. *Id.* (denying defendants motion to dismiss plaintiff's alter-ego complaint); *see also Greenspan v. LADT, LLC* (2010) 191 Cal. App. 4th 486, 512.

Alternatively to alter-ego liability, Borrego Health also asserts that the Defendants and Premier parties are each the agents of one another. The existence and scope of an agency relationship is also a question of fact. *Clarendon Nat. Ins. Co. v. Insurance Co. of the West* 442 F. Supp. 2d 914 (E.D. Cal. 2006).

Although a factual analysis will ultimately be required at trial, the necessary elements have been alleged. Daryl Priest acts as the sole manager, the applicable agent for service of process, and the Chief Executive Officer of Inland Valley, DRP,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

and Promenade. (FAC ¶ 41.) The Priest LLCs all have the same principle address, which is also the same principle address as Daryl Priest's other entities, Premier Healthcare Management, Inc. and Summit Healthcare Management, Inc. (FAC ¶ 41.) Travis Lyon acted as both President of Priest Development Corporation and CEO of healthcare management company Premier. (FAC ¶¶ 27, 30.) Whether through real estate or healthcare, Daryl Priest, by and through his agents and employees, including Travis Lyon, engaged in various schemes to misappropriate millions of dollars from Borrego Health into his own pocket through the Priest LLCs and other Priest-owned entities, including through the above fair market Priest Leases and the Dental MSA. (*See i.e.* FAC ¶¶ 191-199, 83-86.)

As such, Borrego Health seeks multiple plausible theories which permit recovery under the RICO statute and its state law claims.

> ### 2. Borrego Health Sufficiently Pleads the Conduct Element of its RICO Claim

To sufficiently plead the "conduct" element of a RICO claim, a plaintiff need only allege facts that the defendant had "some part in directing [the enterprise's] affairs." *LD v. United Behav. Health,* 508 F. Supp. 3d 583, 603 (N.D. Cal. 2020).

In their Motion to Dismiss, the Priest LLC's assert that the FAC fails to allege that the Priest LLCs actively concealed the leases and that the Priest LLCs did not manage or operate Borrego Health, and as such, the conduct element is not met. (MTD, 12:17-13:3.) However, "the operation or management test does not limit RICO liability only to those actors who are in charge of the enterprise or who have significant control over or within [the] enterprise. It is not necessary to be upper management in the enterprise to be liable." *In re Outlaw Lab'y*, No. 18-CV-840 2020 WL 5552558 * 8 (S.D. Cal. September 16, 2020). Rather, the operation or management threshold requires courts to look at various considerations, including, "whether the defendant occupied a position in the chain of command through which the affairs of the enterprise are conducted, whether the defendant knowingly

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1   implemented the decisions of upper management, and whether the defendant's

2   participation was vital to the mission's success." *In re Outlaw Lab'y*, 2020 WL

3   5552558, at *8 (internal citations omitted); *see also Ketayi v. Health Enrollment

4   Grp.*, No. 20-CV-1198, 2021 WL 2864481, at *12 (S.D. Cal. July 8, 2021) ("In the

5   Ninth Circuit, to assess whether a defendant had a sufficient role in operation or

6   management to meet the standard of § 1962(c) [and *Reves*], courts consider whether

7   the defendant (1) gave or took directions; (2) occupied a position in the 'chain of

8   command' through which the affairs of the enterprise are conducted; (3) knowingly

9   implemented decisions of upper management; **or** (4) was indispensable to

10  achievement of the enterprise's goal in that the defendant's position is 'vital' to the

11  mission's success." (Emphasis added).

12      Here, the FAC alleges that the Priest LLCs both gave directions to and took

13  directions from the Borrego Insiders with respect to the Inland Valley Lease, DRP

14  Lease, and Promenade Lease. (FAC ¶¶ 30, 76, 80, 83-86, 105, 126, 191-200, 414-

15  419.) Daryl Priest and Travis Lyon, on behalf of the Priest LLCs and other Priest-

16  owned entities, infiltrated the billing and finance department at Borrego Health to

17  dictate what information was shared regarding the money paid to Priest entities. (*See

18  i.e.* FAC ¶¶ 78-79, 105, 126.) The Priest LLCs also occupied a position in the chain

19  of command, as the Priest LLCs worked hand-in-hand with the Borrego Insiders to

20  funnel money outside of Borrego Health through multiple companies, of which none

21  of the relationships were approved by the full Board. (FAC ¶¶ 30, 76, 80, 83-86,

22  105, 126, 191-200, 414-419.)

