**BARNES & THORNBURG LLP**
Eric J. Beste (SBN 226089)
eric.beste@btlaw.com
Andrew Young (SBN 326540)
andrew.young@btlaw.com
Allison Rego (SBN 272840)
arego@btlaw.com
655 West Broadway, Suite 1300
San Diego, CA 92101
(619) 321-5000

Brian Nguyen (SBN 336704)
brian.nguyen@btlaw.com
2029 Century Park East Suite 300
Los Angeles, CA 90067
(310) 284-3880

*Attorneys for Defendants,*
*INLAND VALLEY INVESTMENTS, LLC;*
*DRP HOLDINGS, LLC; and PROMENADE*
*SQUARE, LLC*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BORREGO COMMUNITY HEALTH FOUNDATION, a California non-profit public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>INLAND VALLEY INVESTMENTS, LLC, a California limited liability company; DRP HOLDINGS, LLC, a California limited liability company; PROMENADE SQUARE, LLC, a California limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | **CASE NO. 3:21-CV-01417-BEN-KSC**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' REPLY TO RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT [F.R.C.P § 12(b)(6)]**<br><br>Date:  May 15, 2023<br>Time:  10:30 a.m.<br>Courtroom:  5A<br><br>Hon. Roger T. Benitez |

Defendants INLAND VALLEY INVESTMENTS, LLC; DRP HOLDINGS, LLC; and PROMENADE SQUARE, LLC (collectively, the "Defendants") bring this reply ("Reply") in support of their jointly filed Motion to Dismiss Plaintiff's Fourth Amended Complaint pursuant to Federal Rules of Civil Procedure section 12(b)(6).

## I.   INTRODUCTION

Plaintiff's opposition to Defendants' motion to dismiss (the "Opposition") is notable not for the arguments it makes but for the questions it ignores. Defendants' motion to dismiss the Fourth Amended Complaint (the "Motion") raises the following key questions that Plaintiff fails to answer:

- *How can Borrego Health not be on notice of its injury when seven high-level officers and Board members were aware of and executed the leases that allegedly gave rise to its injury?*

- *What facts in the Fourth Amended Complaint support the claim that Defendants—not the Borrego Insiders—defrauded Borrego Health?*

- *What facts in the Fourth Amended Complaint support the claim that Defendants concealed the leases from Borrego Health?*

- *What facts in the Fourth Amended Complaint support the claim that Defendants "worked together" with the Borrego Insiders to make management and operational decisions at Borrego Health?*

- *What facts in the Fourth Amended Complaint set forth the essential elements of any of the alleged predicate acts?*

Plaintiff likely ignores these questions because the answers reveal the Fourth Amended Complaint's significant deficiencies. Specifically, Borrego Health *was* on notice of its alleged injuries no later than 2016, and, thus, all of Plaintiff's claims are time barred. In addition, the Fourth Amended Complaint *does not* contain facts to support any of the claims listed above, in violation of Rule 9(b)'s pleading standards.

As described below, Plaintiff attempts to distract from these deficiencies by focusing attention on other schemes that Plaintiff raised for the first time in the Fourth

Amended Complaint. This misdirection underscores the principal problem with the Fourth Amended Complaint: Plaintiff mixes a half-baked alter ego theory with irrelevant schemes in an attempt to shore up a RICO claim that has already been dismissed by two judges. Because Plaintiff has not, and cannot, plead sufficient facts to support the RICO claim or state law claims, the Court should dismiss them with prejudice.

## II.   ARGUMENT

### A.   Plaintiff's RICO claim and state law claims are time-barred.

Borrego Health was on notice of the three leases at issue in this matter when they were originally executed in 2012, 2015, and 2016. Because Plaintiff filed its initial complaint nearly five and a half years after the parties executed the last lease, the statute of limitations has run on all of Plaintiff's claims.

In its Opposition, Plaintiff argues that Borrego Health was "not on actual or constructive notice of the injury until October 2020 due to defendants and Borrego Insiders concealment efforts." (Dkt. 56 at 15.) Plaintiff notes that Judge Battaglia previously determined that the allegations in the Third Amended Complaint were sufficient to demonstrate that the RICO claim was not time barred. (*Id*. at 16.) Because the allegations of the Fourth Amended Complaint "mirror those in the Third Amended Complaint," Plaintiff argues, the Court should reject Defendants' argument that the RICO claim is time barred. (*Id*. at 17.)