23      Further, it is reasonable to infer that the Priest LLCs, as experienced

24  commercial real estate companies, would have been aware not only of the fair

25  market rent of the agreements, but that the financial information within the leases

26  was never disclosed to the full Board, as they were integrated with the Borrego

27  Insiders and Borrego Health's finance department. *TwoRivers v. Lewis,* 174 F.3d

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

987, 991 (9th Cir. 1999) (outlining that in reviewing a motion to dismiss, all reasonable inferences must be drawn in favor of the plaintiff).

As such, Borrego Health has sufficiently pled the conduct element of its RICO claim against each of the Priest LLCs.

### 3. Borrego Health Sufficiently Pleads the Enterprise Element of its RICO Claim

Under the RICO statute, an "enterprise" includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact..." (18 U.S.C. § 1961(4).) Here, Borrego Health, as a non-profit corporation, is the enterprise. (FAC ¶ 367, 372.) As alleged in the FAC, there were both "insiders" to this enterprise (i.e. Borrego Insiders) as well as "outsiders" to the enterprise (i.e. the Priest LLCs, Daryl Priest, Travis Lyon and other Priest-owned entities) (FAC ¶¶ 367, 370-372.) As such, this element is sufficiently pled.

### 4. Borrego Health Sufficiently Pleads a Pattern of Racketeering Activity

Under the RICO statute, a "pattern of racketeering activity" merely requires "two acts of racketeering activity." (18 U.S.C. § 1961(5).) "Racketeering activity" is defined to include, but is not limited to: (1) mail fraud (18 U.S.C. § 1341); (2) wire fraud (18 U.S.C. § 1343); (3) theft or embezzlement in connection with health care (18 U.S.C. § 669); (4) health care fraud (18 U.S.C. § 1347); (5) false statements or entries generally (18 U.S.C. § 1001). (18 U.S.C. § 1961(1).)

The FAC alleges various schemes and conduct committed by the Priest LLCs which meets the definition of "racketeering activity." Pertaining to the Priest LLCs, each of them provided above fair market rental terms to Bruce Hebets, which were signed without the Board's knowledge, and without a meaningful way to terminate the leases. (FAC ¶¶ 190-203.) Daryl Priest and Travis Lyon, as agents of the Priest LLC's then worked with the Borrego Insiders to infiltrate Borrego Health's finance and contracting departments to ensure concealment of their misdeeds. (FAC ¶¶ 78-

79, 105, 126.) Each financial report to the Board which failed to raise the terms of the three leases, and each monthly rent payment to each of the Priest LLCs constitutes a pattern of racketeering activity. (FAC ¶¶ 200, 388.)

The specific allegations, as provided in further detail in the Statement of Facts (Section III), constitute embezzlement, theft, and improper retention of healthcare funds. (*See* FAC ¶¶ 416-422.) Further, the improper rent payments and acceptance of such payments could not have been accomplished without use of mail service and wire transfer of funds. (*See* FAC ¶¶ 200, 380-386.) As Borrego Health has alleged more than two instances of conduct performed by the Priest LLCs which constitutes a "racketeering activity," both elements are met.

### 5.  Borrego Health Sufficiently Pleads the Injury Element of its RICO Claim

To assert a RICO claim, Borrego Health must assert that it suffered injury to its "business or property" via the conduct that constitutes a racketeering activity. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353, 361 (9th Cir. 2005). While not an exhaustive list of injuries, as a result of the Priest LLC leases and the Priest LLC's conduct, Borrego Health has been damaged in over $58 million by paying over fair market rental payments, Borrego Health became subject to state and federal government investigations which resulted in the imposition of a monitor, and Borrego Health ultimately was forced to declare bankruptcy due to a lack of liquidity which would otherwise have been available. (FAC ¶¶ 198-199, 354-258.)

As outlined above, all elements of the RICO claim have been sufficiently pled to "identif[y] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.,* 486 F.3d 541, 555 (9th Cir. 2007). Further, in the Court's Order, Judge Battaglia specifically indicated that to remedy its Third Amended Complaint, that Borrego Health need to: (1) provide additional detail regarding the conduct element of its RICO claim to demonstrate that the Defendants were involved in Borrego Health management and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

operations; and (2) clarify the conduct by each defendant, or provide greater detail regarding alter ego/agency. As outlined above, the FAC directly addresses both aspects of this Court's prior order.[1]