Plaintiff is incorrect that the allegations in the Fourth Amended Complaint mirror those in the Third Amended Complaint. In the Third Amended Complaint, Plaintiff alleges that only "[Bruce] Hebets and [Mikia] Wallis concealed the over-market leases from the Board." (Dkt. 47 at 6.) In the Fourth Amended Complaint, however, Plaintiff alleges that Hebets, Wallis, Diana Thompson, Harry Isley, Dennis Nourse, Mike Hickock, and Chuck Kimball concealed the leases from the Board. (Dkt. 51 at ¶¶ 14-22, 191, 193.) In analyzing whether Borrego Health was on notice of the alleged injury, the change from two knowledgeable individuals in the Third

Amended Complaint to seven knowledgeable individuals in the Fourth Amended Complaint is significant. Yet Plaintiff's Opposition fails to address Defendants' argument that Borrego Health was on notice of the leases because "Borrego Health's chief executive officer, chief legal officer, chief financial officer, and three members of the Board (including two previous chairs of the Board) were aware of an executed the leases." (Dkt. 53-1 at 15.) Plaintiff's position appears to be that unless every member of the Board knew about the leases, the Board was not on notice of its injury. Such a position, however, flies in the face of cases cited in Defendants' Motion (Dkt. 53-1 at 15)—and ignored by Plaintiff—which establish that "[k]nowledge of an officer of a corporation within the scope of his duties is imputed to the corporation." *United California Bank v. Maltzman*, 44 Cal. App. 3d 41, 51-52 (1974).

In its Opposition, Plaintiff does not dispute that at least seven individuals at Borrego Health were aware of the leases at the time they were executed. These individuals included high-level officers and members of the Board. Rather than explain why that knowledge should not be imputed to Borrego Health, Plaintiff merely falls back on Judge Battaglia's previous finding that the Third Amended Complaint "adequately pled that the statute of limitations did not begin to accrue on its RICO claim until October 2020." (Dkt. 47 at 6.) The Fourth Amended Complaint's addition of five Borrego Health officers and board members who were aware of the leases undercuts that finding. Borrego Health was on notice of its alleged injury no later than 2016, and Plaintiff's RICO claim and state law claims should be dismissed as time barred.

**B.     Plaintiff's RICO claim and state law claims fail to meet Rule 9(b)'s heightened pleading standard.**

All seven of Plaintiff's causes of action sound in fraud and, thus, must satisfy Rule 9(b)'s heightened pleading standards. (*See* Dkt. 53-1 at 9-12, 17-23.) This heightened pleading standard requires Plaintiff to state with particularity "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp.*

*USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003).

Plaintiff summarizes the alleged fraud as follows: "[T]he Priest LLCs misrepresented fair market value of the leases, entered into the Priest Leases without the leases first receiving Board approval, and alongside the Borrego Insiders concealed the lease terms from the Board." (Dkt. 56 at 27.)  In responding to Defendants' assertion that the Fourth Amended Complaint fails to meet Rule 9(b)'s pleading requirements, Plaintiff argues that it "alleges the specific individuals involved, the dates and ranges the actions of the Priest LLC's [sic] occurred, the nature of their actions, and how they achieve their goals." (*Id*. at 26.)

The Fourth Amended Complaint not only fails to meet Rule 9(b)'s heightened pleading standard but barely alleges *any* facts to supports its fraud theory.  First, despite Plaintiff's claim that "the Priest LLCs misrepresented fair market value of the leases," (*id*. at 27), there are no factual allegations in the Fourth Amended Complaint to support that claim.  Variants of the word "misrepresent" are found only twice in the Fourth Amended Complaint, and both instances refer to Hebets making misrepresentations, not Defendants. (*See* Dkt. 51 at ¶¶ 267, 416.)  Second, Plaintiff claims that Defendants "alongside the Borrego Insiders concealed the lease terms from the Board." (*Id*. at 27.)  The Fourth Amended Complaint is loaded with allegations that the Borrego Insiders concealed the leases from the Board (*see* Dkt. 51 at ¶¶ 200-02) but comes up empty with support for Defendants' alleged concealment.  Similarly, the Fourth Amended Complaint fails to allege any facts suggesting that Defendants were even aware of the Borrego Insiders' purported concealment.  Plaintiff's unsupported allegations that Defendants "worked together" or alongside the Borrego Insiders are insufficient.

Because the Fourth Amended Complaint does not provide the specificity required by Rule 9(b) and sets forth nothing "more than labels and conclusions," the RICO claim and state law claims must be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### C. Plaintiff's RICO claim fails to adequately allege that Defendants participated in the operation and management of Borrego Health.