### C.   **BORREGO HEALTH'S STATE LAW CLAIMS ARE SUFFICIENTLY PLED**

1.   Borrego Health's State Law Claims Are Timely

On the same grounds as outlined above regarding the timeliness of Borrego Health's RICO claim, the state law claims alleged in the FAC are also not time barred. Borrego Health pursues state law claims for: (1) fraud, (2) imposition of a constructive trust, (3) reformation, (4) rescission, (5) money had and received, (6) violations of the UCL, and (7) declaratory relief. These claims stem from the same conduct as the RICO claim, specifically, that the Priest LLCs and the Borrego Insiders worked to conceal the leases and lease terms from Borrego Health's full Board. (FAC ¶¶ 194-203, 78-79, 105, 126.) Defendants attempt to assert that Borrego Health was placed on notice due to the Borrego Insiders' purported knowledge. However, the Borrego Insiders did not provide any of the information related to the leases to the full Board. (FAC ¶¶ 191, 200-201.) Instead, the Borrego Insiders are just that – insiders who concealed information from the full Board in breach of their fiduciary duties. Thus, Defendants' reliance on their knowledge is misplaced.

The existence of a fiduciary relationship such as any principal-agent relationship gives rise to a duty to disclose material facts. *LiMandri v. Judkins*

---

[1] In Judge Battaglia's TAC Order, the Court indicated that Borrego Health's RICO conspiracy claim was not pled sufficiently due to the underlying RICO claim's deficiencies. In resolving the sufficiency of the pleadings for its RICO claim, Borrego Health also resolves any potential deficiencies in its related conspiracy claim, as it sufficiently alleges that a group of two or more persons agreed to a common plan or design to commit a tortious act and that there were resulting damages. (*See i.e.* FAC ¶¶ 190-208, 412-425.)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

(1997) 52 Cal. App. 4th 326, 336–337; *see also St. James Armenian Church of L.A. v. Kurkjian* (1975) 47 Cal. App. 3d 547, 551. A principal has the right to rely on representations made to it by a fiduciary without any duty of further inquiry. *Davis v. Kahn* (1970) 7 Cal. App. 3d 868, 878; *see Greenfield v. Insurance Inc.* (1971) 19 Cal. App. 3d 803, 811 (insurance agent representing he had obtained coverage that he had not obtained). As such, Borrego Health has the right to rely on the representations of its fiduciaries representations. Here, however, Bruce Hebets, Mikia Wallis and the remaining Borrego Insiders concealed the lease terms from the full Board, then subsequently concealed their failure to follow Borrego Health's ordinary facilities procurement procedure. (FAC ¶ 194, 200, 399.) The insiders' concealment therefore operates to toll the statute until Borrego Health had reason to investigate, which was not until the October 2020 government investigations began. (FAC ¶¶ 204, 208, 399.)

### 2. Borrego Health Sufficiently Pleads Fraud

As a general attack on all of Borrego Health's state law claims, the Priest LLCs assert Borrego Health fails to plead the underlying fraudulent conduct with the specificity required under Rule 9(b). (MTD 21:1-23:28.) While Borrego Health's state law claims are based in the fraudulent conduct of the Priest LLCs, Borrego Health has sufficiently pled the "who, what, when, where and how" required under 9(b).

As alleged in the FAC, this action involves the Priest LLCs misrepresenting the appropriate value of the Priest Leases, and working with insiders at Borrego Health to obtain, and then conceal, the above-fair market leases. (*See i.e.* FAC ¶¶ 192-193.) The actions taken by the Priest LLCs constitute one scheme that demonstrates Daryl Priest and his agents' larger efforts to improperly funnel funds from Borrego Health. (*See i.e.* FAC ¶¶ 192-193.) The sole owner of the Priest LLCs, Daryl Priest, and Travis Lyon, President of Real Estate Operations at Priest

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1  Development Corporation, coordinated the leasing efforts between the Borrego

2  Insiders and the Priest LLCs. (FAC ¶¶ 27, 30, 193-194.)

3  To be approved, Borrego Health's facility leases must be: (1) entered into for

4  a lawful purpose; (2) sought competitively, and subjected to a diligent market value

5  analysis; and (3) to the extent reasonably possible, for no more than fair market rent

6  and reasonable duration. (FAC ¶ 190.) The leases must also include reasonable

7  terms under which Borrego Health can terminate the lease. (*Id.*) The Priest Leases

8  violated these core requirements. Specifically, each of the three leases were grossly

9  over fair market by approximately $100 million, each extending for a 30-year

10  period, none of which were ever presented to Borrego Health's full Board of

11  Trustees for approval. (FAC ¶ 191.) After the Priest Leases were signed, the lease

12  terms were hidden from the full Borrego Health Board by concealing the lease terms

13  and rent payments in aggregate reports. (FAC ¶ 200.) Daryl Priest and Travis Lyon

14  then worked tirelessly alongside the Borrego Insiders to integrate themselves into

15  Borrego Health's inner workings and impact decision making, including within

16  Borrego Health's finance department and contract dental program. (FAC ¶ 76-79,

17  86, 105, 126.) This involvement and impact provided the Priest LLCs the

18  involvement necessary at Borrego Health to ensure the unconscionable leases were

19  able to continue undetected.