In the Fourth Amended Complaint, Plaintiff fails to support its allegation that Defendants "participated in the operation and the management of" Borrego Health, which is the "enterprise" that Plaintiff alleged as providing a basis for RICO liability.

In its Opposition, Plaintiff claims that the Fourth Amended Complaint alleges that Defendants gave and received directions, infiltrated the billing and finance department at Borrego Health, and occupied a position in the chain of command by working with the Borrego Insiders. (Dkt. 56 at 20.) What Plaintiff *claims* the Fourth Amended Complaint alleges, however, is entirely different from what the Fourth Amended Complaint *actually* alleges. The paragraphs that Plaintiff cites to support each of these propositions either have nothing to do with the Leases Scheme or fail to support the proposition.

First, Plaintiff claims that that "the FAC alleges that [Defendants] both gave direction to and took directions from the Borrego Insiders with respect to the Inland Valley Lease, DRP Lease, and Promenade Lease." (*Id.* at 20.) Plaintiff then cites paragraphs 30, 76, 80, 83-86, 105, 126, 191-200, and 414-419. (*Id.*) As set forth below, none of these paragraphs supports that proposition:

- Paragraph 30 is a description of Defendant Inland Valley Investments and notes that the "Borrego Insiders and Premier Parties decided to have Borrego Health the sign the lease." (Dkt. 51 at 10-11.) This does not amount to giving or taking directions.

- Paragraphs 76, 80, 83-86, 105, and 126 all relate to a separate alleged scheme involving a management services agreement for Borrego Health's contract dental program, which is the subject of a separate case.[1] These paragraphs have nothing to do with the so-called "Leases Scheme."

- Paragraphs 191-200 set forth the alleged Leases Scheme but

---

[1] *See Borrego Community Health Foundation v. Karen Hebets, et al.*, Case No. 22-cv-1056-BEN-KSC.

- contain no allegations that Defendants gave or took directions within the alleged enterprise. The closest Plaintiff comes to making such an allegation is in Paragraph 193, which states, the "Priest LLCs, Daryl Priest . . ., Travis Lyon and the Borrego Insiders worked together to devise a scheme." (*Id*. at 53.) Working together, however, does not amount to giving or taking directions.

- Paragraphs 414-419 make allegations almost exclusively about Hebets. Nothing in these paragraphs supports the claim that Defendants gave or took directions from Borrego Insiders.

Second, Plaintiff claims that "Daryl Priest and Travis Lyon, on behalf of the Priest LLCs and other Priest-owned entities, infiltrated the billing and finance department at Borrego Health to dictate what information was shared regarding the money paid to Priest entities." (Dkt. 56 at 20.) To support this proposition, Plaintiff cites paragraphs 78-79, 105, and 126. Once again, these paragraphs are irrelevant to the alleged Leases Scheme. Instead, they relate to the alleged scheme involving the management services agreement for Borrego Health's contract dental program. *See, e.g.*, Dkt. 51 at ¶ 79 ("What followed was essentially a 'hostile takeover' of contract dental"); ¶ 105 ("Travis Lyon told employees in Borrego Health's finance department that any communication regarding the Dental MSA needed to solely be directed to Travis Lyon"); and ¶ 126 ("Under the Dental MSA, Premier was also responsible for training Dentists on how to properly submit their claims to Premier for payment"). Claiming that the alleged infiltration had anything to do with the Leases Scheme is another example of misdirection.

Finally, Plaintiff claims that Defendants "occupied a position in the chain of command, as [they] worked hand-in-hand with the Borrego Insiders to funnel money outside of Borrego Health through multiple companies." (Dkt. 56 at 20.) Plaintiff then cites the exact same paragraphs previously cited to support the proposition that Defendants gave and took directions. (*Id*. 56 at 20.) As described above, most of these paragraphs (i.e., ¶¶ 76, 80, 83-86, 105, and 126) have nothing to do with the

alleged Leases Scheme. The paragraphs that are relevant to the alleged Leases Scheme (i.e., ¶¶ 191-200, and 414-419), are devoid of any facts that could support the claim that Defendants occupied a position in Borrego Health's chain of command. Perhaps recognizing that there are no such facts, Plaintiff creatively equates occupying a position in the chain of command with working "hand-in-hand with the Borrego Insiders." (*Id*. at 20.)

Plaintiff's reliance on the repeated allegation that Defendants and the Borrego Insiders "worked together" to make management and operational decisions at Borrego Health does not establish that Defendants "conducted or participated in the conduct of the 'enterprise's affairs.'" *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Because Plaintiff does not adequately plead the "conduct" element, its RICO claim should be dismissed.