20  Moreover, the Priest LLCs, by and through their owner Daryl Priest, and

21  employees and agents such as Travis Lyon, have an obligation to perform their own

22  due diligence regarding their lessees. (FAC ¶ 194.) Daryl Priest and Travis Lyon

23  were aware of the fair market rent and fair market lease terms for their properties.

24  (*Id.*) Daryl Priest and Travis Lyon then proceeded to offer Borrego Health

25  unconscionable terms during three separate lease negotiations and solely worked

26  with individuals in the organization who also sought to conceal their own self-

27  dealing. (*See i.e.* FAC ¶¶ 194-203.)

28

As a result of the Defendants' conduct, alongside the conduct of the Borrego Insiders, Borrego Health was exposed to state suspensions from government healthcare programs, led Borrego Health to inadvertently inflate its mandatory cost reports to the Center for Medicare & Medicare Services and placed Borrego Health at risk of tax liability and loss of their non-profit status. (FAC ¶ 203.) Indeed, as a result of each of the Defendants' conduct, Borrego Health was placed in a position where it ultimately filed for Chapter 11 Bankruptcy. (FAC ¶¶ 354-359.)

As outlined herein and in further detail in Borrego Health's FAC, Borrego Health sufficiently pleads fraud against the Priest LLCs as it alleges the specific individuals involved, the dates and ranges the actions of the Priest LLC's occurred, the nature of their actions, and how they achieved their goals of improperly funneling millions of dollars out of Borrego Health.

a.  Borrego Health's Claims for Imposition of a Constructive Trust, Reformation, Rescission, Money Had and Received, Violations of the UCL, and Declaratory Relief Are Sufficiently Pled

Borrego Health's remaining claims are tied to the Priest LLC's fraudulent conduct, as outlined above. As such, for the same reasons as outlined above, Borrego Health sufficiently pleads its remaining state law claims. Since the arguments regarding these state law claims are largely the same, they are discussed below collectively rather than repeating the same arguments.

Regarding Borrego Health's imposition of a constructive trust, a constructive trust may be imposed when there is a wrongful acquisition or detention of property to which another is entitled. *Weiss v.Marcus* (1975) 51 Cal.App.3d 590, 600; *Douglas v. Superior Court* (1989) 215 Cal.App.3d 155, 160 (cause of action for constructive trust that incorporated allegations of causes of action for fraud, conspiracy, and racketeering was sufficient.)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

1   Reformation is available "[w]hen, through fraud or a mutual mistake of the

2   parties, or a mistake of one party, which the other at the time knew or suspected, a

3   written contract does not truly express the intention of the parties, it may be revised

4   on the application of a party aggrieved, so as to express that intention…" (California

5   Civil Code section 3399.) Similarly, rescission is available under California Civil

6   Code section 1689(b)(1) if consent by the rescinding party "was given by mistake,

7   or obtained through duress, menace, fraud, or undue influence."

8   For money had and received "[a] cause of action [] is stated if it is alleged the

9   defendant is indebted to the plaintiff in a certain sum for money had and received by

10   the defendant for the use of the plaintiff. *Russell v. Micheletti*, No. 18-CV-06691-

11   RS, 2023 WL 2620896, at *7 (N.D. Cal. Mar. 23, 2023), citing to *McBride v.*

12   *Boughton* (2004) 123 Cal. App. 4th 379, 394-95.

13   For violations of the UCL, liability may be imposed for unlawful, unfair or

14   fraudulent business practices. *Samura v. Kaiser Found. Health Plan* (1993) 17 Cal.

15   App. 4th 1284, 1291-92; *see also People v. McKale* (1979) 25 Cal. 3d 626, 632.

16   Last, under California Code of Civil Procedure section 1060, "[a]ny person

17   interested under a written instrument" may bring an action "for a declaration of his

18   or her rights and duties…including a determination of any question of construction

19   or validity arising under the instrument or contract."

20   As outlined above and in Borrego Health's FAC, the Priest LLCs

21   misrepresented fair market value of the leases, entered into the Priest Leases without

22   the leases first receiving Board approval, and alongside the Borrego Insiders

23   concealed the lease terms from the Board. (*See i.e.* FAC ¶¶ 192-193, 200, 413-425.)