### D. Plaintiff's RICO claim fails to allege with particularity that each Defendant engaged in a pattern of racketeering activity.

Although Plaintiff purports to base its RICO claim on predicate acts of mail fraud, wire fraud, and money laundering, Plaintiff fails to allege those acts with the particularity required by Rule 9(b). *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 405 (9th Cir. 1991). In its Opposition, Plaintiff argues that as "Borrego Health has alleged more than two instances of conduct performed by the Priest LLCs which constitutes a 'racketeering activity,' both elements are met." (Dkt. 56 at 22.)

Plaintiff's Opposition fails to establish that the Fourth Amended Complaint adequately alleges a pattern of racketeering activity. Plaintiff first claims that the Fourth Amended Complaint "alleges *various schemes* and conduct committed by the Priest LLCs which meets the definition of 'racketeering activity.'" (*Id*. at 21 (emphasis added).) This is simply not true. Despite the addition of over sixty pages to the Fourth Amended Complaint, the only alleged scheme that implicates Defendants is the Leases Scheme. Moreover, as Plaintiff acknowledges in the Fourth

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

7                                    CASE NO. 3:21-CV-01417-BEN KSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY

1  Amended Complaint, the other schemes mentioned are the "subject of ongoing
2  litigation" in a separate case. (Dkt. 51 at 4.)  Plaintiff claims to have included the
3  "larger set of schemes" in the Fourth Amended Complaint because they are "vital to
4  understand" the context of the Leases Scheme.  (*Id*. at 4.)  Context should not be
5  confused for content, however.  The larger set of alleged schemes are not relevant to
6  whether Plaintiff has met its burden to adequately plead a pattern of racketeering
7  activity in the Leases Scheme.

8  Plaintiff claims that "[p]ertaining to the Priest LLCs, each of them provided
9  above fair market rental terms to Bruce Hebets, which were signed without the
10 Board's knowledge, and without a meaningful way to terminate the leases." (Dkt.
11 56 at 21.)  Plaintiff does not contest a key point made in Defendants' Motion to
12 Dismiss—entering into a lease at above-market terms is not illegal.[2]  In addition,
13 Plaintiff's use of the passive voice cannot disguise the fact that Hebets, not
14 Defendants, allegedly concealed the leases from the Board.

15 Plaintiff next claims that "Daryl Priest and Travis Lyon, as agents of the Priest
16 LLC's [sic] then worked with the Borrego Insiders to infiltrate Borrego Health's
17 finance and contracting departments to ensure concealment of their misdeeds." (*Id*.
18 at 21.)  Plaintiff's citation to paragraphs 78-79, 105, and 126 of the Fourth Amended
19 Complaint, once again, reveals that the alleged infiltration has nothing to do with the
20 Leases Scheme and everything to do with Borrego's contract dental program.
21 Plaintiff fails to explain how Priest and Lyon could be acting as agents of Defendants
22 in an alleged scheme that would not benefit Defendants.

23 Plaintiff's Opposition ignores the key deficiencies of the Fourth Amended
24 Complaint identified by Defendants in the Motion to Dismiss, namely Plaintiff's
25 failure to do the following:

26 - allege Defendants' involvement in a wire or mail fraud

---

[2] Defendants continue to dispute Plaintiff's unsupported assertions that any of the three leases requires payment in excess of "fair market rent."

8                    CASE NO. 3:21-CV-01417-BEN KSC
BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY

scheme;

- identify the date, origin, or destination of any mailings or wirings;

- allege any monetary transaction that could provide the basis for a money laundering charge;

- plead facts that support elements of federal healthcare offenses that Plaintiff tries to use as the required "specified unlawful activity"; and,

- allege a false statement and explain how it fell within the jurisdiction of a federal agency.

(Dkt. 53-1 at 15-16.) These are not minor details that can be overlooked at the pleading stage. Rather, Plaintiff's failure to include factual allegations that establish the essential elements of the predicate acts violates Rule 9(b)'s strict pleading requirements. Plaintiff does not adequately plead a pattern of racketing activity, and its RICO claim should be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint with prejudice.

Dated:   May 8, 2023          **BARNES & THORNBURG LLP**

By: *s/Eric J. Beste*
Eric J. Beste
Attorneys for Defendants
INLAND VALLEY INVESTMENTS, LLC; DRP HOLDINGS, LLC; PROMENADE SQUARE, LLC