24   When the Priest Leases came to light in October 2020, Borrego Health attempted to

25   remedy the unconscionable lease terms, at which point the Priest LLCs collectively

26   demanded rent payments continue and threatened to evict Borrego Health for

27   making such a request. (FAC ¶ 206.)

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

As Borrego Health's Board was never advised of the Priest Leases, and the Priest Leases included payments for millions of dollars in excess of fair market value, it is clear that the true intentions of Borrego Health were not consulted in entering into the Priest Leases. (FAC ¶¶ 200-201.) Indeed, the Priest LLCs obtained these leases by working with bad actors within Borrego Health, and ensured that the lease terms and information pertaining to the fair market value of the leases were concealed. (*See i.e.* FAC ¶¶ 200, 388.) The Priest LLCs have subsequently retained the above-fair market rent payments totaling over $11.5 million. (FAC ¶ 425.)

As such, Borrego health has sufficiently pled its state law claims and requests the Priest LLC's Motion to Dismiss be denied.

## VI.   BORREGO HEALTH'S MOTION TO CONSOLIDATE SHOULD BE CONSIDERED IN CONNECTION WITH THE PENDING MOTION

In issuing the TAC Order, Judge Battaglia indicated that any effort to merge this matter with its related action (*Borrego Community Health Foundation v. Karen Hebets, et al.*, Case No. 3:22-cv-1056-BEN-KSC) should be sought through a Motion to Consolidate under F.R.C.P. Rule 42. (TAC Order, p. 4.) In compliance with the TAC Order, Borrego Health filed and served its Motion to Consolidate the two actions on April 14, 2023. (Dkt. 52.) The Motion to Consolidate is currently set for hearing on May 22, 2023. (Dkt. 52.) Given the overlap in the issues presented in both actions, Borrego Health requests the pending Motion to Consolidate be considered in evaluating the Priest LLC's pending motion to dismiss.

## VII.   LEAVE TO AMEND SHOULD BE GRANTED

Should the Court grant Defendants' Motion to Dismiss, Borrego respectfully requests leave to amend its complaint. Under F.R.C.P. Rule 15, this Court may exercise its sound discretion when granting leave to amend. Indeed, *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981) outlines that the intent of Rule 15 is to grant parties' request for leave to request with "extreme liberality." Absent a sufficient reason, such as undue delay or bad faith, it is considered an abuse of

discretion to deny a party's request to amend. *See Millar v. Bay Area Rapid Transit Dist.* (N.D. Cal. 2002) 236 F. Supp. 2d 1110; *see also, i.e., Julinians Against Shakedown Tactics v. TEJJR,* No. 05CV2353, 2006 WL 5003361, at *4 (S.D. Cal. Aug. 1, 2006) ("…the Ninth Circuit has encouraged district courts to grant leave to amend liberally…"); *L.A. T-Shirt & Print, Inc. v. Primitive Skateboarding, Inc.,* No. 220CV11129, 2021 WL 4694785, at *3 (C.D. Cal. Sept. 9, 2021) ("In keeping with the policy in favor of granting leave to amend liberally, the Court GRANTS [Counterclaimant's] leave to file amended counterclaims to cure the deficiencies outlined in this Order.").

Borrego Health did not include a RICO claim in this action until filing its Second Amended Complaint. In response to both of the Court's orders on the prior motions to dismiss, Borrego Health has incorporated additional allegations to provide further detail regarding its RICO claim to address the conduct prong as it relates to the individual Priest LLCs. New facts and details are being discovered as Borrego Health marshals evidence in preparation for discovery and trial (for instance, the existence of the sham "consulting services" agreement by which a Priest-owned entity paid Borrego Health's former CEO and VP of Business Services $2 million was only recently uncovered). Moreover, Borrego Health has been unable to conduct any discovery in this matter since the Rule 26 conference has not yet taken place.

In addition, to date this Court has not extended jurisdiction over the state law claims pending resolution of the RICO action. Therefore, if the Court rules on those claims, this would be the first instance in which this Court evaluated the sufficiency of Borrego Health's state law claims. As such, to the extent this Court requires further detail for any of its claims, Borrego Health requests the an opportunity to amend its complaint to address any potential deficiencies.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL. (310) 551-8111 • FAX (310) 551-8181

## VIII. __CONCLUSION__

For the above-referenced reasons, Borrego Health respectfully requests that this Court deny Defendants' Motion to Dismiss the FAC.


DATED:  May 1, 2023                    HOOPER, LUNDY & BOOKMAN, P.C.


By: _____
                                       DEVIN M. SENELICK
                                       Attorneys for Plaintiff BORREGO
                                       COMMUNITY HEALTH FOUNDATION

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-8181

7342453.1